JAMES DAL BON, SBN #157942
LAW OFFICE OF JAMES DAL BON
606 N. 1ST St.
SAN JOSE, CA 95112
Telephone:   (408) 466-5845
Facsimile:    (408) 286-7111

VICTORIA L.H. BOOKE    SB# 142518
BOOKE & AJLOUNY
606 North First Street
San Jose, California 95112
Telephone:   (408) 286-7000
Facsimile:    (408) 286-7111
Email: vbooke@bookelaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN CALIFORNIA

| | |
|---|---|
| **BARBARA MIDDLE RIDER FOR GARY MIDDLE RIDER, an individual, ROBERT GARZA, an individual ALBERT ARELLANO, an individual, JOSE DON CORONADO, an individual,**<br><br>**PLAINITFFS AND PUTATIVE PLAINTIFFS**<br><br>                **Plaintiffs,**<br><br>        **vs.**<br><br><br>                **Defendants.**<br><br>**MOVING SOLUTIONS, a California Corporation MANAGED FACILITIES SOLUTIONS, LLC a California Limited Liability Company and CHARTWELL STAFFING SOLUTIONS, INC a New York Corporation licensed to do business in California** | **Case No. l7-CV-04015 LHK**<br><br><br>**MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION, MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF CONTENTS

INTRODUCTION   p. 4

STATEMENT OF FACTS  p. 6

THE STIPULATED SETTLEMENT   p 8

NOTICE PROCEDURE          p 10

ARGUMENT  p 11

THE COURT IS REQUIRED TO EVALUATE THE SETTLEMENT FOR FAIRNESS UNDER RULE 23 AND THE FSLA        p 11

THE COURT SHOULD PRECERTIFY THE SETTLEMENT AS FAIR IN UNDER RULE 23 AND THE FSLA              p 13

THE COURT SHOULD GRANT CONDITIONAL CERTIFICATION OF THE RULE   p18

THE COURT SHOULD CONDITIONALLY CERTIFY THE COLLECTIVE ACTION UNDER THE FSLA        p 19

THE ATTORNEY'S FEES REQUESTED ARE REASONABLE        p 20

THE NOTICE GIVEN THE CLASS IS ADEQUATE            p 21

1
2
## TABLE OF AUTHORITIES
3

4  Kempen v. Matheson Tri-Gas, Inc., No. 15-cv660-HSG, 2016 WL 4073336, at* 4 (N.D. Cal.
5  Aug. 1, 2016) -- p11
6  Dunn v. Teachers Ins. & Annuity Assoc. of Am., No. 13-cv-5456-HSG, 2016 WL 153266, at *3
7  (N.D. Cal. Jan. 13, 2016.    P.  11
8  Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 602-07 (E.D. Cal. 2015) - p 11, 12
9  Thompson v. Costco Wholesale Corp., No. 14-CV-2778-CAB-WVG, 2017 WL 1957552, at *3–4
10  (S.D. Cal. May 11, 2017).  P 12
11  Genesis Healthcare Corp. v. Symczyk. 569 U.S. 66, 75, 133 S. Ct. 1523, 1530, 185 L. Ed. 2d
12  636 (2013) – p12
13  Otey v. CrowdFlower, Inc., No. 12-cv-05524-JST, 2015 WL 4076620 (N.D.Cal. July 2, 2015)-p13
14  Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1172-73 (S.D. Cal. 2016) ---p143
15  Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015) --p13
16  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003) -pp 13, 15, 18
17  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) - pp 13, 18
18
19   Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291 (9th Cir. 1992) p13
20   Acosta v. Frito-Lay. Inc., No. 15-CV-02128-JSC, 2018 WL 2088278, at *4 (N.D. Cal. May 4,
21  2018) -p15
22
23  In re Tableware Antitrust Litig., 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). -p14
24  Harris v. Vector Mktg. Corp., No. 08–cv–05198 EMC, 2011 WL 1627973, at *7 (N.D.Cal. Apr.
25  29, 2011) p14
26  Hesse v. Sprint Corp., 598 F.3d 581,590 (9th Cir.2010) -p15
27  Custom LED, LLC v. eBay, Inc, No. 12-cv-00350 JST, 2013 WL 6114379, at* 4, *7 (N.D.Cal. Nov.
28  20, 2013) – p 15

1  Vasquez v. Coast Valley Roofing, Inc., 670 F.Supp.2d m4, 1125 (E.D.Cal.2009) -p16

2  Churchill Village v. Gen. Elec., 36i F.3d 566, 575 (9th Cir.2004) -p16

3  In re Omnivision Technologies, Inc., 559 F.Supp.2d 1036, 1042 (2007) p 16

4  Reed v. 1-800 Contacts, Inc., 2014 U.S. Dist. LEXIS 255 (S.D. Cal. 2014) p 17

5  Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.), 213 F.3d 454, 459 (9th Cir. 2000) p 17

6  Ansari v. New York Univ. (SD NY 1998) 179 FRD 112,114 p 18

7  Consolidated Rail Corp. v. Town of Hyde Park (2nd Cir. 1995) 47 F3d 473 -p 18

8  Wal-Mart Stores. Inc. v. Dukes fa011) 564 US 338. 350. 131 S.Ct. 2541-p 19

9  General Tel. Co. of Southwest v. Falcon, supra, 457 US at 156, p 19

10  Wolin v. Jaguar Land Rover North America, LLC (9th Cir. 2010) 617 F3d 1168 -- p 20

11  Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) 19

12  Hill v. RL Carriers, Inc., 690 F.Supp.2d 1001, (N.D.Cal.2010) – p 19

13   Boeing Co. v. Van Gernert, 444 U.S. 472,478 (1980) p-19

14  Central R.R. & Banking Co. v. Pettus, 113 U.S. 116 (1885) p 19

15  Glass v. UBS Financial Services, Inc., 2007 **WL 221862** (N.D. Cal. Jan. 26, 2007) p 21

16  Churchill Village, L.L.C. v. General Electric, 361 F.3d 566, 575 (9th Cir. 2004); p 21

17  White v. Nat'l Football League, 41 F.3d 402, 408 (8th Cir. 1994). P 21

18  Statutes

19  Fed Rule of Civ. Proc. 23 --pp 11, 12, 13, 18.

20  29 u.s.c. § 216 - pp 12, 18

21

22

23

24

25

26

27

28

1
2
3
4
5
6

MEMORANDUM OF POINTS AND AUTHORITIES

7
8

INTRODUCTION

9
10

This is a class action complaint filed on behalf of nonexempt movers against

11 Defendants Moving Solutions, Managed Facilities Solutions LLC (hereinafter Managed

12 Facilities) and Chartwell Staffing Solutions, Inc. (hereinafter Chartwell) Moving Solutions is

13 a California Corporation formerly owned by Tim Philpott.  See Ex A.  Chartwell is a national

14 staffing agency that provides on premise staffing services to manufacturers and businesses.

15
16 https://chartwellstaff.com .  Managed Facilities is a small corporate mover engaged in

17 business with Chartwell . See Ex B. At some point Chartwell took over the business of

18 Moving Solutions. The contract between Chartwell and Moving Solutions has become the

19 subject of extensive litigation between the companies.   See Moving Solutions, Inc vs

20
21 Chartwell Professional Staffing, Inc. Orange County Superior Court 30-29017-009355245

22 (filed August 3, 2017)  Defendants Moving Solutions, Chartwell and Managed Facilities shall

23 collectively be known as "Defendants".)

24
During the class period, July 17, 2013 through November 30, 2018, the Defendants

25
26 employed Gary Middle Rider, Albert Arellano, Robert Garza, Daniel Coronado, and Jose Don

27 Coronado aka Dan Coronado (hereinafter collectively known as "Plaintiffs") as non-exempt

28 corporate movers.  On July 17, 2017  Plaintiffs filed a Rule 23 class action complaint alleging

4

that Defendant Moving failed to pay them for all regular and overtime wages.   Specifically,

The Plaintiffs alleged the following California State causes of action for the Rule 23 Class

Action:  Failure to Pay Overtime and Regular Wages under Cal. Lab. Code Sections 510 and

1194, Failure to Pay Wages at the End of Employment pursuant to Cal. Labor Code Section

203, Failure to Provide Rest and Meal Period Breaks under Cal Labor Code Section 226.7 and

Failure to Provide Accurate Pay Stubs Cal. Lab. Code Section 226.7.  The Plaintiffs also filed

a claim for Restitution of overtime wages under Cal. Business and Professions Code Section

17200 that is subsumed unto the Rule 23 Class.  Finally the Plaintiffs filed a collective action

for unpaid overtime under The Fair Labor Standards Act 29 USC Sections 207.2, 216(b) and

255(a) See Middle Rider vs Moving Solutions 5:17-cv-04015 Compl EFC No. 1.

Plaintiffs later amended the complaint three times Moving Solutions  at EFC Nos. 19,

49 and 75.  The first amendments added the parties Defendant Chartwell and Defendant

Managed Facilities. Id. The last amendment added a cause of action under the Private

Attorney General's Act. Id.  Finally during the pendency of the action  Gary Middle Rider

passed away.  His widow Barbara Middle Rider substituted in his place.  Moving Solutions at

EFC 65.

Following the filing of the complaint, Plaintiffs' counsel conducted a thorough

investigation into the facts of the lawsuit, including extensive investigation, interviews,

discovery and exchange of information and documents. The investigation included review of

thousands of pages relevant documents, including written policies and procedures,

handbooks, time records, corporate tax,  income statements and payroll records.  Class

Counsel further investigated the facts alleged in the Complaint by conducting multiple

interviews of named plaintiffs and potential class members.  See Decl James Dal Bon

5

The Parties participated in a full-day mediation on November 30,, 2018 before respected mediator, Hon. Jaime Jacobs May (Ret).  After a full day of arms-length negotiations assisted by Judge Jacobs May, the Parties agreed to the settlement in general terms.  All parties signed a Memorandum of Understanding, containing general terms that the Parties have specified <u>See</u> Ex C and elaborated upon in the Stipulated Settlement <u>See</u> Ex D.

At the mediation, the parties agreed that the facts uncovered by the discovery in this case warranted creating one Rule 23 opt-in class between the period of  July 17, 2013 and the Preliminary Approval Date. <u>See</u> Ex D Stipulated Settlement at p. 2 The parties also agreed to compensate another group under the California Private Attorney General's Act Cal. Labor Section 2968 <u>et</u> <u>seq</u> (PAGA).  The parties are asking the court preliminarily approve a claims made Rule 23 opt-in class for the period July 17, 2013 to the Preliminary Approval Date,  The Parties also ask the court approve a  payment of penalties under PAGA non-exempt employees who are employed or have been employed by Defendants in the State of California from December 13, 2017 through the Preliminary Approval Date, (except for administrative office staff or those Chartwell's employees who were not placed to work for Defendant Moving Solutions, Inc. or Defendant Managed Facilities Solutions, LLC). <u>See</u> Ex D Stipulated Settlement at p. 5.

STATEMENT OF FACTS

The Defendants employed the four named plaintiffs and class representatives, Gary Middle Rider, Robert Garza, Albert Arellano, and Jose Don Coronado. Plaintiffs are all represented by James Dal Bon of the Law Offices of James Dal Bon and Victoria Booke of Booke and Ajlouny.  The Plaintiffs made the following allegations:

Defendants employed the Plaintiffs in the office moving industry as non-exempt laborers. Plaintiffs' job duties included moving office equipment, wiring computers and phones, installing office partitions, desks, chairs and other office furniture.  The Plaintiffs regularly worked more than eight hours in one day and forty hours in one week. See Decls of Garza, Coronado and Arellano See also Moving Solutions  (complaints) at EFC Nos. 1, 19, 49 and 75.

Defendants had the Plaintiffs work unpaid off the clock hours.  For example Defendants ordered Plaintiffs to arrive at the offices of their clients at approximately 4:30 pm then wait for the office workers to leave at between 5 :00 and 6:00 pm to begin moving and installing office furniture and equipment. The Defendants did not record or pay the Plaintiffs for the time they spent waiting to start work.   Id

Additionally the Plaintiffs worked through their 30-minute lunch break and the Defendants automatically deducted thirty minutes from their pay regardless of whether they worked through the lunch period or not. Id.

Because the Defendant failed to record for all the time the Plaintiffs worked, Defendants provided the Plaintiffs with paystubs that did reflect the hours they worked in accurate manner.   The paystubs did not include the hours the Defendants shaved from the time cards of the Plaintiffs.  Plaintiffs could not look at their time cards and determine whether the Defendants paid them for all their work hours. Id

CLASS SIZE

Defendants report the approximate class size as follows:

1)      1021 potential class members representing 17,225 work weeks;

2)    262 people worked 1 week or less

3)    398 people worked 2 weeks or less

4)    542 people (more than half) worked 4 or less weeks

See Decl of James Dal Bon


The Plaintiffs also investigated the financial conditions of the Defendants in settling

this case.  The Defendant Chartwell provided the following financial information:

1)   IRS Account Transcripts

2)   2014-2017 Tax Returns

3)   2014-2017 Balance Sheets

4)   2014-2017 Income Statements

5)   Preliminary Balance Sheet for 2018

6)   Debt Table as of July 2018

7)   Bankruptcy records

Defendants Managed Facilities provided a 2017 Balance Sheet and Income Statement.

See Decl of James Dal Bon


THE STIPULATED SETTLEMENT

The Overall Sum

        After a full day of mediation the Parties agreed to settle this case for $470.000 to be

paid by Defendants. See Ex D Stipulated Settlement at p 4 The Settlement Sum includes

attorney's fees, costs and expenses directly related to the case.  The Settlement

Administration costs are estimated to be $16,000. See Ex D Stipulated Settlement at p 26 and

Ex E Flat fee proposed by class administrator.   Subject to Court approval, Class

Representatives Barbara Middle Rider, Robert Garza, Albert Arellano, and Jose Don

Coronado shall receive Service Awards of $5000 each. See Ex D Stipulated Settlement p 23.

Subject to Court approval, Class Counsel will be paid up to $117,500 for attorneys' fees, and

an additional amount for reasonable litigation costs not to exceed $8500.00. See Ex D

Stipulated Settlement p 23. Class Counsel shall file the motion for an award of attorneys' fees

at least sixty days prior to the Final Fairness and Approval Hearing so that Class Members

shall have adequate time to decide whether to object to and / or oppose the request for

attorneys' fees.

        The members of the class shall recover damages based upon the number of work

weeks they worked during the class period.    The net settlement is an estimated $290,183. If

every potential claimant returns a claim form, then a total of approximately 17,225 work

weeks will be paid.  In that case each claimant shall be paid approximately $16.85 for every

week they worked for Defendants.  See Ex F Excel Spreadsheet.

        The settlement shall be funded in two installments.  The first for $235,000 shall be

paid  within thirty days after the final approval.  The second payment of $235,000 shall be

made 210 days later. See Ex D Stipulated Settlement pp 4,5.  The settlement shall be paid

upon receipt of the second payment. See Ex D Stipulated Settlement p 21 Any uncashed

checks 180 days after the  payment shall escheat to the State of California and be submitted

to the State of California unclaimed property fund in the name of the Claimant. See Ex D

Stipulated Settlement p 23.

A.  Claims Made Procedure

All Class Members will be given an opportunity to file a claim, including an opportunity to object to the settlement as a whole and the proposed attorney's fees. The employer shall be relieved of liability for all wage and hour causes action related to those pled in the class including the FSLA claims for every class member who makes a claim. Class members who do not make a claim shall be deemed to have settled all claims with the exception of the FSLA claim. Only Class Members who make a claim opting into the class shall settle the FSLA portion of the claim. See Ex D Stipulated Settlement p 19.

Distribution of the Settlement Funds

The Individual Settlement Amounts for each Participating Class Member will be calculated by the Settlement Administrator as follows: Each Participating Class Member shall be entitled to receive a pro rata portion of the Net Settlement Fund based upon his or her respective number of work weeks during the Class Period of July 17, 2013 to The Preliminary Approval Date. This amount shall be determined by dividing the Net Settlement Fund by the total number work weeks worked by each of the participating Class Members from July 17, 2013 to The Preliminary Approval Date. The resulting amount will be the dollar amount per work week which each of the class members . Each class member that makes a claim shall receive their full amount.

NOTICE PROCEDURE

Within seven (7) calendar days of receipt of the Class List from Defendants, CPT Group shall mail the Class Notice and the Consent to Join Form by first-class United States mail, postage prepaid, to the last known address of each Class Member of each Class. CPT

Group will send the forms in Spanish and English.  The Class Notice will include the number of work weeks and an estimate of the amount to be awarded to each class member. The Class Administrator shall research all addresses of the members no longer employed by the Defendants and skip trace the addresses of those members whose notices are returned as undeliverable.  See Ex D Stipulated Settlement p 18.

Class members will have a total of forty five days to return the consent to join forms. See Ex D Stipulated Settlement p 8.There is also an appeal process for approval of a late claim form and the number of workweeks on the claim form.  Class members will have a total of 45 days to exclude themselves from the settlement.   Class members will also be notified of their right to object to the settlement and make their objections known at the final settlement hearing.  CPT Group, Class Counsel or Defense The Class Administrator will also put up a website with downloadable forms during this time period. See Ex E.

Argument

THE COURT IS REQUIRED TO EVALUATE THE SETTLEMENT FOR FAIRNESS UNDER RULE 23 AND THE FSLA

The Plaintiffs in this case filed a hybrid federal and state wage and hour case against the Defendants for failure to pay overtime and regular wages to their non-exempt corporate movers.  Federal law requires the parties to obtain the approval of the court to finalize the settlement of a collective action under the FSLA and a class action under Rule 23.  Kempen v. Matheson Tri-Gas, Inc., No. 15-cv660-HSG, 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016); see also Dunn v. Teachers Ins. & Annuity Assoc. of Am., No. 13-cv-5456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) Fed Rule of Civ. Proc. 23(e).  The procedure for approving a FSLA collective action and a Rule 23 class action are identical. The court

approves settlements under Rule 23 and the FSLA in two stages. See generally Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 602-07 (E.D. Cal. 2015); Thompson v. Costco Wholesale Corp., No. 14-CV-2778-CAB-WVG, 2017 WL 1957552, at *3–4 (S.D. Cal. May 11, 2017).  In the first stage the courts preapprove the substantive terms of the settlement and the procedure for obtaining its final approval in the second stage.  Id.

The effect of preapproval of a collective action under the FSLA is different than the effect of pre  certification of a putative class under Rule 23. A putative class acquires an independent legal status once it is certified under Rule 23. All parties fitting the class definition are effectively joined to the putative class unless they file a written notice "opting out" according to Rule 23.  Under the FLSA, by contrast, "conditional certification" does not produce a class with an independent legal status or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees who in turn become parties to a collective action only by filing written consent "opting into" the case Title 26 § 216(b). Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75, 133 S. Ct. 1523, 1530, 185 L. Ed. 2d 636 (2013). Precertification of a Rule 23 putative class creates a well-defined independent legal entity that one must opt-out in order to avoid being bound by the settlement while Section 216 (b) simply gives one an opportunity benefit from the settlement by opting into its terms. Id.

The court is first required to evaluate the fairness of the settlement.  If the court determines the settlement is fair then the Rule 23 class will gain an independent legal status and participants will be required to opt out of the settlement to not be bound by its terms. For the FSLA claims,  class members will be given the opportunity to settle the collective action and will only be bound by its terms if they opt in.  If the court decides the

settlement is fair under Rule 23 it will be considered fair under the less stringent standards of the FSLA.

In determining fairness under the FSLA, "many courts begin with the well-established criteria for assessing whether a class action settlement is "fair, reasonable, adequate" under Fed.R.Civ.P. 23(e), and reason by analogy to the FLSA context. See Otey v. CrowdFlower, Inc., No. 12–cv–05524–JST, 2015 WL 4076620 (N.D. Cal. July 2, 2015) Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1172–73 (S.D. Cal. 2016)

THE COURT SHOULD PRECERTIFY THE SETTLEMENT AS FAIR IN UNDER RULE 23 AND THE FSLA

The Ninth Circuit maintains a strong judicial policy that favors settlement of class action settlements." Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015)   Fronda v. Staffmark Holdings, Inc., No. 15-CV-02315-MEJ, 2017 WL 5665671, at *5 (N.D. Cal. Nov. 27, 2017)  When the parties to a class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). In the first stage of the approval process the Court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Acosta v. Frito-Lay, Inc., No. 15-CV-02128-JSC, 2018 WL 2088278, at *4 (N.D. Cal. May 4, 2018) Settlements that are reached as a result of arm's-length bargaining between experienced and well-informed counsel, after thorough investigation, are entitled to a presumption of fairness. See Staton v. Boeing, 327 F.3d 938, 960 (9th Cir. 2003); Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291 (9th Cir. 1992).

All of the factors giving rise to a presumption of fairness exist in this case. The proposed settlement was produced at an all-day mediation before the Hon Jamie Jacobs May at JAMS.  See Decl James Dal Bon.  The class is represented by experienced counsel who has seen five wage and hour class actions through certification in state and federal court. Id. Class counsel conducted sufficient discovery.  Class counsel reviewed thousands of pages of pay roll records and financial documents, conducted extensive interviews with the named plaintiffs and other witnesses.  The settlement should be presumed to be fair

"The Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." Harris v. Vector Mktg. Corp., No. 08–cv–05198 EMC, 2011 WL 1627973, at *7 (N.D.Cal. Apr. 29, 2011); In re Tableware Antitrust Litig., 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

In this case the settlement was the product of serious informed non-collusive negotiations.  Plaintiff's counsel evaluated thousand pages of documents, conducted extensive interviews of the plaintiffs before going to mediation. Class counsel contacted more than the usual number of employee witnesses after the named plaintiff passed away in to be able find another named Plaintiff.   The parties conducted a full day of mediation in front of an experienced mediator.  The issues discussed at the mediation, not only included the usual issues regarding wages, but also more complicated ones regarding the solvency of Defendant Chartwell, a multi-million dollar corporation.

14

The settlement has no obvious deficiencies.  In this case the settlement releases the Defendants from liability regarding their compensation practices encompassed in the state wage and hour laws.  The settlement only releases liability for the FSLA for those Plaintiffs who make a claim opting into the settlement.   See Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir.2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks and citations omitted); Custom LED, LLC v. eBay, Inc, No. 12–cv–00350 JST, 2013 WL 6114379, at *4, *7 (N.D. Cal. Nov. 20, 2013).  The settlement only releases claim pertaining to wage and hour laws, which are based upon the same "factual predicate" as the underlying claims in the settled class action.

The settlement gives no member or group preferential treatment.  Each member will receive their pro rata share of the settlement based upon the number weeks they worked for the defendant.  It was not designed to favor any one group over another. The service awards of $5000 for each of the four participating plaintiffs are fair.  Plaintiffs missed a day from work to participate in the mediation.  Class counsel visited at least one of the Plaintiffs at his place of work, taking him away from his duties to sign paper work.  Class counsel also visited another Plaintiff at his home.   All Plaintiffs missed one or more days from work visiting counsel's office to answer questions and sign paperwork.  The "Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir.2003).

The settlement falls within the range of possible approval. "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." Vasquez v. Coast Valley Roofing, Inc., 670 F.Supp.2d 1114, 1125 (E.D.Cal.2009)). The court evaluates : "[1] the strength of plaintiff's case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." Churchill Village v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.2004). The court compares "the value of the settlement against the expected recovery at trial" by estimating "the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount." Id. at *11 (internal quotation marks omitted).

If the Plaintiff won all issues in this case the value could be between $9 million and $14 million dollars. Assuming an average wage of $17.50 per hour with an overtime rate of $26.50 per hour the lost overtime would be over three million dollars if one assumes 7.5 of unpaid waiting time a week. 7.5 Overtime Hours per Week x 17225 work weeks x $26.50 = $3,423,468.75. The 203 penalty alone could be worth over a million dollars. According to the statistics provided by the Defendants at least half of the 1021 employees worked for them for under one month. Average rate of pay $17.50 x 8 hours per day x 500 former employees times 30 days equals $2,100,000.

Nevertheless Class counsel believes this settlement to be a reasonable compromise of the class claims, and well within the percentile ranges of the total available damages that

have been approved in other class settlements. See In re <u>Omnivision Technologies, Inc</u>., 559

F.Supp.2d 1036, 1042 (2007) (noting that certainty of recovery in settlement of 6% of

maximum potential recovery after reduction for attorney's fees was higher than median

percentage for recoveries in shareholder class action settlements, averaging 2.2%-3% from

2000 through 2002); <u>Reed v. 1-800 Contacts, Inc</u>., 2014 U.S. Dist. LEXIS 255 (S.D. Cal. 2014)

(approving a settlement of $11.7 million where the maximum range of damages was $5,000 for

each of the alleged 300,000 instances of unlawful recording violations ($1.5 billion), equaling

approximately .78% of the total demand and approximately $800 per class member);

<u>Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)</u>, 213 F.3d 454, 459 (9th Cir. 2000).

Additionally the Defendants presented  ample evidence at mediation indicating they

would have difficulty paying a substantial judgement.  Attached as Ex G is public record

showing that Defendant Chartwell is in Chapter 11 and had to restructure its payment plan

that included monthly half million dollar payments.  This case would likely involve at least

two years of litigation proving that Defendants had a policy of forcing movers to work off the

clock hours only to be relitigated for another two years in bankruptcy court.  In light of all of

the above the settlement is reasonable and fair.

Finally the Parties agreed to a claims made procedure, which the courts normally

disapprove of for state related wage claims.  The Parties believe a claims made procedure is

the fairest way to ensure the money is paid to the Defendant's employees than cy pres'ed to a

charity.  Defendant's work force is transient and many were employed for a short period of

time.  Half of the Defendant's employees only worked for the Defendants for four weeks or

less.  It is likely that a good deal of the transient employees will not be found or cash their

checks.  Since the settlement is to be funded in two payments, the Parties would rather have

the money due to the employees that do not make a claim revert to the employees that make

claims instead of a charity. By the time of the second payment to fund the settlement, the

Class Administrator can divide the unclaimed money amongst the employees that made

claims.

THE COURT SHOULD GRANT CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS

Class certification requires that: (1) the class be so numerous that joinder of all

members individually is 'impracticable;' (2) there are questions of law or fact common to the

class; (3) the claims or defenses of the class representative must be typical of the claims or

defenses of the class; and (4) the person representing the class must be able fairly and

adequately to protect the interests of all members of the class. Fed. R. Civ. P. 23(a); Staton v.

Boeing, 327 F.3d 938, 953 (9th Cir.2003). In addition to meeting the conditions imposed by

Rule 23(a), the parties seeking class certification must also show that the action is

maintainable under Federal Rule of Civil Procedure 23(b). Here, the parties assert that the

action is maintainable under Rule 23(b)(3) because questions of law or fact common to class

members predominate over any question affecting only individual members, and a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy. Fed. R. Civ. P. 23(b); Hanlon, 150 F.3d at 1022.

Numerosity exists because there are over 1000 members of the class. "Generally

speaking, courts will find that the 'numerosity' requirement has been satisfied when the

class comprises 40 or more members and will find that it has not been satisfied when the

class comprises 21 or fewer." Ansari v. New York Univ. (SD NY 1998) 179 FRD 112, 114

(emphasis added); also see Consolidated Rail Corp. v. Town of Hyde Park (2nd Cir. 1995) 47

F3d 473, 483—numerosity presumed at level of 40 members.

1

2    Commonality exists in this case. This requirement is met through the existence of a

3    "common contention" that is of such a nature that it is capable of class wide resolution in

4    "one stroke." [Wal-Mart Stores, Inc. v. Dukes (2011) 564 US 338, 350, 131 S.Ct. 2541, 2551] The

5    Plaintiff has alleged violations of wage and hour law that are capable of class-wide

6    resolution.  The Defendants' policy towards overtime, paystub violations and 203 penalties

7    are all capable of class wide resolution.

8    Typicality exists in this case.  The claims of the purported class representative need

9    not be identical to the claims of other class members, but the class representative "must be

10    part of the class and possess the same interest and suffer the same injury as the class

11

12    members." Wolin v. Jaguar Land Rover North America, LLC (9th Cir. 2010) 617 F3d 1168,

13    1176]. All four members of the case worked for the Defendants during the Class period.

14    Their claims are identical to those alleged in the complaint on behalf of the class members.

15

16    The class members have been adequately represented in this case.  None of the named

17    class members have a conflict.  The class members have vigorously prosecuted the case, all

18    four participating in the investigation, and mediation of this case.  Class counsel has

19    successfully litigated the following Class Actions in Santa Clara County Superior Court

20

21    Rosales vs Heavenly Greens 1-cv-119684; Lopez vs Logistics Delivery Solutions 113-cv-249431,

22    Diaz vs Heavenly Greens 16-cv295143, Cooke vs A is for Apple 15-cv-279579 and Ledo vs

23    Prado l7-CV-02393 LHK.  Plaintiffs' counsel has prosecuted 178 wage and hour cases in

24    federal court and probably another fifty in state court over the past twelve years.

25

26

27    THE COURT SHOULD CONDITIONALLY CERTIFY THE COLLECTIVE ACTION UNDER
THE FSLA

28

Section 216(b) of the FLSA allows employees to represent similarly situated employees in an action against their employer for failure to pay wages owed. 29 U.S.C. § 216(b). But unlike class actions brought under Federal Rule of Procedure 23, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party ...." See id.; Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) "The requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure. All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." Hill v. RL Carriers, Inc., 690 F.Supp.2d 1001, 1009 (N.D.Cal.2010) In other word since the class meets the commonalty standard of a Rule 23 Class, the claims certainly qualify as similar under the FSLA.

THE ATTORNEY'S FEES REQUESTED ARE REASONABLE

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund ... is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). See also Central R.R. & Banking Co. v. Pettus, 113 U.S. 116 (1885) (recognizing common fund doctrines); Staton at 327 F.3d at 967. The Ninth Circuit's benchmark for fees in this context is 25 percent of the gross settlement amount, and courts that depart from the benchmark should indicate their reasons for doing so. Glass v. UBS Financial Services, Inc., 2007 **WL 221862** (N.D. Cal. Jan. 26, 2007) at 14.

In this case Plaintiff's counsel is requesting an attorney's fee of 25%, the bench mark. As usual in these cases, Class Counsel analyzed thousand pages of documents and interviewed clients several times, spoke to other witnesses in the case, and participated in a full day mediation.  This case did present a special difficulty in that the named Plaintiff passed away.  Class counsel spent more hours attempting to find other Class Representatives and performed some motion work to ensure the former named Plaintiffs' widow could recover his share.  Additionally examining the economic condition of the Defendant was a little more complicated in this case.  However Class Counsel does not believe there is any reason to ask for more than the bench mark in this cases.

Finally the Parties ask the court to approve a small portion of the settlement to be devoted to the PAGA claims.  The Defendants did not want the case to be relitigated under PAGA. Ten thousand dollars has been reserved for PAGA.  As with most wage and hour settlements only a small portion of the settlement has been reserved for PAGA because 75% of the money is paid to the State of California and 25% to the workers.  Reserving a small portion of the settlement for PAGA ensures more money is paid to the employees.

THE NOTICE GIVEN THE CLASS IS ADEQUATE

The proposed Class Notice and proposed method of distribution are appropriate. See Fed. R. Civ. P. 23(c)(2)(B); Churchill Village, L.L.C. v. General Electric, 361 F.3d 566, 575 (9th Cir. 2004); White v. Nat'l Football League, 41 F.3d 402, 408 (8th Cir. 1994).

CONCLUSION

Plaintiff's counsel respectfully requests the court preliminarily approve the class action.

Dated: March 1, 2019

*James Dal Bon*
_____

James Dal Bon