**Contact Name:** Darin Zabriskie
Henry Arjad

**Corporate Headquarters**
50 Corporate Park, Irvine CA 92606
Darin@cptgroup.com
**Direct Number:** (206) 491-3252
**Corporate Office:** (800) 542-0900
**Fax Number:** (949) 428-1023

www.cptgroup.com

### Case Name: Middlerider v Moving Solutions

| | | | |
|---|---|---|---|
| Date: | **March 7, 2019** | * Class Members: | **1,021** |
| Requesting Attorney: | **James Dal Bon** | ** Filing Rate: | **30%** |
| Plaintiff or Defense: | **Plaintiff** | Claims Filed: | **306** |
| Firm Name: | **Law Office of James Dal Bon** | Postage Total: | **$748.10** |
| Telephone: | **(650) 630-2447** | Grand Total: | **$17,182.15** |
| Email: | jdb@wagedefenders.net | *** **DISCOUNTED FLAT FEE:** | **$16,000.00** |

* This number is an estimate provided by counsel. If the actual number is different, our cost estimate will change accordingly.

** For ease of comparison, in the event competing estimates use an alternate filing rate to calculate estimated cost, please advise us so that we may modify the estimate accordingly.

*** This price is valid for administration of a maximum of 306 claims filed. Any additional claims filed above 306 will be billed at the rate of $8.00 per claim.

# Case Setup

| Case Setup / Data Management / Create a Unified Mailing List / TFN Establish & Setup | | | |
|---|---|---|---|
| **Administrative Tasks:** | **Unit Price** | **Pieces/Hours** | **Cost Estimate** |
| Project Manager | $95.00 | 7 | $665.00 |
| System Programming/Data Base Setup | $150.00 | 7 | $1,050.00 |
| Toll-Free Number Establish/Setup* | $150.00 | 2 | $300.00 |
| Interactive Website | $2,500.00 | 1 | $2,500.00 |
| | | **Total** | **$4,515.00** |

*Up to 120 days after disbursement*

# Notification Procedures

| National Change of Address (NCOA) / Notice & Claim Form / Postage (up to 1 oz.) | | | |
|---|---|---|---|
| **Administrative Tasks:** | **Unit Price** | **Pieces/Hours** | **Cost Estimate** |
| NCOA | $150.00 | 1 | $150.00 |
| Project Manager-Claim/Notice Format | $95.00 | 2 | $190.00 |
| Merged Data | $0.25 | 1,021 | $255.25 |
| Mailing of Notice Pack | $1.00 | 1,021 | $1,021.00 |
| Estimated Postage (up to 1 oz.)* | $0.50 | 1,021 | $510.50 |
| | | **Total** | **$2,126.75** |

*Additional charges will apply if the postage exceeds 1 oz. The final rate will be determined at the time of mailing.

# Returned Mail

| Notices Returned as Undeliverable / Skip Traces / Remail Notice Packets / Postage | | | |
|---|---|---|---|
| **Administrative Tasks:** | **Unit Price** | **Pieces/Hours** | **Cost Estimate** |
| Update Undeliverable | $0.35 | 102 | $35.70 |
| Skip Traces | $1.00 | 82 | $82.00 |
| Remail Packs | $1.25 | 102 | $127.50 |
| Estimated Postage | $0.55 | 102 | $56.10 |
| Clerical Staff | $60.00 | 1 | $60.00 |
| | | **Total** | **$361.30** |

## Claims Administration Processing

| Process Claims, Opt-Outs, Deficiencies & Other Requests from Class Members / Call Center Support | | | |
|---|---|---|---|
| **Administrative Tasks:** | **Unit Price** | **Pieces/Hours** | **Cost Estimate** |
| Programming of Claims Data Base | $150.00 | 4 | $600.00 |
| Claims Processing | $2.50 | 306 | $765.00 |
| Clerical Staff | $60.00 | 6 | $360.00 |
| Opt-Outs/Deficiency/Dispute Letters | $15.00 | 10 | $150.00 |
| Project Manager | $95.00 | 2 | $190.00 |
| Call Center Support | $3.00 | 154 | $462.00 |
| | | **Total** | **$2,527.00** |

## SSN Verification

| Verify SSN for Validity with IRS / Send Deficiency Letters to "No-Match" Class Members | | | |
|---|---|---|---|
| **Administrative Tasks:** | **Unit Price** | **Pieces/Hours** | **Cost Estimate** |
| Programming for SSN Selection | $150.00 | 1 | $150.00 |
| Project Manager | $95.00 | 3 | $285.00 |
| SSN Verification | $0.10 | 306 | $30.60 |
| Follow up on Mis-Matches | $10.00 | 4 | $40.00 |
| | | **Total** | **$505.60** |

## Disbursement

| Calculations / Data Management / Create & Manage QSF / Print & Mail Checks, 1099/W-2 | | | |
|---|---|---|---|
| **Administrative Tasks:** | **Unit Price** | **Pieces/Hours** | **Cost Estimate** |
| Programming Database-Calculate Totals | $150.00 | 3 | $450.00 |
| Project Supervisor Review of Distribution | $150.00 | 3 | $450.00 |
| Project Manager-Correspond w/Attorney | $95.00 | 2 | $190.00 |
| Obtain EIN, Setup QSF/Bank Account | $150.00 | 3 | $450.00 |
| Programming/Setup & Printing of Checks | $150.00 | 3 | $450.00 |
| Print Mail Checks, W-2/1099 (8x10 sheet) | $2.50 | 306 | $765.00 |
| Postage | $0.55 | 306 | $168.30 |
| | | **Total** | **$2,923.30** |

## Post-Disbursement & Tax Reporting

| Account Recons / Skip Trace / Reissue Checks / Annual Tax Reporting / Final Reporting & Declaration | | | |
|---|---|---|---|
| **Administrative Tasks:** | **Unit Price** | **Pieces/Hours** | **Cost Estimate** |
| Re-Issue Checks as Required | $5.00 | 4 | $20.00 |
| Project Supervisor -Account Recons | $100.00 | 12 | $1,200.00 |
| Skip Trace | $1.25 | 24 | $30.00 |
| Remail Undeliverable Checks | $2.50 | 24 | $60.00 |
| Postage | $0.55 | 24 | $13.20 |
| Project Supervisor-Reconcile Uncashed Chk | $150.00 | 1 | $150.00 |
| Programming- Final Reports | $150.00 | 2 | $300.00 |
| Project Manager - Acnt Files Sent to Atty | $150.00 | 2 | $300.00 |
| Project Supervisor - Final Declaration | $150.00 | 2 | $300.00 |
| CA Tax Preparation* | $600.00 | 1 | $600.00 |
| Annual Tax Reporting to IRS* | $750.00 | 1 | $750.00 |
| QSF Annual Tax Reporting | $500.00 | 1 | $500.00 |
| | | **Total** | **$4,223.20** |

*\*CPT will file Federal and California taxes in accordance to current state and federal regulations. Additional charges will apply if the Settlement/Order/parties require(s) multiple state tax filings.*

| | | **Grand Total:** | **$17,182.15** |
|---|---|---|---|

# TERMS AND CONDITIONS

These Terms and Conditions are made a part of and incorporated by reference into the CPT Group, Inc. Terms and Conditions Agreement by and between Client and CPT Group, Inc., 50 Corporate Park, Irvine, CA 92606 ("**CPT**").

1. Definitions.
    a) "**Affiliate**" means a party that partially (at least 50%) or fully controls, is partially or fully controlled by, or is under partial (at least 50%) or full common control with, another party.
    b) "**Approved Bank**" means a financial institution insured by the Federal Deposit Insurance Corporation with capital exceeding $1 billion.
    c) "**Case**" means the particular judicial matter identified by the name of plaintiff(s) and defendant(s) on the applicable Order.
    d) "**Claims Administrator**" means CPT Group, Inc. a reputable third-party Claims Administrator selected by all the Parties (Plaintiff and Defense Counsel) to administer the Settlement or Notification Mailing.
    e) "**Client**" means collectively Plaintiff Counsel and Defense Counsel.
    f) "**Client Content**" means all Class Member written document communications relating to the Case, including claim forms, opt-out forms, objections, and the like which contain Client Data.
    g) "**Client Data**" means proprietary or personal data regarding Client or any of its Class Members under this Agreement, as provided by Client.
    h) "**Class Member**" means an individual who is eligible under the Settlement Agreement to receive a designated amount of the Settlement, including the named Plaintiff(s) in the Case and all other putative persons so designated or addressed therein.
    i) "**Confidential Information**" means any non-public information of CPT or Client disclosed by either party to the other party, either directly or indirectly, in writing, orally or by inspection of tangible objects, or to which the other party may have access, which a reasonable person would consider confidential and/or which is marked "confidential" or "proprietary" or some similar designation by the disclosing party. Confidential Information shall also include the terms of this Agreement, except where this Agreement specifically provides for disclosure of certain items. Confidential Information shall not, however, include the existence of the Agreement or any information which the recipient can establish: (i) was or has become generally known or available or is part of the public domain without direct or indirect fault, action, or omission of the recipient; (ii) was known by the recipient prior to the time of disclosure, according to the recipient's prior written documentation; (iii) was received by the recipient from a source other than the discloser, rightfully having possession of and the right to disclose such information; or (iv) was independently developed by the recipient, where such independent development has been documented by the recipient.
    j) "**Court Order**" means a legal command or direction issued by a court, judicial office, or applicable administrative body requiring one or more parties to the Case to carry out a legal obligation pursuant to the Case.
    k) "**Defendant**" means the named party and/or parties in the Case against whom action is brought.
    l) "**Defense Counsel**" means the attorney of record for the defendant(s) in the Case.
    m) "**Intellectual Property Right**" means any patent, copyright, trade or service mark, trade dress, trade name, database right, goodwill, logo, trade secret right, or any other intellectual property right or proprietary information right, in each case whether registered or unregistered, and whether arising in any jurisdiction, including without limitation all rights of registrations, applications, and renewals thereof and causes of action for infringement or misappropriation related to any of the foregoing.
    n) "**Order**" means a Product purchase in a schedule, statement of work, addendum, exhibit, or amendment signed by Client and CPT.
    o) "**Parties**" shall mean collectively Defendants, Defense and Plaintiff as defined in the Settlement Agreement or Court Order.
    p) "**Plaintiff**" means the named party and/or parties in the Case who are bringing the action.
    q) "**Plaintiff Counsel**" means the attorney of record for plaintiff Class Members in the Case.
    r) "**Products**" means any and all CPT Services, and work product resulting from Services.
    s) "**Qualified Settlement Fund**" means the entity as defined by Treasury Regulation section 4686-1 under which a bank account is established to receive settlement funds from the Defendant in the Case, which such funds are then disbursed by CPT according to the Settlement Agreement and pursuant to Court Order.
    t) "**Service**" means any service rendered by CPT specifically to Client, including, but not limited to: (i) notifications to Class Members; (ii) setting up a Qualified Settlement Fund with a financial institution; (iii) management of disbursement of funds from the Qualified Settlement Fund to applicable parties pursuant to the Settlement Agreement; (iv) provision of customer support relating to the Case; (v) management of Case claim forms and correspondence; and/or (vi) any administrative or consulting service.
    u) "**Software**" means any and all of CPT's proprietary applications, including, without limitation, all updates, revisions, bug-fixes, upgrades, and enhancements thereto.
    v) "**Settlement**" means the total dollar amount agreed to between parties to the Case, as negotiated by Plaintiff Counsel and Defense Counsel, to resolve the Case to mutual satisfaction.
    w) "**Settlement Agreement**" means the contract between parties to the Case to resolve the same, which specifies amounts to be disbursed from the Qualified Settlement Fund to attorneys, CPT, and individual Class Members.
    x) "**Term**" means the term of the Agreement, as set forth in the Order.
    y) "**Transmission Methods**" means the secure authorized manner to send Client Data and/or Wire Information as specified on a schedule or Order hereto.
    z) "**Wire Information**" means instructions for (i) Defense Counsel to transfer funds from Defendant to the Qualified Settlement Fund or (ii) CPT to transfer funds from the Qualified Settlement Fund to applicable parties pursuant to the Settlement Agreement.

2. Client Obligations. Client will ensure that it has obtained all necessary consents and approvals for CPT to access Client Data for the purposes permitted under this Agreement, and shall only transmit Client Data and/or Wire Instructions to CPT via the Transmission Methods. Client shall use and maintain appropriate administrative, technical, and physical safeguards designed to protect Client Data provided under this Agreement. Client shall not send, or attempt to send, Client Data and/or Wire Instructions via email, facsimile, unprotected spreadsheet, USB flash drive or other external or removable storage device, cloud storage provider, or any other method not specified in the Transmission Methods. Notwithstanding the foregoing, Client acknowledges and understands that the electronic transmission of information cannot be guaranteed to be secure or error free, and such information could be intercepted, corrupted, lost, and/or destroyed. Client further warrants that any Client Data and/or Wire Instructions it transmits shall be free of viruses, worms, Trojan horses, or other harmful or disenabling codes which could adversely affect the Client Data and/or CPT. If Client is in breach of this section, CPT may suspend Services, in addition to any other rights and remedies CPT may have at law or in equity.

3. Security. The Parties and CPT shall each use reasonable administrative, technical, and physical safeguards that are reasonably designed to: (a) protect the security and confidentiality of any personally identifiable information provided by Class Members and/or Client under this Agreement; (b) protect against any anticipated threats or hazards to the security or integrity of such personally identifiable information; (c) protect against unauthorized access to or use of such personally identifiable information that could result in substantial harm or inconvenience to any individual; and (d) protect against unauthorized access to or use of such personally identifiable information in connection with its disposal. Each Party will respond promptly to remedy any known security breach involving the personally identifiable information provided by you and/or Client under this Agreement, and shall promptly inform the other Parties of such breaches.

4. CPT Obligations. Provided that Client complies with all provisions of Section "Client Obligations", CPT will (i) maintain appropriate safeguards for the protection of Client Data, including regular back-ups, security and incident response protocols, and (ii) not access or disclose Client Data except (A) as compelled by law, (B) to prevent or address service or technical issues, (C) in accordance with this Agreement or the provisions of the Settlement Agreement, or (D) if otherwise permitted by Client.

5. Mutual Obligations.
    a) Resources. Each party agrees to: (i) provide the resources reasonably necessary to enable the performance of the Services; (ii) manage its project staffing, milestones, and attendance at status meetings; and (iii) ensure completion of its project deliverables and active participation during all phases of a Service project. The parties acknowledge that failure to cooperate during a Service project may delay delivery of the Service. If there

is a delay, the party experiencing the delay will notify the other party as soon as reasonably practicable, and representatives of each party will meet to discuss the reason for the delay and applicable consequences. Changes beyond the scope of an Order and/or a party's delay in performing its obligations may require an amended Order.

    b) <u>Incident Notification</u>. Each party will promptly inform the other parties in the event of a breach of Client Data in their possession, and shall utilize best efforts to assist the other parties to mitigate the effects of such incident.

6. <u>Qualified Settlement Fund Account</u>. At Client's request, CPT shall be authorized to establish one or more bank accounts at an Approved Bank. The amounts held at the Approved Bank under this Agreement are at the sole risk of Client. Without limiting the generality of the foregoing, CPT shall have no responsibility or liability for any diminution of the funds that may result from the deposit thereof at the Approved Bank, including deposit losses, credit losses, or other claims made against the Approved Bank. It is acknowledged and agreed that CPT has acted reasonably and prudently in depositing funds at an Approved Bank, and CPT is not required to conduct diligence or make any further inquiries regarding such Approved Bank.

7. <u>Fees and Payment</u>. Pricing stated within the proposal is good for 90 Days. All postage charges and 50% of the final administration charges are due at the commencement of the case and will be billed immediately upon receipt of the Client data and /or notice documents. Client will be invoiced for any remaining fees according to the applicable Order. Pricing stated within any proposal from CPT to Client is for illustrative purposes only, and is only binding upon an Order executed by CPT and Client. Payment of fees will be due within 30 days after the date of the invoice, except where this Agreement expressly prescribes other payment dates. All fees set forth in an Order are in U.S. dollars, must be paid in U.S. dollars, and are exclusive of taxes and applicable transaction processing fees. Late payments hereunder will incur a late charge of 1.5% (or the highest rate allowable by law, whichever is lower) per month on the outstanding balance from the date due until the date of actual payment. In addition, Services are subject to suspension for failure to timely remit payment therefor. If travel is required to effect Services, Client shall reimburse CPT for pre-approved, reasonable expenses arising from and/or relating to such travel, including, but not limited to, airfare, lodging, meals, and ground transportation.

8. <u>Term and Termination.</u>
    a) <u>Term</u>. The Term is set forth in the Order. The Agreement may be renewed by mutual written agreement of the parties.
    b) <u>Termination for Cause</u>. Either party may immediately terminate this Agreement if the other party materially breaches its obligations hereunder, and, where capable of remedy, such breach has not been materially cured within forty-five (45) days of the breaching party's receipt of written notice describing the breach in reasonable detail.
    c) <u>Bankruptcy Events</u>. A party may immediately terminate this Agreement if the other party: (i) has a receiver appointed over it or over any part of its undertakings or assets; (ii) passes a resolution for winding up (other than for a bona fide scheme of solvent amalgamation or reconstruction), or a court of competent jurisdiction makes an order to that effect and such order is not discharged or stayed within ninety (90) days; or (iii) makes a general assignment for the benefit of its creditors.
    d) <u>Effect of Termination</u>. Immediately following termination of this Agreement, upon Client's written request, Client may retrieve Client Data via Client's secure FTP site in the same format in which the Client Data was originally inputted into the Software, at no additional charge. Alternatively, Client Data can be returned in a mutually agreed format at a scope and price to be agreed. CPT will maintain a copy of Client Data and Client Content for no more than two (2) years following the date of the final check cashing deadline for Class Members under the Settlement Agreement, after which time any Client Data and Client Content not retrieved will be destroyed.
    e) <u>Final Payment</u>. If Client terminates this Agreement due to Section "Termination", Client shall pay CPT all fees owed through the termination date. If CPT terminates the Agreement in accordance with Section "Termination," Client shall pay CPT all fees invoiced through the termination date, plus all fees remaining to be invoiced during the Term, less any costs CPT would have incurred had the Agreement not been terminated.

9. <u>Confidentiality</u>. Each of the parties agrees: (i) not to disclose any Confidential Information to any third parties except as mandated by law and except to those subcontractors of CPT providing Products hereunder who agree to be bound by confidentiality obligations no less stringent than those set forth in this Agreement; (ii) not to use any Confidential Information for any purposes except carrying out such party's rights and responsibilities under this Agreement; and (iii) to keep the Confidential Information confidential using the same degree of care such party uses to protect its own confidential information; <u>provided</u>, <u>however</u>, that such party shall use at least reasonable care. These obligations shall survive termination of this Agreement.
    a. <u>Compelled Disclosure</u>. If receiving party is compelled to disclose any Confidential Information by judicial or administrative process or by other requirements of law, such party shall (i) promptly notify the other party, (ii) reasonably cooperate with the other party in such party's efforts to prevent or limit such compelled disclosure and/or obtain confidential treatment of the items requested to be disclosed, and (iii) shall disclose only that portion of such information which each party is advised by its counsel in writing is legally required to be disclosed.
    b. <u>Remedies</u>. If either party breaches any of its obligations with respect to confidentiality or the unauthorized use of Confidential Information hereunder, the other party shall be entitled to seek equitable relief to protect its interest therein, including but not limited to, injunctive relief, as well as money damages.

10. <u>Intellectual Property</u>. As between the parties, CPT will and does retain all right, title and interest (including, without limitation, all Intellectual Property Rights) in and to the Products. Client retains all ownership rights to Client Data.

11. <u>Indemnification</u>. Client agrees to indemnify, defend, and hold harmless CPT, its Affiliates, and the respective officer, directors, consultants, employees, and agents of each (collectively, Covered CPT Parties") from and against any and all third party claims and causes of action, as well as related losses, liabilities, judgments, awards, settlements, damages, expenses and costs (including reasonable attorney's fees and related court costs and expenses) (collectively, "Damages") incurred or suffered by CPT which directly relate to or directly arise out of (i) Client's breach of this Agreement; (ii) CPT's performance of Services hereunder; (iii) the processing and/or handling of any payment by CPT; (iv) any content, instructions, information or Client Data provided by Client to CPT in connection with the Services provided by CPT hereunder. The foregoing provisions of this section shall not apply to the extent the Damages relate to or arise out of CPT's willful misconduct. To obtain indemnification, indemnitee shall: (i) give written notice of any claim promptly to indemnitor; (ii) give indemnitor, at indemnitor's option, sole control of the defense and settlement of such claim, provided that indemnitor may not, without the prior consent of indemnitee (not to be unreasonably withheld), settle any claim unless it unconditionally releases indemnitee of all liability; (iii) provide to indemnitor all available information and assistance; and (iv) not take any action that might compromise or settle such claim.

12. <u>Warranties</u>. Each party represents and warrants to the other party that, as of the date hereof: (i) it has full power and authority to execute and deliver the Agreement; (ii) the Agreement has been duly authorized and executed by an appropriate employee of such party; (iii) the Agreement is a legally valid and binding obligation of such party; and (iv) its execution, delivery and/or performance of the Agreement does not conflict with any agreement, understanding or document to which it is a party. CPT WARRANTS THAT ANY AND ALL SERVICES PROVIDED BY IT HEREUNDER SHALL BE PERFORMED IN A PROFESSIONAL MANNER CONSISTENT WITH PREVAILING INDUSTRY STANDARDS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, CPT DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT AND ANY WARRANTIES ARISING FROM A COURSE OF DEALING, USAGE OR TRADE PRACTICE.

13. <u>Liability</u>.
    a. <u>Liability Cap</u>. EXCEPT FOR A PARTY'S WILLFUL MISCONDUCT, EACH PARTY'S MAXIMUM AGGREGATE LIABILITY ARISING OUT OF OR RELATING TO THIS AGREEMENT, REGARDLESS OF THE THEORY OF LIABILITY, WILL BE LIMITED TO THE TOTAL CLAIMS ADMINISTRATOR FEES PAID OR PAYABLE BY CLIENT TO CPT HEREUNDER. THE EXISTENCE OF MORE THAN ONE CLAIM SHALL NOT EXPAND SUCH LIMIT. THE PARTIES ACKNOWLEDGE THAT THE FEES AGREED UPON BETWEEN CLIENT AND CPT ARE BASED IN PART ON THESE LIMITATIONS, AND THAT THESE LIMITATIONS WILL APPLY NOTWITHSTANDING ANY FAILURE OF ANY ESSENTIAL PURPOSE OF ANY LIMITED REMEDY. THE FOREGOING LIMITATION SHALL NOT APPLY TO A PARTY'S PAYMENT OBLIGATIONS UNDER THE AGREEMENT.
    b. <u>Exclusion of Consequential Damages</u>. NEITHER PARTY WILL BE LIABLE FOR LOST PROFITS, LOST REVENUE, LOST BUSINESS OPPORTUNITIES, LOSS OF DATA, INTERRUPTION OF BUSINESS, OR ANY OTHER INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATING TO THIS AGREEMENT, REGARDLESS OF THE THEORY OF LIABILITY, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

14. <u>Communications</u>. CPT may list Client's name and logo alongside CPT's other clients on the CPT website and in marketing materials, unless and until Client revokes such permission. CPT may also list the Case name and/or number, and certain Qualified Settlement Fund information, on the CPT website and in marketing materials, unless stated otherwise in the Settlement Agreement.

15. <u>Miscellaneous Provisions</u>.
    a. <u>Governing Law; Jurisdiction</u>. This Agreement will be governed by and construed in accordance with the laws of the State of California and

the federal laws of the United States of America, without regard to conflict of law principles. CPT and Client agree that any suit, action or proceeding arising out of, or with respect to, this Agreement or any judgment entered by any court in respect thereof shall be brought exclusively in the state or federal courts of the State of California located in the County of Orange, and each of CPT and Client hereby irrevocably accepts the exclusive personal jurisdiction and venue of those courts for the purpose of any suit, action or proceeding.

b. <u>Force Majeure</u>. Neither party will be liable for any failure or delay in its performance under this Agreement due to any cause beyond its reasonable control, including without limitation acts of war, acts of God, earthquake, flood, weather conditions, embargo, riot, epidemic, acts of terrorism, acts or omissions of vendors or suppliers, equipment failures, sabotage, labor shortage or dispute, governmental act, failure of the Internet or other acts beyond such party's reasonable control, provided that the delayed party: (i) gives the other party prompt notice of such cause; and (ii) uses reasonable commercial efforts to correct promptly such failure or delay in performance.

c. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts and electronically, each of which shall be an original but all of which together shall constitute one and the same instrument.

d. <u>Entire Agreement</u>. This Agreement contains the entire understanding of the parties in respect of its subject matter and supersedes all prior agreements and understandings (oral or written) between the parties with respect to such subject matter. The schedules and exhibits hereto constitute a part hereof as though set forth in full herein.

e. <u>Modifications</u>. Any modification, amendment, or addendum to this Agreement must be in writing and signed by both parties.

f. <u>Assignment</u>. Neither party may assign this Agreement or any of its rights, obligations, or benefits hereunder, by operation of law or otherwise, without the other party's prior written consent; <u>provided</u>, <u>however</u>, either party, without the consent of the other party, may assign this Agreement to an Affiliate or to a successor (whether direct or indirect, by operation of law, and/or by way of purchase, merger, consolidation or otherwise) to all or substantially all of the business or assets of such party, where the responsibilities or obligations of the other party are not increased by such assignment and the rights and remedies available to the other party are not adversely affected by such assignment. Subject to that restriction, this Agreement will be binding on, inure to the benefit of, and be enforceable against the parties and their respective successors and permitted assigns.

g. <u>No Third Party Beneficiaries</u>. The representations, warranties and other terms contained herein are for the sole benefit of the parties hereto and their respective successors and permitted assigns, and shall not be construed as conferring any rights on any other persons.

h. <u>Statistical Data</u>. Without limiting the confidentiality rights and Intellectual Property Rights protections set forth in this Agreement, CPT has the perpetual right to use aggregated, anonymized, and statistical data ("Statistical Data") derived from the operation of the Software, and nothing herein shall be construed as prohibiting CPT from utilizing the Statistical Data for business and/or operating purposes, provided that CPT does not share with any third party Statistical Data which reveals the identity of Client, Client's Class Members, or Client's Confidential Information.

i. <u>Export Controls</u>. Client understands that the use of CPT's Products is subject to U.S. export controls and trade and economic sanctions laws and agrees to comply with all such applicable laws and regulations, including the Export Administration Regulations maintained by the U.S. Department of Commerce, and the trade and economic sanctions maintained by the Treasury Department's Office of Foreign Assets Control.

j. <u>Severability</u>. If any provision of this Agreement is held by a court or arbitrator of competent jurisdiction to be contrary to law, such provision shall be changed by the court or by the arbitrator and interpreted so as to best accomplish the objectives of the original provision to the fullest extent allowed by law, and the remaining provisions of this Agreement shall remain in full force and effect.

k. <u>Notices</u>. Any notice or communication required or permitted to be given hereunder may be delivered by hand, deposited with an overnight courier, sent by electronic delivery, or mailed by registered or certified mail, return receipt requested and postage prepaid to the address for the other party first written above or at such other address as may hereafter be furnished in writing by either party hereto to the other party. Such notice will be deemed to have been given as of the date it is delivered, if by personal delivery; the next business day, if deposited with an overnight courier; upon receipt of confirmation of electronic delivery (if followed up by such registered or certified mail); and five days after being so mailed.

l. <u>Independent Contractors</u>. Client and CPT are independent contractors, and nothing in this Agreement shall create any partnership, joint venture, agency, franchise, sales representative or employment relationship between Client and CPT. Each party understands that it does not have authority to make or accept any offers or make any representations on behalf of the other. Neither party may make any statement that would contradict anything in this section.

m. <u>Subcontractors</u>. CPT shall notify Client of its use of any subcontractors to perform Client-specific Services. CPT shall be responsible for its subcontractors' performance of Services under this Agreement.

n. <u>Headings</u>. The headings of the sections of this Agreement are for convenience only, do not form a part hereof, and in no way limit, define, describe, modify, interpret or construe its meaning, scope or intent.

o. <u>Waiver</u>. No failure or delay on the part of either party in exercising any right, power or remedy under this Agreement shall operate as a waiver, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise or the exercise of any other right, power or remedy.

p. <u>Survival</u>. Sections of the Agreement intended by their nature and content to survive termination of the Agreement shall so survive.