1            UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5    GARY MIDDLE RIDER, AN          )  C-17-04015 LHK
     INDIVIDUAL, ROBERT GARZA, AN   )
6    INDIVIDUAL, ALBERT ARELLANO, AN )  SAN JOSE, CALIFORNIA
     INDIVIDUAL, JOSE DON CORONADO,  )
7    AN INDIVIDUAL,                  )  MAY 23, 2019
                                     )
8                    PLAINTIFFS,     )  PAGES 1-37
                                     )
9              VS.                   )
                                     )
10   MOVING SOLUTIONS, A CALIFORNIA  )
     CORPORATION, MANAGED FACILITIES )
11   SOLUTIONS, LLC, A CALIFORNIA    )
     LIMITED LIABILITY COMPANY AND   )
12   CHARTWELL STAFFING SOLUTIONS,   )
     INC., A NEW YORK CORPORATION    )
13   LICENSED TO DO BUSINESS IN      )
     CALIFORNIA,                     )
14                                   )
                     DEFENDANTS.     )
15   _____  )

16

17

                TRANSCRIPT OF PROCEEDINGS
18           BEFORE THE HONORABLE LUCY H. KOH
               UNITED STATES DISTRICT JUDGE
19

20

21             APPEARANCES ON NEXT PAGE

22

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER

```
 1

 2       A P P E A R A N C E S:

 3

 4       FOR THE PLAINTIFFS:     LAW OFFICES OF JAMES DAL BON
                                 BY:  JAMES DAL BON
 5                               606 NORTH FIRST STREET
                                 SAN JOSE, CALIFORNIA  95112
 6

 7                               BOOKE & AJLOUNY
                                 BY:  VICTORIA L.H. BOOKE
 8                               606 NORTH FIRST STREET
                                 SAN JOSE, CALIFORNIA  95112
 9

10       FOR DEFENDANT           EMPLOYMENT RIGHTS ATTORNEYS
         MOVING SOLUTIONS:       BY:  RICHARD D. SCHRAMM (BY PHONE)
11                               1500 EAST HAMILTON AVENUE, SUITE 118
                                 CAMPBELL, CALIFORNIA  95008
12

13       FOR DEFENDANT           BRYAN CAVE LEIGHTON PAISNER
         CHARTWELL STAFFING:     BY:  CHRISTOPHER J. ARCHIBALD (BY PHONE)
14                               3161 MICHELSON DRIVE, SUITE 1500
                                 IRVINE, CALIFORNIA  92612
15

16       SPECIALLY APPEARING     KAISER GORNICK
         FOR DEFENDANT           BY:  DAVID MARKEVITCH
17       MANAGED FACILITIES:     950 TOWER LANE, SUITE 925
                                 FOSTER CITY, CALIFORNIA  94404
18

19

20

21

22

23

24

25
```

```
1    SAN JOSE, CALIFORNIA                    MAY 23, 2019

2                    P R O C E E D I N G S

3         (COURT CONVENED AT 1:35 P.M.)

4              THE COURT:  GOOD AFTERNOON.

5              THE CLERK:  CALLING CASE 17-CV-4015, MIDDLE RIDER

6    VERSUS MOVING SOLUTIONS, INCORPORATED.

7              MR. DAL BON:  JAMES DAL BON FOR THE PLAINTIFFS.

8              MS. BOOKE:  VICTORIA BOOKE FOR THE PLAINTIFFS, YOUR

9    HONOR.

10             MR. MARKEVITCH:  GOOD AFTERNOON, YOUR HONOR.

11        DAVID MARKEVITCH SPECIALLY APPEARING FOR AFFELD GRIVAKES

12   LLP, COUNSEL FOR DEFENDANT MANAGED FACILITIES SOLUTIONS, LLC.

13             THE COURT:  OKAY.  I'M SORRY, WAIT ONE MINUTE.  CAN

14   YOU REPEAT YOUR NAME AGAIN ONE MORE TIME, PLEASE?

15             MR. MARKEVITCH:  CERTAINLY.  DAVID MARKEVITCH.

16             THE COURT:  AND YOU'RE HERE ON BEHALF OF DEFENDANT

17   MOVING SOLUTIONS, INC.?

18             MR. MARKEVITCH:  MANAGE FACILITIES SOLUTIONS.

19             THE COURT:  AH, GOT IT.  AND WERE YOU THE ONE THAT IS

20   SPECIALLY APPEARING FOR TODAY?

21             MR. MARKEVITCH:  YES, YOUR HONOR.

22             THE COURT:  WILL YOU BE SPECIALLY APPEARING AT THE

23   FINAL APPROVAL AS WELL IF THERE IS ONE?

24             MR. MARKEVITCH:  NOT THAT I'M AWARE OF AT THIS TIME.

25   SO I HAVE TO SAY NO AT THIS TIME.
```

1          THE COURT:  OKAY.  ALL RIGHT.  WELL, THANK YOU.

2       ALL RIGHT.  WHO'S WITH US ON THE PHONE, PLEASE?

3          MR. SCHRAMM:  GOOD AFTERNOON.

4       RICHARD SCHRAMM APPEARING FOR THE DEFENDANT MOVING

5    SOLUTIONS.

6          THE COURT:  OKAY.  THANK YOU.

7          MR. ARCHIBALD:  GOOD AFTERNOON, YOUR HONOR.

8       CHRIS ARCHIBALD FOR DEFENDANT CHARTWELL STAFFING SERVICES,

9    INC.

10          THE COURT:  ARE YOU WITH BRYAN CAVE?

11          MR. ARCHIBALD:  YES, YOUR HONOR.

12          THE COURT:  OKAY.  HAVE YOU FILED A NOTICE OF

13    APPEARANCE IN THIS CASE?

14          MR. ARCHIBALD:  YOUR HONOR, WE'VE BEEN INVOLVED IN

15    THIS CASE THE ENTIRE TIME.

16       THERE WAS A MISTAKE ON THE WITHDRAWAL.  THE CLERK WITHDREW

17    US AS REPRESENTED CHARTWELL AS WELL AS MFS, SO THAT MAY BE THE

18    ISSUE.

19          THE COURT:  OKAY.  I -- IT'S JUST THAT I ONLY HAVE

20    ALLISON ECKSTROM AND MICHAEL OLSEN ON MY LIST.  AND MY LIST MAY

21    BE OUTDATED.  I WAS JUST WONDERING IF -- OH, OKAY.  ALL RIGHT.

22       OKAY.  THANK YOU.  BUT YOU'RE ON ECF ON THE CASE; CORRECT?

23          MR. ARCHIBALD:  YES, YOUR HONOR.

24          THE COURT:  THANK YOU.

25       OKAY.  ALL RIGHT.  SO I HAVE A NUMBER OF QUESTIONS.

```
 1              DOES THE SETTLEMENT CLASS DEFINITION APPLY TO BOTH RULE 23
 2    STATE CLAIMS AND THE FLSA OPT IN CLAIM, BUT NOT THE PAGA CLAIM?
 3    IS THAT RIGHT?
 4              MR. DAL BON:  YES, YOUR HONOR.
 5          BUT THE -- IF THEY DON'T MAKE A CLAIM, THEN THEY'RE NOT
 6    SETTLING OUT OF THE FLSA CASE.  SO THEY HAVE TO MAKE A CLAIM.
 7    THEY HAVE TO OPT IN TO SETTLE OUT OF THE FLSA PORTION OF THE
 8    CASE.
 9              THE COURT:  AND EXPLAIN TO ME WHY -- AND I KNOW IN
10    YOUR MOTION YOU SAID THAT YOU KNOW THAT I DON'T LIKE TO HAVE
11    CLAIM FORMS IN WAGE CASES BECAUSE YOU KNOW WHO THESE PEOPLE
12    ARE, YOU GENERALLY HAVE ALL THEIR INFORMATION.
13              MR. DAL BON:  RIGHT.
14              THE COURT:  WHY DID YOU HAVE A CLAIM FORM HERE?  I
15    DIDN'T QUITE UNDERSTAND WHETHER YOU THOUGHT THAT IF YOU DIDN'T
16    HAVE A CLAIM FORM, MOST OF THE CLASS MEMBERS WOULD NOT CASH
17    THEIR CHECKS BECAUSE YOU DON'T HAVE THEIR CORRECT ADDRESS.  WAS
18    THAT THE CONCERN?
19              MR. DAL BON:  YEAH.  WE'RE AFRAID THAT THE -- IT'S A
20    HIGHLY TRANSIENT POPULATION.  I THINK THAT MORE THAN 50 PERCENT
21    OF THEM WORKED THERE FOR FOUR WEEKS OR LESS.  SOME OF THEM
22    WORKED THERE FOR ONE WEEK.
23          SO WHAT WE'RE AFRAID OF IS WE'LL HAVE A BUNCH OF CHECKS
24    OUT THERE THAT'LL GO UNCASHED AND GO TO EITHER A CY PRES
25    CHARITY OR SOMETHING LIKE THAT.
```

1    WHAT WE WOULD RATHER HAVE THAT MONEY GO TO IS THE

2    EMPLOYEES WHO DO MAKE CLAIMS, AND WE JUST THOUGHT THAT THIS --

3            THE COURT:  BUT YOU'RE CREATING TWO HURDLES; RIGHT?

4    IT'S NOT LIKE THE PEOPLE WHO YOU DON'T HAVE A CORRECT ADDRESS

5    FOR ARE GOING TO FILL OUT A CLAIM FORM; RIGHT?  SO YOU'RE ONLY

6    GOING TO BE COMMUNICATING WITH THE PEOPLE FOR WHOM YOU HAVE A

7    GOOD ADDRESS; RIGHT?

8            MR. DAL BON:  YES.

9            THE COURT:  AND INSTEAD OF GIVING ALL THOSE PEOPLE

10    MONEY, YOU'RE SAYING, "FILL OUT A CLAIM FORM, OTHERWISE EVEN

11    YOU WON'T GET MONEY."

12        I FEEL LIKE YOU'RE ACTUALLY MAKING IT WORSE.

13            MR. DAL BON:  OKAY.

14            THE COURT:  DO YOU UNDERSTAND WHAT I'M SAYING?

15            MR. DAL BON:  YEAH.

16            THE COURT:  IF YOU HAD -- YOU'RE CREATING ANOTHER

17    HURDLE FOR THE PEOPLE FOR WHOM YOU HAVE GOOD ADDRESSES.

18            MR. DAL BON:  AND IF YOU WANT US TO GO BACK TO THE

19    OTHER WAY, WE WILL.

20        WE'RE JUST TRYING TO FIGURE OUT A WAY OF GETTING THE MOST

21    MONEY IN THE HANDS OF THE EMPLOYEES, IF THAT MAKES SENSE.

22    WE'RE JUST AFRAID THAT WITH PEOPLE WHO WORKED THERE FOR A WEEK,

23    THEY'RE NOT GOING TO, YOU KNOW, CASH THEIR CHECKS AND THEY'RE

24    JUST GOING TO BE SITTING THERE.

25            MR. ARCHIBALD:  IF I MAY, YOUR HONOR?  THIS IS

1    CHRIS ARCHIBALD.

2         ANOTHER REASON FOR IT WAS THE NEED FOR THE FLSA CLASS

3    MEMBERS TO OPT IN.

4         SO I GUESS THE OTHER ALTERNATIVE WOULD HAVE BEEN FOR THEIR

5    CASHING THE CHECK TO CONSTITUTE AN OPT IN, BUT WE THOUGH THAT

6    HAVING CLAIM FORMS WOULD BE A BETTER WAY TO DO THAT BECAUSE WE

7    HAVE THE ADDITIONAL ISSUE OF THESE PEOPLE BEING VERY TRANSIENT,

8    AND MANY OF THEM WORKING ONLY ONE WEEK.

9         BUT THAT'S THE RATIONALE FOR IT, BUT I -- IF THE COURT

10   DISAGREES WITH IT, I DON'T THINK ANYBODY WOULD, YOU KNOW, HAVE

11   AN ISSUE WITH DOING IT DIFFERENTLY.

12        THE COURT:  LET ME ASK ANOTHER QUESTION.  YOUR

13   NUMBERS FOR YOUR CLASS MEMBERS, THEY JUST DON'T ADD UP, AND I

14   DON'T KNOW WHETHER THAT'S JUST A TYPO.  WHEN I ADD UP THE

15   PEOPLE WHO HAVE WORKED THERE FOR ONE WEEK OR LESS, TWO WEEKS OR

16   LESS, FOUR WEEKS OR LESS, I GET 1,200 PEOPLE.

17        BUT YOU SAY THE ONLY -- THAT ONLY 1,021 PEOPLE ARE IN THE

18   CLASS.

19        SO DID YOU MAKE A TYPO MISTAKE OR -- DO YOU UNDERSTAND

20   WHAT I'M SAYING?  THE NUMBERS DON'T ADD UP.

21        MR. DAL BON:  YEAH.  I DON'T KNOW WHETHER I

22   CROSS-CHECKED THOSE NUMBERS.  THE NUMBERS WERE GIVEN TO ME BY

23   THE DEFENDANT AS FAR AS THE WORKWEEKS AND STUFF LIKE THAT.

24        THE COURT:  SO 262 PEOPLE WORKED ONE WEEK OR LESS;

25   308 PEOPLE WORKED TWO WEEK OR LESS.

1           AND EVEN THE DEFINITIONS ARE PROBLEMATIC BECAUSE EVERYONE

2    WHO WORKED TWO WEEK OR LESS WOULD ALSO FALL IN THE CATEGORY OF

3    PEOPLE WHO WORKED ONE WEEK OR LESS.  SO I COULDN'T TELL WHETHER

4    THOSE TWO GROUPS ARE MUTUALLY EXCLUSIVE, OR ARE YOU INCLUDING

5    PEOPLE WHO WORKED ONE WEEK IN THE PEOPLE WHO WORKED TWO WEEKS

6    OR LESS CATEGORY?

7                MR. DAL BON:  I THINK I MADE THE ASSUMPTION THAT --

8                MR. ARCHIBALD:  WELL --

9                MR. DAL BON:  GO AHEAD, MR. ARCHIBALD.

10   CAN MR. ARCHIBALD ANSWER?  BECAUSE I MADE THE

11   ASSUMPTION --

12               MR. ARCHIBALD:  YES, I CAN CLARIFY.

13   YES, YOUR HONOR.  SO ANYBODY THAT WORKED ONE WEEK OR LESS

14   WAS ALSO INCLUDED AS WORKING TWO WEEKS OR LESS OR THREE WEEKS

15   OR LESS.  SO YOU SHOULDN'T BE ADDING THOSE THREE TOGETHER AS

16   FAR AS FIGURING OUT THE TOTAL NUMBER OF CLASS MEMBERS.

17           SO IT'S AN ACCURATE STATEMENT THAT HALF, ABOUT HALF OF THE

18   PUTATIVE CLASS WORKED FOUR WEEKS OR LESS, AND IT'S ALSO

19   ACCURATE THAT ABOUT A QUARTER OF THE PUTATIVE CLASS WORKED ONE

20   WEEK OR LESS.

21               THE COURT:  SO HOW DO YOU GET -- HOW DO YOU GET THE

22   CLASS SIZE THEN?  THE OTHER HALF OF THE CLASS WORKED MORE THAN

23   A MONTH?

24               MR. DAL BON:  THAT WAS MY ASSUMPTION.

25               MR. ARCHIBALD:  THAT'S CORRECT.  WE -- WE HAVE THE

1        LIST OF THEM.

2               THE COURT:  SO CAN I ASK YOU, EVERYONE WHO WORKED

3        FOUR WEEKS OR LESS -- WELL, OKAY.  SO THE FOUR WEEK OR LESS

4        FOLKS INCLUDE THE PEOPLE WHO WORKED TWO WEEK OR LESS OR ONE

5        WEEK OR LESS?

6               MR. DAL BON:  THAT WAS MY ASSUMPTION.

7               THE COURT:  I SEE.  OKAY.

8               MR. ARCHIBALD:  CORRECT.

9               THE COURT:  SO THEY ARE NOT MUTUALLY EXCLUSIVE.

10              MR. DAL BON:  I'M SORRY.  I DIDN'T CROSS-CHECK IT OR

11       TALK -- I JUST MADE THAT ASSUMPTION.

12              THE COURT:  OKAY.  SO IT'S KIND OF LIKE THOSE RUSSIAN

13       DOLLS.  THE FIRST LITTLE DOLL WOULD BE 262, AND THAT WOULD BE

14       INSIDE THE GROUP THAT'S 398, AND THAT WOULD BE INSIDE THE GROUP

15       THAT'S 542.

16              MR. DAL BON:  RIGHT.

17              THE COURT:  OKAY.  I DIDN'T UNDERSTAND HOW THAT

18       WORKED.

19              MR. ARCHIBALD:  THAT'S RIGHT.

20              THE COURT:  OKAY.  AND THEN WHAT'S THE AVERAGE LENGTH

21       OF TIME THAT PEOPLE WORKED WHO WORKED THERE FOR MORE THAN FOUR

22       WEEKS?

23              MR. DAL BON:  I DON'T HAVE AN ANSWER TO THAT.

24              THE COURT:  DO YOU, MR. ARCHIBALD?

25              MR. ARCHIBALD:  NOT OFF THE TOP OF MY HEAD.  I CAN

1    OPEN UP THE LIST ON MY COMPUTER AND TRY TO DO A ROUGH --

2              THE COURT:  OKAY, SURE.  I MEAN, WE'LL KEEP GOING AND

3    ANSWERING QUESTIONS, BUT IF YOU HAVE AN ANSWER, IT WOULD BE

4    APPRECIATED.

5              MR. ARCHIBALD:  I THINK THERE WERE 17,500 WORKWEEKS.

6              MR. DAL BON:  RIGHT.

7              MR. ARCHIBALD:  AND SO IF YOU -- HOW MANY PEOPLE WERE

8    FOUR WEEKS OR LESS?  400-SOMETHING?

9              THE COURT:  542.

10             MR. ARCHIBALD:  OKAY.  SO 1,021 MINUS 542, THAT

11   LEAVES 479 PEOPLE, AND IF YOU HAVE THE 17, 17,000 WEEKS, WHAT

12   DID I SAY, 549 PEOPLE?

13             THE COURT:  542 WORKED FOUR WEEKS OR LESS.

14        WELL, I'M GOING TO LET YOU LOOK AT THAT.  LET ME GO ON --

15   DO YOU HAVE AN ANSWER?

16             MR. ARCHIBALD:  YEAH, HANG ON.

17        I THINK THAT'S 35 WEEKS, SO OF COURSE YOU HAVE SOME PEOPLE

18   FIVE WEEKS, SIX WEEKS, TEN WEEKS, AND THEN SOME PEOPLE 50

19   WEEKS, 60 WEEKS.

20        BUT THE AVERAGE WOULD BE 35 WEEKS, SO JUST OVER SIX

21   MONTHS.  SO IT'S PRETTY SHORT-TERM WORK FORCE.

22             THE COURT:  ALL RIGHT.  WHY WILL THE SECOND

23   INSTALLMENT TAKE 210 DAYS TO GO OUT?

24             MR. ARCHIBALD:  YOUR HONOR, THAT'S JUST WHAT WE

25   AGREED TO AT MEDIATION.  ONE OF THE -- ONE OF THE FACTORS IN

```
1      THE SETTLEMENT WAS THE FINANCIAL CONDITION OF BOTH OF THE

2   DEFENDANTS.

3              THE COURT:  I SEE.

4              MR. ARCHIBALD:  AND IN ORDER TO MAKE SURE THAT THEY

5   CAN PLAN AND BE PUTTING MONEY AWAY FOR THE SETTLEMENT, THAT'S

6   WHAT WE AGREED TO IS THE APPROPRIATE AMOUNT OF TIME.

7              THE COURT:  OKAY.  THANK YOU.

8              MR. ARCHIBALD:  YES, YOUR HONOR.

9              THE COURT:  OKAY.  HOW MUCH DO THE CLASS MEMBERS

10  GENERALLY MAKE AN HOUR ON AVERAGE?  IS IT 17.50?  THAT SEEMS TO

11  BE THE ASSUMPTION IN YOUR MOTION.

12             MR. DAL BON:  THAT WAS THE ASSUMPTION IN MY MOTION,

13  YES.

14             THE COURT:  OKAY.

15      MR. ARCHIBALD, DO YOU KNOW WHAT THE AVERAGE HOURLY RATE

16  IS?

17             MR. ARCHIBALD:  YES, THAT'S THE AVERAGE, YOUR HONOR.

18             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

19      NOW, WHY DID YOU ASSUME 7.5 HOURS OF UNPAID WAITING TIME A

20  WEEK?  NO, I THINK THE 7.5 IS OVERTIME; RIGHT?  IS 7.5 THE

21  ASSUMED NUMBER OF HOURS OF UNPAID WAITING TIME, OR OVERTIME, OR

22  BOTH?

23             MR. DAL BON:  IT WAS UNPAID WAITING TIME AND

24  OVERTIME.  SO WE ASSUMED --

25             THE COURT:  COMBINED?
```

1           MR. DAL BON:  WHAT?

2           THE COURT:  YOU SAID UNPAID OVERTIME AND WAITING

3     TIME.  COMBINED OR SEPARATE 7.5 HOURS?

4           MR. DAL BON:  WELL, WHAT WE ASSUMED WAS THAT THEY

5     WERE WAITING AROUND, OKAY, MAYBE ABOUT AN HOUR TO AN HOUR AND A

6     HALF EACH DAY.

7           THE COURT:  UM-HUM.

8           MR. DAL BON:  SO I TOOK THE LARGER PORTION OF THAT.

9      OKAY?

10          NOW, MOST OF THE PEOPLE THAT WERE WAITING AROUND PROBABLY

11    WORKED OVERTIME ON THAT PARTICULAR DAY.  OKAY?  BUT MAYBE SOME

12    OF THEM WORKED UNDER 8 HOURS, IN WHICH CASE THAT WOULD BE A

13    CASE WHERE THEY WOULD MAKE THE REGULAR RATE OF PAY.

14          BUT WE TRIED -- I TRIED TO MAKE AN ASSUMPTION THAT THIS

15    WAS OVERTIME AND IT'S, IT'S -- IT MAY BE HARD -- WITHOUT

16    DIGGING DOWN INTO ALL THE PARTICULARS, IT WOULD BE HARD TO, TO

17    DISTINGUISH ON A DAY-TO-DAY PERIOD, YOU KNOW, WHO WORKED MORE

18    THAN 8 HOURS DURING THAT WAITING TIME PERIOD AND WHO MAYBE

19    WORKED A LITTLE LESS THAN 8 HOURS DURING THAT UNPAID WAITING

20    TIME PERIOD.

21          THE COURT:  SO THE AMOUNT OF EXPOSURE THAT YOU SAID

22     TOTAL THE DEFENDANTS HAVE FROM YOUR CLAIMS WAS 9 TO

23     $14 MILLION.

24          MR. DAL BON:  CORRECT.

25          THE COURT:  BUT THEN THE ONLY FIGURES YOU GIVE FOR

1   WHAT YOUR OVERTIME AND WAITING TIME PENALTY TOTAL DAMAGES WOULD

2   BE ARE BASICALLY 3.4 MILLION AND 2.1 MILLION.  SO THAT ADDS UP

3   TO, WHAT, ABOUT 5.5 MILLION.

4           MR. DAL BON:  YES.

5           THE COURT:  SO WHERE DO YOU GET THE 9 AND THE 14

6   MILLION?

7           MR. DAL BON:  YOUR HONOR, I'D HAVE TO GO LOOK BACK AT

8   MY MEDIATION BRIEF.  BUT I BELIEVE, YOU KNOW, IF WE GOT A LUNCH

9   PERIOD PENALTY, IF WE GOT A MINIMUM WAGE VIOLATION OF

10  LIQUIDATED DAMAGES, YOU KNOW, YOU ADD IN THE FLSA, THE PAY STUB

11  PENALTY, THE 203 PENALTY FOR THESE -- THE 203 PENALTY WAS

12  PRETTY LARGE BECAUSE OF THE TRANSIENT NATURE OF THE EMPLOYEES.

13          THE COURT:  SO THEN WHY DID YOU ONLY INCLUDE THE

14  CALCULATIONS FOR OVERTIME AND WAITING TIME?

15          MR. DAL BON:  IN WHAT?  IN WHAT RESPECT?

16          THE COURT:  IN YOUR MOTION YOU SAY THE MAXIMUM

17  POTENTIAL LIABILITY IS 9 TO $14 MILLION.

18          MR. DAL BON:  RIGHT.

19          THE COURT:  BUT I'M ONLY GOING TO TRY TO EXPLAIN 5.5

20  MILLION OF THAT LOW END NUMBER, HALF OF THE LOW END NUMBER.

21          MR. DAL BON:  OKAY.

22          THE COURT:  SO NORMALLY, UNDER OUR PROCEDURAL

23  GUIDANCE FOR CLASS ACTION SETTLEMENTS IN THE DISTRICT, YOU'RE

24  SUPPOSED TO SAY WHAT YOUR MAXIMUM TOTAL EXPOSURE, POTENTIAL

25  RECOVERY WOULD BE.

1           MR. DAL BON:  OKAY.

2           THE COURT:  AND EXPLAIN HOW YOU GOT THERE.

3           MR. DAL BON:  OKAY.

4           THE COURT:  AND YOU HAVE DONE THAT FOR ALL OF YOUR

5    OTHER CLAIMS, SO I'M GOING TO ORDER YOU TO DO THAT.  WHEN CAN

6    YOU FILE AN EXPLANATION FOR HOW TO YOU GET 9 TO $14 MILLION?

7           MR. DAL BON:  EASILY WITHIN A WEEK.  I'VE GOT ALL THE

8    FIGURES BACK AT MY OFFICE.

9           THE COURT:  OKAY.

10          MR. DAL BON:  I'M JUST GOING TO TAKE THEM FROM MY

11   MEDIATION BRIEF.

12          THE COURT:  TODAY IS THE 23RD.  SO YOU'LL DO THAT BY

13   MAY 30TH?

14          MR. DAL BON:  ABSOLUTELY.

15          THE COURT:  BECAUSE OTHERWISE IT LOOKS REALLY SMALL.

16   IF YOU SAY THAT THE DAMAGES IS 14 MILLION POTENTIAL, THEN YOU

17   ONLY GOT 470,000, WAS THAT BECAUSE OF THE FINANCIAL CONDITION

18   OF THE DEFENDANTS?

19          MR. DAL BON:  NO.

20          MR. ARCHIBALD:  YOUR HONOR, THIS IS CHRIS ARCHIBALD.

21   IF I CAN SPEAK TO THAT?

22          WE -- OUR ESTIMATED EXPOSURE WAS NOT 9 TO 14 MILLION.  SO

23   AT MEDIATION WE TOOK ISSUE WITH THEIR CLAIMED MAXIMUM EXPOSURE

24   AND IT WAS ACTUALLY, IN OUR OPINION, MUCH LESS THAN THAT.

25          AND OBVIOUSLY WE CONTEND IT WOULD HAVE BEEN VERY DIFFICULT

1    TO CERTIFY THESE CLASSES, SO THAT'S HOW WE CAME TO THE

2    SETTLEMENT AMOUNT.

3           THE COURT:  OKAY.  SO THIS IS WHAT I'D LIKE YOU TO

4    DO.  I'D LIKE YOU TO FILE A JOINT STATEMENT ON MAY 30TH ABOUT

5    WHAT BOTH SIDES BELIEVE YOUR LIABILITY WOULD HAVE BEEN.  OKAY?

6           MR. DAL BON:  OKAY.

7           THE COURT:  AND I WANT YOU TO EXPLAIN IT TO ME, HOW

8    YOU CALCULATE IT, GIVE ME THE NUMBERS.  IF YOU'RE MAKING

9    ASSUMPTIONS, EXPLAIN WHAT YOUR ASSUMPTIONS ARE.

10      NOW --

11          MR. ARCHIBALD:  YOUR HONOR, WE CONTEND THAT THE

12   LIABILITY IS ZERO, SO --

13          THE COURT:  ALL RIGHT.  SO IF I'M NOT GOING TO GET

14   ANYTHING MORE FROM YOU, THAT'S FINE.  I GAVE YOU THE

15   OPPORTUNITY.  IF YOU WANT TO JUST SAY, "WE THINK THERE'S NO

16   LIABILITY, IT'S ZERO," THAT'S FINE.  I'LL JUST HAVE THE 9 TO

17   $14 MILLION NUMBER TO ASSESS THIS SETTLEMENT FOR

18   REASONABLENESS.

19      I MEAN, I CERTAINLY SEE DEFENDANTS MAKING ARGUMENTS IN THE

20   ALTERNATIVE, SAYING OF COURSE WE HAVE NO LIABILITY, WE'RE NOT

21   ADMITTING ANY WRONGDOING BY ENTERING INTO THIS SETTLEMENT.

22      SO I -- I DON'T WANT TO PUT YOU IN A WEIRD POSITION WHERE

23   YOU HAVE TO SAY WHAT YOUR LIABILITY EVEN WOULD HAVE BEEN.  SO

24   IT'S UP TO YOU.

25          I THINK IT WOULD BE PERSONALLY HELPFUL FOR ME TO

1    UNDERSTAND WHY THIS IS REASONABLE, BUT I UNDERSTAND IT MIGHT BE

2    AN ADMISSION FOR YOU THAT WOULD BE AWKWARD FOR YOUR CLIENT.  SO

3    I'LL JUST LEAVE IT UP TO YOU.

4        OKAY.  SO LET'S ASK --

5            MR. ARCHIBALD:  I APPRECIATE THAT.

6            THE COURT:  WHAT?

7    DID HE SAY I APPRECIATE THAT?

8            MR. DAL BON:  YEAH.

9            THE COURT:  SORRY.  I'M HAVING A LITTLE DIFFICULTY

10   HEARING YOU.

11       SO WHAT IS THE ESTIMATED AVERAGE RECOVERY?  YOU SAY THE

12   RECOVERY PER WEEK WORKED WOULD BE $16.85.  BUT WHAT'S THE TOTAL

13   AVERAGE RECOVERY?  WHAT'S THE HIGHEST?  WHAT'S THE LOWEST?

14   WHAT'S THE AVERAGE?

15           MR. DAL BON:  I DON'T HAVE THOSE FIGURES.  WE CAN

16   PROVIDE THEM TO YOU.

17           THE COURT:  OKAY.  WHY DON'T YOU PUT THAT IN THIS

18   MAY 30TH FILING?  OKAY?

19           MR. DAL BON:  OKAY.

20           THE COURT:  OKAY.  NOW, CAN YOU EXPLAIN THE CLASS'S

21   WORKWEEKS?  ARE THESE NUMBERS, LESS THAN ONE TO FOUR WORKWEEKS,

22   BECAUSE OF THE TEMPORARY NATURE OF THE EMPLOYMENT?

23           MR. ARCHIBALD:  YES, THAT'S CORRECT, YOUR HONOR.

24           THE COURT:  NOW, SOME OF YOUR DOCUMENTS ASSUME THAT

25   THE SETTLEMENT ADMINISTRATOR IS GOING TO BE KCC, AND THEN SOME

1    SAY CPT GROUP.  WHAT'S THE ANSWER?  YOUR MOTION SAYS IT'S GOING

2    TO BE CPT, BUT YOUR NOTICE SAYS IT'S KCC.  SO --

3              MR. DAL BON:  IT'S GOING TO BE CPT.  WE'LL CHANGE IT

4    IN THE NOTICE.  CPT IS LESS EXPENSIVE.

5              THE COURT:  OKAY.  ALL RIGHT.

6         LET'S TALK ABOUT -- SO FOR FINAL APPROVAL, YOUR NAMED

7    PLAINTIFFS SHOULD SUBMIT A DECLARATION, ONE FOR EACH PERSON,

8    REGARDING THEIR PARTICIPATION IN THE CASE, EXACTLY WHAT THEY

9    DID, HOW MANY HOURS THEY SPENT TO JUSTIFY ANY INCENTIVE

10   PAYMENT.  OKAY?

11             MR. DAL BON:  OKAY.

12             THE COURT:  ALL RIGHT.  NOW -- OH, LET ME ALSO TALK

13   ABOUT THE ATTORNEYS' FEES.

14        SO WHY DID YOU NEED TWO LAW FIRMS IN THIS CASE?

15             MS. BOOKE:  DO YOU WANT ME TO SPEAK TO THAT?

16             MR. DAL BON:  OH MY GOD.  YEAH.

17             MS. BOOKE:  CLASS ACTION CASES IN GENERAL ARE VERY

18   VOLUMINOUS.  I AM THE ONLY LITIGATOR IN A FIRM OF TWO, AND JIM

19   IS A -- MR. DAL BON IS A SOLO PRACTITIONER.

20        AND WHEN YOU HAVE A CASE THAT HAS LITERALLY HUNDREDS, IF

21   NOT THOUSANDS, OF POTENTIAL PLAINTIFFS, YOU HAVE A LOT OF

22   DOCUMENTS TO GO THROUGH, YOU HAVE A LOT OF NUANCES, A LOT OF

23   ISSUES.  IT IS A PHENOMENAL AMOUNT OF WORK FOR ONE FIRM, AND IT

24   IS PROBABLY IMPOSSIBLE FOR A SOLO PRACTITIONER TO DO A CLASS

25   ACTION ADEQUATELY.  THERE --

1          THE COURT:  OH, SOME OF THE BEST ONES I KNOW, SOME OF

2     THEM ARE SOLOS.

3          MS. BOOKE:  I BET THEY HAVE QUITE A STAFF, THOUGH.

4          THE COURT:  THEY MIGHT HAVE OTHER LAWYERS WORKING IN

5     THEIR OFFICES.

6          MR. DAL BON:  YEAH.

7          THE COURT:  SO NEITHER OF YOU INCLUDED YOUR RESUME.

8     I'LL NEED A RESUME AND I'LL NEED A BETTER REASON FOR YOUR

9     HOURLY RATE.

10         MS. BOOKE, YOU INCLUDED THE LAFFEY MATRIX.  THE NINTH

11    CIRCUIT HAS STATED THAT JUST BECAUSE A LAFFEY MATRIX IS

12    ACCEPTED IN THE DISTRICT OF COLUMBIA, IT DOESN'T MEAN IT'S A

13    SOUND BASIS FOR DETERMINING RATES IN A LEGAL MARKET 3,000 MILES

14    AWAY, AND IT'S QUESTIONABLE WHETHER RATES IN ALEXANDRIA,

15    VIRGINIA ARE APPROPRIATE IN THE NORTHERN DISTRICT OF

16    CALIFORNIA.

17         SO THE NINTH CIRCUIT HAS ACTUALLY REJECTED THE ADOPTION OF

18    THE LAFFEY MATRIX TO SET RATES IN THE NORTHERN DISTRICT OF

19    CALIFORNIA.

20         MR. DAL BON:  OKAY.

21         THE COURT:  PRISON LEGAL NEWS VERSUS SCHWARZENEGGER,

22    608 F.3D 446, 454, NINTH CIRCUIT, 2010.

23         YOU CAN ALSO SEE -- WELL, THERE ARE MANY OTHER DISTRICT

24    COURT CASES, INCLUDING MANY OF MY OWN, WHO HAVE REJECTED THE

25    LAFFEY MATRIX BASED ON WHAT THE NINTH CIRCUIT SAID.  SO THAT

1    WON'T BE THE RIGHT THING TO INCLUDE.

2         SO IF YOU WOULD PLEASE -- YOU KNOW, IF A COURT HAS

3    PREVIOUSLY APPROVED YOUR HOURLY RATE, YOU CAN CITE THAT, OR

4    WHATEVER ELSE.

5         AND YOU'LL DEFINITELY NEED TO INCLUDE YOUR RESUMES.  OKAY?

6              MR. DAL BON:  OKAY.

7              THE COURT:  ALL RIGHT.  THANK YOU.

8         NOW, SO WHAT WAS THE DIVISION OF LABOR BETWEEN THE TWO OF

9    YOU?  I MEAN, MR. DAL BON, YOU USUALLY DO YOUR CASES BY

10   YOURSELF.  IS THIS BIGGER THAN WHAT YOU NORMALLY DO, OR --

11             MR. DAL BON:  ABSOLUTELY.

12             THE COURT:  OKAY.

13             MR. DAL BON:  I SWORE I'D NEVER DO ANOTHER CLASS

14   ACTION ALONE.  IT'S JUST TOO MUCH.

15             THE COURT:  OKAY.

16             MR. DAL BON:  IT REALLY IS.

17        AND, YOU KNOW, BETWEEN CLIENTS CALLING ME AT ALL HOURS

18   AND, I MEAN, THE STANDARD THINGS THAT ATTORNEYS GO THROUGH WHEN

19   THEY TAKE ON A BIG CASE.  I JUST THINK, YOU KNOW, AND IT'S --

20   IT'S NOT LIKE THESE ARE TWO BIG LAW FIRMS, YOU KNOW WHAT I

21   MEAN --

22             THE COURT:  I UNDERSTAND.

23             MR. DAL BON:  -- WITH MULTIPLE ATTORNEYS.

24             THE COURT:  SURE.

25             MR. DAL BON:  YOU KNOW, VICKY HAS A LOT OF TRIAL

```
1       EXPERIENCE THAT I DON'T, YOU KNOW.  SO VICKY IS PRETTY MUCH THE

2       TRIAL ATTORNEY.

3            AND, YOU KNOW, WE COOPERATE ON STRATEGY, YOU KNOW,

4       STRATEGY AS FAR AS DISCOVERY, TALKING TO CLIENTS.

5            I THINK SHE RELIES MORE ON ME FOR, YOU KNOW, RESEARCH AND

6       THINGS LIKE THAT.

7            IT'S JUST -- I REALLY THINK THAT DOING THESE CASES ALONE,

8       UNLESS YOU HAVE A HUGE STAFF, IS NOT APPROPRIATE.

9            THE COURT:  OKAY.  SO FOR YOUR MOTION FOR ATTORNEYS'

10      FEES AND COSTS, YOU'LL HAVE TO ITEMIZE ALL YOUR LITIGATION

11      COSTS.

12           MR. DAL BON:  ABSOLUTELY.

13           THE COURT:  I DON'T KNOW IF YOU'RE GOING TO HAVE ANY

14      OTHER BILLERS OTHER THAN YOURSELVES, BUT IF YOU'RE GOING TO BE

15      ASKING FOR REIMBURSEMENT OF, LIKE, PARALEGAL COSTS OR SOMETHING

16      LIKE THAT, THOSE FOLKS NEED TO DO THE SAME THING.  THEY NEED TO

17      PROVIDE RESUMES, THERE NEEDS TO BE JUSTIFICATION FOR THEIR

18      HOURLY RATE, THEY NEED TO PROVIDE THEIR TIME RECORDS.

19           MR. DAL BON:  OKAY.

20           THE COURT:  OKAY?

21           MR. DAL BON:  HOW ABOUT --

22           THE COURT:  SO WHAT I WANT TO END WITH -- WHAT WERE

23      YOU GOING TO SAY?

24           MR. DAL BON:  JUST ONE QUICK QUESTION.

25           THE COURT:  UM-HUM.
```

1            MR. DAL BON:  WE HIRE A LOT OF DIFFERENT PRIVATE

2       INVESTIGATORS TO LOOK FOR PEOPLE BECAUSE, YOU KNOW, OUR LEAD

3       PLAINTIFF DIED.  DO THEY HAVE TO INCLUDE THEIR HOURLY RATE OR

4       IS THEIR BILL GOING TO BE ENOUGH?

5            THE COURT:  ARE THOSE SORT OF COSTS INSTEAD OF FEES?

6            MR. DAL BON:  THEY'RE COSTS.

7            THE COURT:  OKAY.  NO, YOU CAN SUBMIT THEIR BILLS.

8            MR. DAL BON:  OKAY.

9            THE COURT:  BECAUSE YOU'VE BEEN JUST PAYING THEM,

10      RIGHT, LIKE A CONSULTANT OR SOMETHING?

11            MR. DAL BON:  RIGHT.

12            THE COURT:  THAT'S FINE.  THAT'S FINE.

13       OKAY.  SO LET'S TALK ABOUT THE NOTICE AND THE CLAIM FORM.

14      LIKE, I REALLY DISLIKE HAVING CLAIM FORMS IN WAGE AND HOUR

15      CASES.

16       BUT, YOU KNOW, ON THE ONE HAND, I UNDERSTAND THAT THESE

17      DEFENDANTS ARE IN A DIFFICULT FINANCIAL STATE AND THIS MAY BE

18      THE BEST THESE PLAINTIFFS CAN GET.

19       WHAT ARE THESE?  ARE THESE LIKE PACKERS, MOVERS, DRIVERS?

20            MR. DAL BON:  THEY'RE OFFICE MOVERS, SO THEY'LL GO

21      INTO APPLE AND THEY'LL MOVE ALL THE COMPUTERS AND THE DESKS

22      FROM ONE PLACE TO ANOTHER.

23            THE COURT:  UH-HUH.

24            MR. DAL BON:  AND THAT IS THEIR SOLE FOCUS.

25            THE COURT:  I SEE.

1          IS THE SETTLEMENT ADMINISTRATOR GOING TO GIVE, LIKE,

2     PREPAID ENVELOPES OR STAMPS?  OR NO?  I MEAN, I'M JUST ASKING.

3               MR. DAL BON:  I CAN CLARIFY THAT.

4               THE COURT:  THEY ARE OR ARE NOT?

5               MR. DAL BON:  I DON'T KNOW.

6               THE COURT:  OKAY.

7               MR. DAL BON:  I'M ASSUMING -- I THINK THEY ARE.  I

8     THINK THE CPT GROUP HAS BEEN VERY THOROUGH.

9               THE COURT:  OKAY.

10              MR. DAL BON:  OKAY?  AND NOT -- I'VE NEVER HAD THEM

11    NOT DO THAT.

12              THE COURT:  OKAY.

13              MR. DAL BON:  SO I'LL -- BUT I'LL MAKE SURE.

14              THE COURT:  YEAH, I WANT TO FIND OUT.

15         OKAY.  YOU'RE GOING TO FIND OUT AND YOU'LL PUT THAT IN THE

16    FILING FOR NEXT THURSDAY.

17              MR. DAL BON:  RIGHT.

18              THE COURT:  OKAY.  ALL RIGHT.

19         NOW, I WANT YOU TO MAKE A COUPLE OF CHANGES TO THE CLAIM

20    FORM.  THE CLAIM FORM, THERE'S SOME WORDS MISSING.

21         (PAUSE IN PROCEEDINGS.)

22              THE COURT:  OH, I SEE.  MAYBE THAT CHANGE DOESN'T

23    MAKE SENSE.

24         (PAUSE IN PROCEEDINGS.)

25              THE COURT:  OKAY.  I SEE WHAT YOU DID.

1    SO SOME OF MY CHANGES I WAS GOING TO SUGGEST, I THINK WHAT

2    YOU HAVE READS BETTER.  YOU MUST COMPLETE IN FULL, COMMA, SIGN,

3    COMMA, DATE, COMMA, AND MAIL THIS CLAIM FORM ON OR BEFORE,

4    INSERT DEADLINE.

5    I THINK THAT'S BETTER THAN THE CHANGE I WAS GOING TO

6    PROPOSE ON THAT, SO I'LL LEAVE THAT ALONE.

7    BUT THEN YOUR NEXT SENTENCE SAYS, "YOU SHOULD ADDRESS AS

8    FOLLOWS."  I THOUGHT THAT WAS NOT CLEAR.  SO CAN YOU CLARIFY

9    THAT?

10    MR. DAL BON:  ABSOLUTELY.

11    THE COURT:  I THINK MAYBE THE ADDRESS THING SHOULD

12    JUST BE A SEPARATE SENTENCE.

13    BUT "OTHERWISE YOU MUST COMPLETE IN FULL, SIGN, DATE, AND

14    MAIL THIS CLAIM FORM ON OR BEFORE" BLANK, I THINK THAT'S OKAY.

15    YOU HAD SOME SPACING THAT'S A LITTLE BIT OFF ON PAGE 2

16    THAT YOU MIGHT WANT TO FIX ON THE CLAIM FORM.

17    AND THEN YOU NEED TO FIGURE OUT EVERY PLACE KCC IS AND PUT

18    IN CPT.  LIKE, IT'S ON THE BOTTOM OF THE ACKNOWLEDGMENT OF

19    RELEASE OF CIVIL CLAIMS.  IT STILL SAYS KCC.  SO YOU HAVE TO

20    FIX THAT.

21    I MEAN, TELL ME ONE MORE TIME WHY YOU THINK THE CLAIM FORM

22    WILL GET MORE MONEY TO CLASS MEMBERS.

23    MR. DAL BON:  BASICALLY ONE OF OUR -- ONE OF MY

24    GREATEST FEARS IS THAT YOU'LL HAVE A BUNCH OF CHECKS SITTING

25    OUT THERE, OKAY, UNCASHED BY PEOPLE WHO ONLY WORKED THERE FOR A

1    WEEK OR TWO WEEKS AND THE SETTLEMENT ISN'T BIG ENOUGH FOR THEM.

2    IT'S JUST ANOTHER THING IN THE MAIL THAT THEY GET.

3              THE COURT:  RIGHT.

4              MR. DAL BON:  OKAY?

5              THE COURT:  OKAY.

6              MR. DAL BON:  AND THEN WHAT HAPPENS TO THAT MONEY?

7    IT'S CY PRES TO A CHARITY, WHICH IS NICE, BUT I THINK THE

8    THRUST OF THESE WAGE AND HOUR CASES IS -- THE WAY I SEE IT, YOU

9    TRY AND GET AS MUCH MONEY IN THE HANDS OF THE EMPLOYEES AS

10   POSSIBLE.

11             THE COURT:  OKAY.

12             MR. DAL BON:  TO ME IT'S BETTER TO CY PRES TO THE

13   EMPLOYEES, YOU KNOW, THAN TO CY PRES TO THE GEORGE ALEXANDER

14   GROUP, WHICH IS THE ONE THAT, YOU KNOW, I'LL -- I ALWAYS

15   SUGGEST AS A CY PRES.

16             THE COURT:  OKAY.  YOU'VE CONVINCED ME.  I MEAN,

17   PRESUMABLY THE PEOPLE WHO'VE WORKED THE LONGEST WILL GET THE

18   BIGGER PAYMENTS AND THEY'LL HAVE MORE INCENTIVE TO ACTUALLY

19   FILL IT OUT AND THEY ARE DESERVING OF A HIGHER RECOVERY BECAUSE

20   THEY WORKED THERE LONGER AND PROBABLY THEIR DAMAGES ARE

21   GREATER.

22        OKAY.  YOU'VE CONVINCED ME.

23        BUT IN GENERAL, OBVIOUSLY I DON'T LIKE THAT.

24        OKAY.  NOW, THE NOTICE IS REALLY, REALLY DIFFICULT TO

25   UNDERSTAND, SO I'M GOING TO ASK YOU TO GO BACK TO THE DRAWING

1    BOARD AND FIX IT.

2         I MEAN, EVEN ONES THAT YOU'VE DONE FOR ME, MR. DAL BON,

3    ARE BETTER THAN THIS.  SO I JUST DON'T KNOW WHY WE KEEP

4    REINVENTING THE WHEEL EVERY TIME.  DON'T YOU HAVE SOME STOCK

5    ONES YOU COULD USE?

6         MR. DAL BON:  YES, I DO, YOUR HONOR.

7         THE COURT:  OKAY.  SO I WANTED TO -- I'M NOT GOING TO

8    GO AND FIX THIS FOR YOU.  I'M GOING TO GIVE YOU ONE MORE

9    OPPORTUNITY TO FILE A GOOD NOTICE, AND IF YOU DON'T, I'M JUST

10   GOING TO DENY THIS WITHOUT PREJUDICE AND MAKE YOU COME BACK,

11   WHICH I KNOW IS NOT GOOD FOR THE CLASS.

12        BUT I DON'T HAVE ENOUGH TIME TO BE FIXING EVERY CLASS

13   COUNSEL'S NOTICE.  THIS IS REALLY -- OKAY.

14        LET ME GIVE YOU A COUPLE OF EXAMPLES OF WHAT I DID NOT

15   LIKE ABOUT YOUR NOTICE.

16        MR. DAL BON:  OKAY.

17        THE COURT:  AND I'VE NEVER SEEN THIS BEFORE IN ANY

18   CLASS ACTION I'VE DONE.

19        LET'S LOOK AT YOUR FIRST SENTENCE WHERE YOU'RE FIRST

20   TRYING TO EXPLAIN WHY THIS IS IMPORTANT, YOUR VERY FIRST

21   PARAGRAPH.  IN YOUR FIRST PARAGRAPH, YOU TALK ABOUT RELEASING

22   CLAIMS SIX TIMES.  SIX.  I THINK IT'S EVEN MORE THAN SIX.

23        MR. DAL BON:  OKAY.

24        THE COURT:  THE COURT HAS APPROVED THE RELEASE OF

25   YOUR CLAIMS; YOU ARE A PAGA RELEASEE; IF YOU ELECT TO RELEASE

1     YOUR ADDITIONAL CLAIMS; RELEASING YOUR CLAIMS UNDER THE FLSA;

2     YOU MAY OPT OUT AND RELEASE ALL YOUR PAGA CLAIMS THAT HAVE

3     ALREADY BEEN RELEASED; YOU WILL BE RELEASING YOUR CLAIMS.

4            MR. DAL BON:  OKAY.

5            THE COURT:  LIKE, ONE, TWO, THREE, FOUR, FIVE, SIX,

6     SEVEN IN THE VERY FIRST PARAGRAPH.  YOU ARE SEVEN TIMES TELLING

7     PEOPLE, "GIVE UP YOUR RIGHTS.  GIVE UP YOUR RIGHTS.  GIVE UP

8     YOUR CLAIMS."

9        YOU DID A CLAIM FORM SETTLEMENT.  IF YOU DID A CLAIM FORM

10    SETTLEMENT, YOU ARE IN THE MARKETING BUSINESS.  "THIS IS A GOOD

11    SETTLEMENT.  IT'S GOOD FOR YOU.  YOU WILL GET MONEY.  FILL THIS

12    FORM OUT."  OKAY?

13       BUT IF ALL YOU'RE SAYING IS "GIVE UP RIGHTS, GIVE UP

14    RIGHTS, GIVE UP RIGHTS, GIVE UP RIGHTS" SEVEN TIMES IN THE

15    FIRST PARAGRAPH -- I READ THIS AND I WAS, LIKE, WHAT IS THIS?

16    THIS IS THE WORST NOTICE I'VE EVER SEEN.

17           AND I'M READING YOUR THING SAYING, "WELL, I'VE BEEN DOING

18    CLASS ACTIONS FOR 30 YEARS, 20 YEARS."  AND I'M LIKE, THIS IS

19    THE BEST YOU CAN DO ON A NOTICE?

20            MR. DAL BON:  OKAY.

21            THE COURT:  COME ON.  PLEASE.

22            MR. DAL BON:  OKAY.  WE'LL CHANGE IT.

23            THE COURT:  DO YOU SEE WHAT I'M SAYING?

24            MR. DAL BON:  YES, ABSOLUTELY.

25            THE COURT:  YOU HAVE A CLAIM FORM.  YOU NEED TO BE IN

```
1     ADVERTISING MODE.  "THIS IS A GREAT SETTLEMENT.  YOU WILL GET

2     MONEY.  PLEASE FILL OUT THIS FORM BY THE DEADLINE."

3          AND YOU'RE JUST, LIKE, RELEASE, RELEASE, RELEASE, RELEASE.

4          THIS IS TERRIBLE.

5               MR. DAL BON:  OKAY.

6               THE COURT:  THIS IS JUST DOWNRIGHT TERRIBLE.

7               MR. DAL BON:  OKAY.

8               THE COURT:  AND THERE ARE SO MANY THINGS ABOUT THIS

9     NOTICE THAT -- I MEAN, I'LL JUST GO THROUGH SOME OF THEM.

10              MS. BOOKE:  YOUR HONOR, WE'RE HAPPY TO REDO IT.

11         AND I THINK MR. DAL BON IS TAKING ALL THE HEAT, BUT IT WAS

12    A COLLABORATIVE APPROACH --

13              THE COURT:  UM-HUM.

14              MS. BOOKE:  -- CONSIDERING A LOT OF DIFFERENT VOICES.

15    IT WASN'T JUST MR. DAL BON.

16              THE COURT:  OKAY.

17              MR. DAL BON:  I TAKE RESPONSIBILITY FOR IT, THOUGH.

18              MS. BOOKE:  NO, IT WASN'T YOU ALONE.

19              MR. DAL BON:  MY NAME IS ON IT.  I TAKE

20    RESPONSIBILITY FOR IT.  I WILL CHANGE IT AND I WILL USE NOTICES

21    THAT I'VE USED IN THE PAST.

22              THE COURT:  NO, NO, I DON'T WANT YOUR NOTICES.  I'M

23    GOING TO GIVE YOU ONE THAT I THINK IS BETTER.  UNFORTUNATELY,

24    IT'S ONLY A CALIFORNIA LABOR CODE ONE.  IT DOES NOT ALSO HAVE

25    FLSA AND PAGA.
```

1           MR. DAL BON:  OKAY.

2           THE COURT:  IT'S HOFFMAN VERSUS G&K SERVICES,

3     17-CV-4465, ECF NUMBER 38-1 FILED ON DECEMBER 13TH OF 2018.

4           MS. BOOKE:  COULD YOU DO THAT ONE MORE TIME, YOUR

5     HONOR?  I'M SO SORRY.

6           THE COURT:  YEAH.  17-CV-4465, ECF NUMBER 38-1 FILED

7     ON DECEMBER 13TH, 2018.

8           WHAT I LIKE ABOUT THIS ONE IS THAT IT'S SUPER CRYSTAL

9     CLEAR.  IT HAS THE NICE BOX THAT SAYS, IF YOU DO NOTHING, THIS

10    IS WHAT HAPPENS.  IF YOU -- YOURS WILL HAVE TO BE DIFFERENT.

11    THIS IS EXCLUDE YOURSELF, BUT I THINK YOU SHOULD SAY OPT OUT,

12    BECAUSE YOU HAVE OPT OUT, THIS IS WHAT HAPPENS.

13          IF YOU WANT TO DISPUTE THE TOTAL NUMBER OF HOURS YOU

14    WORKED, THIS IS HOW YOU DO IT; IF YOU WANT TO OBJECT TO THE

15    SETTLEMENT, THIS IS HOW YOU DO IT; HOW MUCH MONEY AM I GOING TO

16    GET?  HERE IT IS.

17          AND THEN IT PROVIDES A NICE SHORT SUMMARY OF THE

18    LITIGATION; IT PROVIDES A NICE CLEAN SUMMARY OF THE SETTLEMENT

19    TERMS, THEY'RE BULLET POINTED, THEY'RE CLEAR.

20          THEN IT HAS A SECTION THAT SAYS, YOUR OPTIONS UNDER THE

21    SETTLEMENT, WHAT HAPPENS IF YOU DO NOTHING?  WHAT HAPPENS IF

22    YOU OPT OUT?  WHAT HAPPENS IF YOU OBJECT?

23          IT'S VERY CLEAR ABOUT WHAT CLAIMS ARE GOING TO BE

24    RELEASED, WHERE YOU GO FOR ADDITIONAL INFORMATION.

25          THIS IS A SOLO, MATTHEW BAINER IN OAKLAND.  IT'S A NICE

1    NOTICE, I'LL JUST TELL YOU.

2         AND THERE ARE SOME OTHER LAWYERS, TOO, WHO I THINK DO A

3    REALLY GOOD JOB, BUT I CAN'T RECALL ANY FLSA, PAGA, CALIFORNIA

4    LABOR CODE CASES WITH THEM.

5         SO YOUR NOTICE IS GOING TO BE A LITTLE MORE COMPLICATED

6    BECAUSE YOU'VE GOT FLSA AND PAGA.  THIS ONE IS ONLY CALIFORNIA

7    LABOR CODE SO IT'S MUCH MORE SIMPLE.

8         SO, YOU KNOW, I -- I HAVE SOME OTHER EXAMPLES.

9    UNFORTUNATELY, I JUST HAVE THE ONES THAT ARE PROBABLY DONE IN

10   THE LAST, LIKE, EIGHT MONTHS IN MY MIND.

11        I DON'T LIKE THIS ONE AS MUCH, BUT IT'S -- YOU KNOW, IT

12   MAY BE ANOTHER SAMPLE BECAUSE IT HAS FLSA, PAGA, AND CALIFORNIA

13   LABOR CODE.  I MEAN, IT'S NOT MY IDEAL ONE, BUT AT LEAST IT HAS

14   BOTH IN CASE THAT'S HELPFUL.  LET ME JUST MAKE SURE.

15        YOU KNOW, THE WORK THAT YOU DO IS IMPORTANT AND I TOTALLY

16   AGREE WITH YOU, LET'S GET THESE ALMOST MINIMUM WAGE WORKERS AS

17   MUCH OF THE RECOVERY AS POSSIBLE AND LET'S HELP THEM

18   UNDERSTAND.  THIS IS VERY COMPLICATED STUFF.  I HAVE DIFFICULTY

19   UNDERSTANDING IT.

20        SO THE MORE WE CAN PUT THINGS IN A VERY PLAIN, CLEAR WAY,

21   ESPECIALLY IF THAT ENTICES THEM TO FILL OUT THE CLAIM FORM,

22   THAT IS GOOD.

23        SO, I MEAN, GREG KARASIK, WHO'S AN L.A. LAWYER, HE COMES

24   UP HERE A LOT.  I THINK HIS NOTICES ARE GOOD.  I TRIED TO SEE

25   IF HE HAD ANY FLSA, PAGA, LABOR CODE, AND I DON'T THINK HE DID.

1       I WILL TELL YOU, THIS OUTLEY VERSUS TURNER CONTRACTING,

2  17-CV-3465, ECF 51-1, IT'S PRETTY GOOD.  I DON'T LIKE IT AS

3  MUCH AS I LIKE HOFFMAN.

4       HOFFMAN, I THINK, IS JUST REALLY NICE AND CLEAN AND CLEAR.

5       I MEAN, I'M ASSUMING YOUR CLASS MEMBERS ARE PROBABLY,

6  WHAT, PROBABLY NOT COLLEGE GRADUATES; CORRECT?

7        MR. DAL BON:  THAT'S CORRECT.

8        THE COURT:  SO WE SHOULD BE AS CLEAR AS POSSIBLE.  I

9  THINK YOUR NOTICE IS TOTALLY VERY CONFUSING.

10      SO YOU HAVE TO -- SOME OTHER CHANGES TO YOUR NOTICE, YOU

11  HAVE TO LET THE CLASS KNOW THEY CAN OBJECT TO ATTORNEYS' FEES

12  WITHIN THE OBJECTION SECTION.

13      MAYBE THE OBJECTORS SHOULD ALSO BE REQUIRED TO PROVIDE

14  THEIR OWN NAME AND ADDRESS.

15      WE'VE ALREADY TALKED ABOUT THE RELEASE.

16      LET ME HAVE MORE SPECIFIC -- THE NOTICE NEEDS TO BE CLEAR

17  THAT IF YOU DON'T OPT OUT, YOU'RE NOT RELEASING YOUR FLSA

18  CLAIMS.

19      AND AT ONE POINT IN THE NOTICE, IT APPEARS TO STATE THAT

20  CLASS MEMBERS THAT FAIL TO OPT OUT ARE BOUND BY FLSA, BUT FLSA

21  IS OPT IN ONLY, SO THAT'S WRONG.

22      THE SETTLEMENT PROVIDES THAT SETTLEMENT CLASS MEMBERS WHO

23  SUBMIT CLAIM FORMS WILL BE DEEMED TO HAVE OPTED IN TO THE

24  RELEASE OF THE RELEASE CLAIMS ARISING UNDER THE FAIR LABOR

25  STANDARDS ACT, BUT THAT'S NOT IN THE NOTICE.  I THINK THAT'S

1    IMPORTANT TO CLARIFY.

2        BUT JUST IN GENERAL, I JUST FOUND YOUR NOTICE WAS REALLY

3    CONFUSING AND NOT CLEAR AND QUITE MESSY IN TERMS OF -- SO I'M

4    NOT GOING TO NITPICK THROUGH IT.  YOU WANT YOUR ATTORNEYS'

5    FEES?  EARN IT.  YOU'RE GOING TO HAVE TO PRODUCE AND FILE A

6    MUCH BETTER, CLEARER NOTICE IF YOU WANT YOUR SETTLEMENT

7    APPROVED.

8        OTHERWISE I'M JUST GOING TO DENY IT WITHOUT PREJUDICE AND

9    MAKE YOU COME BACK.

10       BUT I'M NOT GOING TO SIT DOWN AND -- YOU KNOW, SOMETIMES I

11   ACTUALLY DO ALL THE WORK OF -- YOU KNOW, MY CHAMBERS DOES ALL

12   THE WORK OF FIXING THESE NOTICES AND STUFF.

13       BUT FORGET IT.  YOU WANT YOUR ATTORNEYS' FEES?  EARN IT.

14   SHOW ME ALL THE YEARS OF EXPERIENCE WILL PRODUCE A GOOD NOTICE.

15       SO I'VE GIVEN YOU A COUPLE OF SAMPLES.  I'M SORRY I

16   COULDN'T FIND A FLSA, PAGA, CLC ONE, BUT HOPEFULLY YOU CAN.

17       SO CAN YOU FILE THAT IN A WEEK?

18           MR. DAL BON:  ABSOLUTELY.

19           THE COURT:  OKAY.  SO THEN BY THURSDAY, MAY 30TH, I

20   WILL BE EXPECTING A REVISED CLAIM FORM; I WILL BE -- AND YOU'RE

21   JUST GOING TO FILE THEM ON THE DOCKET, PLEASE.  I WILL EXPECT A

22   REVISED NOTICE; YOU WILL FILE AN EXPLANATION OF HOW YOU

23   CALCULATED THE MAXIMUM POTENTIAL LIABILITY TO BE 9 TO

24   $14 MILLION; YOU WILL IDENTIFY WHAT THE AVERAGE RECOVERY,

25   MAXIMUM RECOVERY, MINIMUM RECOVERY IS EXPECTED TO BE,

1    EXPLAINING ANY ASSUMPTIONS IN ALL OF THESE NUMBERS; AND THEN

2    YOU'LL LET ME KNOW WHETHER THE SETTLEMENT ADMINISTRATOR, ARE

3    YOU ALL INCLUDING PREPAID ENVELOPES OR STAMPS?  IF NOT, IT'S

4    OKAY, I JUST SORT OF WANT TO KNOW WHAT THE SITUATION IS.

5         I'LL BE EXPECTING THAT ON MAY 30TH.  IF THE NOTICE IS

6    SATISFACTORY, THEN I'LL JUST APPROVE IT AND TRY TO DO IT

7    QUICKLY ON THE SAME DAY.  I DON'T WANT TO -- SINCE YOU'VE HAD

8    TO WAIT FOR A HEARING, I DON'T WANT TO DELAY THIS FURTHER.

9              MR. DAL BON:  OKAY.

10             THE COURT:  OKAY?

11             MR. DAL BON:  OKAY.

12             THE COURT:  ALL RIGHT.  WHAT ELSE?  I -- I WOULD LIKE

13   TO APPROVE THIS.  I THINK IN LIGHT OF THE DEFENDANTS' FINANCIAL

14   SITUATION, THIS MAY BE, YOU KNOW, JUST WHAT WE CAN GET UNDER

15   THE CIRCUMSTANCES.

16        BUT I JUST WANT TO MAKE SURE EVERYTHING IS DONE RIGHT TO

17   TRY TO MAXIMUM THE CLASS MEMBERS' UNDERSTANDING OF WHAT THEIR

18   OPTIONS ARE AND WHAT THEY'RE DOING AND HOPEFULLY MAXIMIZE THE

19   NUMBER OF CLAIM FORMS.

20        SO SELL THE SETTLEMENT IN THE CLAIM FORM, OKAY, IN THIS

21   NEXT DOCUMENT.

22             MR. DAL BON:  OKAY.

23             THE COURT:  ALL RIGHT.  ANYTHING ELSE FOR TODAY?

24             MR. DAL BON:  THE ONLY THING THAT I CAN THINK OF --

25             THE COURT:  YES.

1         MR. DAL BON:  -- IN MY EXPLANATION AS TO HOW I

2   CALCULATED THE DAMAGES, THIS IS ALWAYS THE DIFFICULT PART.

3         THE COURT:  YEAH.

4         MR. DAL BON:  DO YOU WANT AN EXPLANATION AS TO --

5   MORE OF AN EXPLANATION AS TO HOW WE CAME TO THE SETTLEMENT?

6   IT'S DIFFICULT IN THE SENSE THAT, YOU KNOW, WE ARE IN DANGER OF

7   MAKING ADMISSIONS THAT IF FOR SOME REASON THE CASE WENT ON --

8         THE COURT:  RIGHT.

9         MR. DAL BON:  -- YOU KNOW, SO THAT'S --

10        THE COURT:  NO, I -- WHY DID YOU CHOOSE JUST TO GIVE

11   THE 5.5 MILLION NUMBERS?  WHY DID YOU JUST CHOOSE THOSE?

12        MR. DAL BON:  WE JUST CAME TO THE CONCLUSION THAT

13   THAT WAS THE STRONGEST CLAIM, YOU KNOW?

14        THE COURT:  OKAY.

15        MR. DAL BON:  AND, YOU KNOW, IN THE FUTURE, I WILL

16   MAKE SURE THAT, YOU KNOW, I LEAVE EVERY CALCULATION IN, YOU

17   KNOW?  IT'S JUST -- YOU'RE IN THAT SITUATION WHERE, WELL, IF

18   YOU WRITE SOMETHING AS TO HOW YOU CAME TO THE SETTLEMENT, CAN

19   IT BE USED AGAINST YOU LATER ON?

20     JUST LIKE THE DEFENDANTS ARE IN COMING --

21        THE COURT:  WELL, I'M NOT ASKING HOW YOU CAME TO THE

22   SETTLEMENT.

23        MR. DAL BON:  OKAY.

24        THE COURT:  YOU THREW OUT A 9 TO $14 MILLION NUMBER

25   AND I JUST WANT TO UNDERSTAND HOW YOU CAME TO THAT NUMBER.

1              MR. DAL BON:  OKAY.

2              THE COURT:  THAT'S YOUR MAXIMUM POTENTIAL LIABILITY.

3      I ASSUME THERE WAS SOME WAY YOU CALCULATED THAT.

4              MR. DAL BON:  OH, OKAY.

5              THE COURT:  SO THAT'S ALL I'M -- I'M NOT, YOU KNOW,

6      SAYING WHY DID YOU AGREE TO 470,000?

7              MR. DAL BON:  OKAY.

8              THE COURT:  I JUST WANT TO KNOW, HOW DID YOU

9      CALCULATE THAT MAXIMUM POTENTIAL LIABILITY?

10             MR. DAL BON:  OKAY.

11             THE COURT:  YOU'VE ALREADY DONE THAT FOR TWO OF THE

12     CLAIMS.  I'M JUST SAYING DO IT FOR THE REST.

13             MR. DAL BON:  OH, YEAH, THAT'S EASY.

14             THE COURT:  SHOW ME HOW YOU GOT THERE.  THAT'S WHAT

15     I'M REQUESTING.

16             MR. DAL BON:  OKAY.  THANK YOU.

17             THE COURT:  UM-HUM.  OKAY.

18         NOW, ASSUMING -- HOW MUCH TIME DO YOU NEED FROM

19     PRELIMINARY APPROVAL TO FINAL APPROVAL?  BECAUSE WE NEED TO

20     TALK ABOUT SOME DATES.

21         HAVE YOU PROVIDED CAFA NOTICE?

22             MR. ARCHIBALD:  YES, YOUR HONOR.  THIS IS

23      CHRIS ARCHIBALD.

24         I SENT THAT OUT FOR CHARTWELL AND MANAGED FACILITY

25     SOLUTIONS.  I FILED A PROOF OF DOING SO WITH THE COURT.

1          THE COURT:  ALL RIGHT, SO THAT'S BEEN DONE.  AND THEN

2     ANY NOTICES TO, LIKE, ATTORNEY GENERALS, ALL THAT'S BEEN DONE?

3     WE DON'T NEED TO WAIT 90 DAYS FOR THAT?  THAT'S ALL SET?  WE'RE

4     GOOD?

5          MR. ARCHIBALD:  THAT'S CORRECT.  I DID ALL THAT.

6          THE COURT:  ALL RIGHT.  SO HOW DOES YOUR -- CLASS

7     MEMBERS SHOULD HAVE AT LEAST 35 DAYS TO OBJECT TO ATTORNEYS'

8     FEES.  OKAY?

9          MR. DAL BON:  ALL RIGHT.

10          THE COURT:  HOW MUCH TIME DO YOU NEED THEN FOR A

11     FINAL APPROVAL?  I COULD GIVE YOU SEPTEMBER 26TH AS A HEARING

12     DATE.  WOULD THAT BE GOOD?

13          MR. DAL BON:  THAT WOULD BE FINE.

14          THE COURT:  WOULD THAT GIVE YOU ENOUGH TIME, EVEN

15     WITH THE DELAY OF ANOTHER WEEK AND WHATEVER ELSE NEEDS TO BE

16     DONE TO CLEAN UP THIS SETTLEMENT?

17          MR. DAL BON:  YES.

18        VICKY, WHAT DO YOU THINK?

19          MS. BOOKE:  I THINK THAT'S FINE, TOO.

20          MR. DAL BON:  OKAY.  YEAH.

21          THE COURT:  ALL RIGHT.  WELL, THEN, THAT WILL BE YOUR

22     DATE.

23        BECAUSE I THINK, MS. DIBBLE, YOU SAID THAT'S BETTER FOR

24     US, RIGHT, THAN EARLIER IN SEPTEMBER?

25          THE CLERK:  YES, YOUR HONOR.

```
 1              THE COURT:  OKAY.  THANK YOU.

 2         SO THAT'LL BE YOUR DATE ASSUMING I CAN GET THIS IN THE

 3    ORDER THAT'S SATISFACTORY TO ME AND I APPROVE IT NEXT WEEK.

 4         OKAY.  WHAT ELSE?  ANYTHING ELSE?

 5              MR. ARCHIBALD:  YEAH, YOUR HONOR.  CHRIS ARCHIBALD.

 6    JUST ONE CLARIFICATION QUESTION.

 7              THE COURT:  YES.

 8              MR. ARCHIBALD:  SINCE WE'RE GETTING THE FINAL

 9    APPROVAL DATE, THE RELEASE PERIOD RUNS THROUGH PRELIMINARY

10    APPROVAL, AND PRELIMINARY APPROVAL IS THE DEADLINE FOR WHICH WE

11    NEED TO PRODUCE THE CLASS MEMBER NAMES AND WORKWEEKS.

12              THE COURT:  THAT'S RIGHT.

13              MR. ARCHIBALD:  ARE WE GOING TO COUNT THAT IN A WEEK

14    WHEN YOU APPROVE THE INITIAL DOCUMENTS, OR COUNT THAT FROM

15    TODAY?

16              THE COURT:  OH, I'M NOT APPROVING ANYTHING.  IF HIS

17    ADDITIONAL DOCUMENTS ARE NOT SATISFACTORY, I WILL DENY THIS

18    MOTION FOR PRELIMINARY APPROVAL WITHOUT PREJUDICE AND MAKE YOU

19    COME BACK.  I'M NOT APPROVING ANYTHING TODAY.

20              MR. ARCHIBALD:  OKAY.  I JUST WANTED TO MAKE SURE.

21              THE COURT:  I DID NOT SET A FINAL APPROVAL HEARING

22    DATE.  I WAS JUST CHECKING IF THAT WOULD BE OKAY.

23         IF EVERYTHING IS OKAY, THEN WHEN I ACTUALLY GRANT

24    PRELIMINARY APPROVAL, THAT'S WHEN I'LL SET THAT DATE.  BUT I'M

25    NOT SETTING ANYTHING RIGHT NOW.
```

1          MR. ARCHIBALD:  OKAY.  THAT'S WHAT I THOUGHT.  I JUST

2     WANTED TO MAKE SURE.  THANK YOU.

3          THE COURT:  OKAY.  YEAH.  NO, WHEN THIS IS APPROVED,

4     YOU WILL SEE A PRELIMINARY APPROVAL ORDER FILED ON THE DOCKET.

5     WHEN THAT -- THAT WILL LET YOU KNOW THAT THIS IS BEING

6     APPROVED, AND THAT AIN'T BEING FILED THIS WEEK.

7          MR. ARCHIBALD:  UNDERSTOOD.

8          THE COURT:  OKAY.  ALL RIGHT.

9     WELL, THANK YOU ALL VERY MUCH.  I APPRECIATE ALL THE

10    ADDITIONAL INFORMATION.

11    AND, YOU KNOW, LET'S GET THIS DONE FOR THE CLASS.  OKAY?

12         MR. DAL BON:  ALL RIGHT.

13         THE COURT:  ALL RIGHT.  THANK YOU.  TAKE CARE.  HAVE

14    A GREAT DAY.  HAVE A GOOD MEMORIAL DAY WEEKEND.

15         MR. MARKEVITCH:  THANK YOU, YOUR HONOR.

16         MR. DAL BON:  THANK YOU, YOUR HONOR.

17         THE CLERK:  THANK YOU.  CALENDAR IS CONCLUDED.

18    (THE PROCEEDINGS WERE CONCLUDED AT 2:21 P.M.)

19

20

21

22

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18       DATED:  MAY 24, 2019

19

20

21

22

23

24

25