David W. Affeld, Cal. Bar. No. 123922
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Tel. (310) 979-8700
Fax (310) 979-8701
dr@agzlaw.com

Attorneys for Defendant Managed Facilities Solutions, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| GARY MIDDLE RIDER, an individual, *et al.*, *etc.* | **Case No.:  17-CV-04015 LHK** |
| Plaintiffs, | *Assigned for All Purposes to:*<br>The Hon. Lucy H. Koh |
| vs. | **MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF ORDER ALLOWING BRYAN CAVE TO WITHDRAW [Local Rule 7-9]; MEMORANDUM OF POINTS AND AUTHORITIES** |
| MOVING SOLUTIONS, a California corporation, *et al.* | |
| Defendants. | [Filed concurrently:<br>(1) Declaration of Haynes Dallas;<br>(2) Declaration of Adam Kidan;<br>(3) Declaration of David Affeld;<br>(4) Proposed Order] |
| | Date:        September 26, 2019<br>Time:        1:30 p.m.<br>Courtroom: 8 |

# TABLE OF CONENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 3

I.    INTRODUCTION ....................................................................................... 3

II.   FACTS ........................................................................................................ 4

    A.    Background of this Case. ................................................................... 4

    B.    Relationship Between Kidan, Chartwell, and MFS .......................... 5

    C.    Bryan Cave's Relationship with Chartwell, MFS, and Kidan .......... 5

    D.    The Chartwell Buyout Negotiations ................................................. 6

    E.    Bryan Cave Threatens to Sue and Does Sue Kidan .......................... 7

    F.    Bryan Cave Abandons MFS .............................................................. 7

    G.    Bryan Cave Fails to Give Proper Notice of Its Motion .................... 8

III.  STANDARD FOR RECONSIDERATION .............................................. 8

IV.   ARGUMENT ............................................................................................. 8

    A.    MFS Should Be Given Leave to Seek Reconsideration Because It Did Not Have Adequate Notice to Oppose Bryan Cave's Motion ...................... 9

    B.    Reconsideration Is Appropriate Based on New Evidence ................ 10

        1.    New Evidence Undermines Bryan Cave's Basis for Withdrawal ................ 10

        2.    The New Evidence Demonstrates that Bryan Cave Did Represent Kidan Individually ................................ 12

    C.    Binding Authority Holds that Bryan Cave Must Withdraw from All Representation in this Action ................ 13

    D.    Bryan Cave Violated Its Duties of Loyalty and Confidence by Needlessly Maligning Kidan in its Motion to Withdraw ................ 15

V.    CONCLUSION ......................................................................................... 16

MOTION FOR LEAVE TO SEEK RECONSIDERATION

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Backlund v. Barnhart,*
    778 F.2d 1386 (9th Cir. 1985) ................................................................. 9

*Circuit City Stores, Inc. v. Mantor,*
    417 F.3d 1060 (9th Cir. 2005) ................................................................. 9

*Davis v. CACH, LLC,*
    No. 14-cv-03892-BLF, 2015 WL 2251044 (N.D. Cal. May 13, 2015) ........................ 9

*Fredenburg v. City of Santa Clara,*
    No. C 07-04412 JW, 2009 WL 1814316 (N.D. Cal. June 25, 2009) ........................ 9

*GSI Commerce Solutions, Inc. v. BayCenter, L.L.C.,*
    618 F.3d 204 (2d Cir. 2010) ................................................................. 14

*Kelly v. Wengler,*
    822 F.3d 1085 (9th Cir. 2016) ................................................................. 8

*Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation,*
    331 F.3d 1041 (9th Cir. 2003) ................................................................. 9

*Sch. Dist. No. 1J, Mulnomah Cty., Or. v. ACandS, Inc.,*
    5 F.3d 1255 (9th Cir. 1993), *cert. denied* 51 U.S. 1236 (1994) ........................ 9

*United States v. Swift & Co.,*
    286 U.S. 106 (1932) ................................................................. 8

**California Cases**

*Aceves v. Superior Court,*
    51 Cal. App. 4th 584 (1996) ................................................................. 16

*American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton,*
    96 Cal. App. 4th 1017 (2002) ................................................................. 15

*Beery v. State Bar,*
    43 Cal. 3d 802 (Cal. 1987) ................................................................. 13

*In re Brockway,*
    4 Cal. State Bar Ct. Rptr. 944, 951-52, 2006 WL 1360438, at *5 (Review Dept. of State Bar Ct. of Cal. 2006) ................................................................. 11

*People ex rel Dep't of Corps. v. SpeeDee Oil Change Sys.,*
    20 Cal. 4th 1134 (Cal. 1999) ................................................................. 13, 14

MOTION FOR LEAVE TO SEEK RECONSIDERATION

*Estate of Falco,*
  188 Cal. App. 3d 1004 (1987) ................................................................................ 11

*Flatt v. Superior Court,,*
  9 Cal. 4th 275, 284 (Cal. 1994) 1004 (1987) ......................................................... 14

*In the Matter of Johnson,*
  4 Cal. State Bar Ct. Rptr. 179, 189, No. 96-O-05705, 2000 WL 1682427, at *10 (Cal. Bar Ct.
  Oct. 26, 2000) ..................................................................................................... 15,16

*In re Jordan,*
  12 Cal. 3d 575 (1974) ............................................................................................ 15

*Kane, Kane & Kritzer, Inc. v. Altagen,*
  107 Cal. App. 3d 36 (1980) ................................................................................... 13

*Miller v. Metzinger,*
  91 Cal. App. 3d 31 (Cal. Ct. App. 1979) ............................................................... 13

*People v. Gionis,*
  9 Cal. 4th 1196 (Cal. 1995) ................................................................................... 13

*Pour Le Bebe, Inc. v. Guess? Inc.,*
  112 Cal. App. 4th 810, 822-23 (2003) ................................................................... 15

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.,*
  6 Cal. 5th 59 (2018) .............................................................................................. 15

*State Farm Mut. Auto Ins. Co. v. Fed. Ins. Co.,*
  72 Cal. App. 4th 1422 (1999) ............................................................................... 14

*Truck Ins. Exchange v. Fireman's Fund Ins. Co.,*
  6 Cal. App. 4th 105 (1992) ................................................................................... 14

*Wells Fargo Bank v. Superior Court,*
  22 Cal. 4th 201 (Cal. 2000) .................................................................................. 13

*Woods v. Superior Court,*
  149 Cal. App. 3d 931 (1983) ................................................................................ 14

*Wutchumna Water Co. v. Bailey,*
  216 Cal. 564 (Cal. 1932) ...................................................................................... 15

**Statutes**

Cal. Bus. & Prof. Code § 6068(e)(1) ...................................................................... 15

Cal. Evid. Code § 951 ............................................................................................. 13

MOTION FOR LEAVE TO SEEK RECONSIDERATION

**Rules**

Fed. R. Civ. P. 54(b) ................................................................................................... 8

Fed. R. Civ. P. 59 (e) .................................................................................................. 9

Fed. R. Civ. P. 60(b) .............................................................................................. 9, 10

Cal. R. Ct., Rule 3.1362(c)......................................................................................... 16

Cal. R. Prof. Conduct, Rule 1.6 ................................................................................. 15

Cal. R. Prof. Conduct, Rule 1.7(a) ............................................................................ 13

Cal. R. Prof. Conduct, Rule 1.16(b)(4) ................................................................ 11, 16

Cal. R. Prof. Conduct, Rule 3-100 ............................................................................ 15

**Other Authorities**

CA Eth. Op. 2003-162, 2003 WL 23146200 ............................................................. 13

Cal. Eth. Op. 2004-165, 2004 WL 3079030 (2004) ................................................. 15

Cal. State Bar. Form. Opn. 1984-84, 1984 WL 50108 (1984) .................................. 13

Cal. State Bar. Form. Opn. No. 2016-195, 2016 WL 4268977 (2016) at *3 ............ 15

MOTION FOR LEAVE TO SEEK RECONSIDERATION

1

## NOTICE OF MOTION AND MOTION

2

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

3      PLEASE TAKE NOTICE that on September 26, 2019 at 1:30 p.m., or as soon thereafter

4  as the matter may be heard before the Honorable Lucy H. Koh in Courtroom 8 of the above-

5  entitled Court, defendant Managed Facilities Solutions, LLC ("MFS") will and hereby does

6  move pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure, and Local Civil Rule

7  7-9, for leave to file a Motion for Reconsideration of the Court's May 1, 2019 Order Granting

8  Motion to Withdraw, Dkt. No. 89

9      MFS seeks reconsideration of those aspects of the Court's Order finding (a) that Bryan

10  Cave Leighton Paisner LLP ("Bryan Cave") has never represented Adam Kidan ("Kidan")

11  individually; (b) that Bryan Cave had legitimate reasons to withdraw, including a breakdown of

12  the attorney-client relationship; and (c) that Bryan Cave complied with its obligations under the

13  California Rules of Professional Conduct and Local Civil Rule 11-4 in seeking to withdraw.

14  MFS further seeks reconsideration to the extent that the order allows Bryan Cave to selectively

15  withdraw from representing MFS, while continuing to represent defendant Chartwell Staffing

16  Services, Inc. ("Chartwell").

17      This motion is made on the grounds that Bryan Cave failed to give its client, MFS,

18  adequate notice of the deadline to oppose its motion or the fact that its motion could be granted

19  without a hearing.  As a result, MFS did not have a fair opportunity to respond.  If MFS had such

20  opportunity, it would have shown that the factual basis for Bryan Cave's motion was false and

21  that the California ethical rules do not permit its selective withdrawal.  There was no breakdown

22  in the attorney-client relationship.  Instead, Bryan Cave abandoned MFS in order to take on

23  adverse representation of Chartwell against MFS' owner, Kidan.  The California Rules of

24  Professional conduct prohibit counsel from selectively withdrawing where such a conflict arises,

25  and require counsel to withdraw from *all* conflicted representation.

26                      (*Continued on Next Page*)

27

28

MOTION FOR LEAVE TO SEEK RECONSIDERATION

1    This motion is based on this Notice of Motion and Motion, the attached Memorandum of

2    Points and Authorities, the Declarations of Adam Kidan, Haynes Dallas, and David Affeld, the

3    records and files herein, and such other matters as the Court may consider.

4    Dated:  May 29, 2019                Respectfully submitted,

5                                        By: /s/ Damion Robinson
                                             David W. Affeld
6                                            Damion D. D. Robinson
                                             Affeld Grivakes LLP
7
                                             Attorneys for Managed Facilities
8                                            Solutions, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR LEAVE TO SEEK RECONSIDERATION

1
<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2
MFS[1] respectfully requests leave to seek reconsideration of certain aspects of the Court's

3
May 1, 2019 Order Granting Motion to Withdraw, Dkt. No. 89 (the "May 1 Order").  MFS seeks

4
limited reconsideration of those portions of the Court's order that make factual and legal

5
findings that (a) that Bryan Cave has never represented Kidan personally; (b) that Bryan Cave

6
had legitimate reasons to withdraw, including a breakdown of the attorney-client relationship

7
and client communication; and (c) that Bryan Cave complied with its obligations under the

8
California Rules of Professional Conduct in seeking to withdraw.  MFS further requests that the

9
Court reconsider whether Bryan Cave should be permitted to selectively withdraw from

10
representing MFS while continuing to represent its joint client, Chartwell.

11

12
**I.    INTRODUCTION**

13
Bryan Cave secured this Court's permission to withdraw as counsel for MFS based on an

14
incomplete and inaccurate version of the facts and law.  It did so without giving its client, MFS,

15
adequate notice.  Because MFS did not have an opportunity to oppose—or have any notice that

16
it was required to oppose months in advance of the hearing—the Court accepted Bryan Cave's

17
one-sided version.  The May 1 Order may prejudice MFS and Kidan in other proceedings,

18
including in the litigation between Chartwell and Kidan in which Bryan Cave is counsel.

19
Reconsideration is proper to allow the Court to consider a complete account of the facts and law.

20
Bryan Cave failed to give its client, MFS, fair notice of the need to oppose its motion.

21
Bryan Cave noticed its motion for June 27.  It did not notify MFS of the opposition deadline or

22
that the motion could be granted as unopposed without a hearing.  It failed to serve MFS with its

23
Notice of Non-Opposition, Dkt. 88, in which it asked the Court to rule on its motion

24
immediately.  MFS had no idea that it was required to oppose the motion months in advance of

25
the hearing because its counsel, Bryan Cave, never told it this.

26
Bryan Cave's motion was also factually inaccurate and legally defective.

27

28
---
[1] Capitalized terms have the meanings set forth in the Notice of Motion.

Communications between MFS and Bryan Cave demonstrate that the reasons Bryan Cave gave for its withdrawal were false. There was no breakdown of the attorney-client relationship or lack of communication or cooperation on MFS's part. Instead, as soon as Bryan Cave got the opportunity to represent Chartwell against MFS's owner, it Cave unilaterally cut off communication with MFS and announced that it was moving to withdraw over MFS' objection. Until that time, MFS had no issues with Bryan Cave's representation and wanted it to continue. Counsel cannot cause a "breakdown" of the attorney-client relationship by refusing to communicate with its client and then use that breakdown as a basis to withdraw.

The real reason for Bryan Cave's withdrawal—which it failed to make clear in its motion—is that Bryan Cave decided to take on representation adverse to MFS by representing Chartwell in a lawsuit against MFS's owner. With the instant case in its final stages, abandoning MFS to institute new litigation for Chartwell against MFS is a far more profitable endeavor for Bryan Cave. California law is clear, however, that counsel may not jettison one client in favor of another to avoid a conflict created by the law firm's disloyalty in the first place. Under the "hot potato" rule, Bryan Cave has no right to selectively abandon one client so that it can take on conflicted representation. It must withdraw from *all* conflicted representation.

Finally, in order to justify its improper abandonment of MFS, Bryan Cave gratuitously maligned MFS and its owner, Kidan, using information that it learned during the course of representation. It learned this information through direct contact with Kidan and from Chartwell under a joint-client arrangement, meaning that the information was privileged and confidential. There was no basis for a "noisy" withdrawal. By publicizing confidential information, Bryan Cave violated its fundamental duty to protect client confidences.

Bryan Cave did not submit any of this evidence or any of the applicable law on its motion. Instead, it shaded the facts, misstated the reasons for its withdrawal, and ignored decades of California precedent. Reconsideration is needed to allow MFS to set the record straight, and to avoid prejudice flowing from the May 1 Order.

## II.    FACTS

### A.    Background of this Case.

This is a wage and hour class and PAGA-representative action case against MFS and its affiliate Chartwell.  Christopher Archibald ("Archibald") has represented MFS and Chartwell as lead counsel since the inception of this case.  Dallas Decl. ¶¶ 2-3 & Exs. 1, 2.

The parties reached a preliminary settlement in March of 2019, and filed notice on March 8.  The Court set a preliminary approval hearing on May 23, 2019.  *See* Motion for Preliminary Approval of a Class Action, Dkt. No. 77; Notice of Hearing, Dkt. No. 80.

### B.    Relationship Between Kidan, Chartwell, and MFS.

Kidan is the founder of Chartwell.  His estranged wife, Tracy Kidan, owns all of the stock, subject to Kidan's marital interest.  Ownership is subject to a pending matrimonial proceeding in Pennsylvania.  Kidan Decl. ¶ 2.

Kidan and Tracy Kidan personally guarantee Chartwell's debt to its primary factor[2] and lender Madison Resources ("Madison").  The debt has been as high as $42,000,000.  Kidan Decl. ¶ 3 & Ex. 1.

Chartwell acquired MFS in 2016.  Due to restrictions in its agreements with Madison, Chartwell had to divest MFS.  It did so by transferring all of MFS' equity to Kidan.  Kidan is the sole owner and managing member of MFS.   Kidan Decl. ¶ 6.  Bryan Cave has known this, and has known about Kidan's 15-year-old criminal matter, for more than a year.  *Id.* ¶¶ 16, 28.

### C.    Bryan Cave's Relationship with Chartwell, MFS, and Kidan.

Kidan hired W. Holmes Lilley ("Lilley") to act as Chartwell's general counsel in 2016. Due to a pre-existing relationship, Lilley brought on Bryan Cave as counsel for company matters for Chartwell and MFS.  Kidan Decl. ¶¶ 7-10.  Among other things, Bryan Cave acted as a second law firm for Chartwell in negotiations to restructure Chartwell's $42,000,000 debt with Madison.  *Id.* ¶¶ 11-12.

In this capacity, Bryan Cave also represented Kidan individually as a guarantor.  Kidan Decl. ¶ 13.

---

[2] A factor is a company that provides financing secured against accounts receivable.

Madison has been Chartwell's primary funder since 2013.  In 2017, it stated that it could not continue funding Chartwell, claiming that Kidan's criminal matter from 2005 prompted its bank to threaten to stop providing funding if Madison continued to finance Chartwell.  Madison threatened to declare a default if Chartwell did not find a new lender.  Kidan Decl. ¶ 11.

Chartwell retained Sheppard Mullin as litigation counsel.  Lilley brought on Bryan Cave.  Bryan Cave stepped in as primary counsel in the negotiations between Chartwell and Madison.  Bryan Cave was primarily responsible for representing Chartwell, as well as Kidan and Tracy Kidan as guarantors of the Madison debt.  Kidan Decl. ¶¶ 12-13.

Kidan, as a personal guarantor, led the discussions with Madison.  Kidan Decl. ¶ 13.  Bryan Cave partner Amit S. Parekh ("Parekh"), consulted with Adam for approximately four hours over several lengthy phone calls about how to approach his negotiations as a guarantor.  *Id.* ¶¶ 14-15.  Among other things, Kidan discussed with Bryan Cave:

- His voluntary guilty plea in 2005, and how to address this issue with Madison;
- His and Tracy Kidan's shareholder loans from Chartwell;
- His and Tracy Kidan's personal assets, which were subject to attachment by Madison if Madison declared a default;
- The relationship between Chartwell and MFS, including the reasons that MFS was divested to Kidan; and
- The pending divorce between Kidan and Tracy Kidan, including loan covenants relating to the death or divorce of Chartwell's shareholders.

*Id.* ¶ 16.  During this series of coaching sessions, Parekh discussed with Kidan how best to approach negotiations in his capacity as guarantor and how to minimize his risk of personal liability.  *Id.* ¶¶ 17-18 & Ex. 2.

### D.    The Chartwell Buyout Negotiations

Bryan Cave was also involved in the divorce proceedings between Kidan and Tracy Kidan.  The divorce case involves exactly the same allegations of "misappropriation" that Bryan Cave raised in its motion to withdraw.  Kidan Decl. ¶¶ 20-21.

In connection with Kidan and Tracy Kidan's divorce, Lilley requested that Bryan Cave

represent him in negotiations to buy the company from them.  Kidan Decl. ¶ 21.  Bryan Cave

sought a conflict waiver from Kidan to represent Lilley in these negotiations.  The waiver

provided: "W. Holmes Lilley III, current CEO of Chartwell [] has asked us to provide

representation with respect to the proposed acquisition [*sic*] Chartwell [] from you, Adam Kidan,

as the husband of Tracy Kidan, the current sole shareholder."  *Id.*, Ex. 3.

Bryan Cave did not seek or obtain a waiver of conflicts to allow it to sue Kidan on behalf

of Chartwell.  Kidan Decl. ¶ 21.  To the contrary, the waiver provided

> In the unlikely event a contentious dispute, threat of litigation or actual litigation . . . were to arise between Chartwell and Mr. Lilley in connection with the Proposed Matter, [Bryan Cave] **will not represent or counsel either Mr. Lilley or Chartwell in connection with any aspect of such dispute or adversary proceeding.**

*Id.*, Ex. 3.  Kidan agreed to this limited waiver based on Bryan Cave's above promise.  *Id.* ¶ 21.

**E.    Bryan Cave Threatens to Sue and Does Sue Kidan.**

The buyout negotiations broke down in early March 2019.  Kidan resigned from all

involvement in Chartwell on March 8, 2019.  Kidan Decl. ¶¶ 23-24.

One week later, March 15, 2019, Bryan Cave partner Aileen Hunter sent Kidan a

threatening cease-and-desist letter, accusing him of misappropriating Chartwell trade secrets.

Kidan Decl. ¶ 25 & Ex. 4.  Chartwell filed suit against Kidan and others on April 4, 2019 in a

case styled *Chartwell Staffing Services, Inc. v. Atlantic Solutions Group, Inc., et al.*, Central

District of California Case No. 8:19-0642-JLS (the "*Chartwell* Litigation").  *Id.* ¶ 26.

**F.    Bryan Cave Abandons MFS.**

Bryan Cave knew of Kidan's sole ownership of MFS since it represented him and

Chartwell in the negotiations with Madison.  Kidan Decl. ¶ 16.  It also knew of the criminal

matter and Tracy Kidan's allegations that Kidan had "misappropriated" money from Chartwell

due to its representing Kidan in the guarantee negotiations, and representing Lilley in connection

with the divorce case.  *Id.* ¶¶ 16, 21.  MFS also disclosed Kidan's ownership and the criminal

matter when Archibald first took on representation of MFS.  *Id.* ¶ 27.  Bryan Cave, nonetheless,

took on representation of Chartwell against Kidan while still representing MFS.

After doing so, it then abandoned MFS in an effort to purge the conflict it created.

Despite having no issues in representation, on March 20, 2019, Archibald emailed the CEO of MFS, Haynes Dallas ("Dallas") cryptically asking "for a call ASAP," apparently to notify MFS that Bryan Cave planned to stop representing MFS. Dallas quickly called and emailed Archibald. Archibald never responded. Instead, he left it up to Lilley to notify MFS that Bryan Cave was abandoning MFS. Dallas Decl. ¶¶ 5-8 & Ex. 3, 4; Kidan Decl. ¶ 29.

The same day, March 20, 2019, Lilley called Dallas an advised him that Bryan Cave "is withdrawing" from representing MFS. Dallas Decl., Ex. 4; *see also* Kidan Decl. ¶¶ 28-29. He then forwarded Dallas an email from Archibald in which Archibald asked Lilley—as opposed to asking MFS—for recommendations of attorneys to substitute in for MFS. Dallas Decl., Ex. 4.

Archibald finally notified MFS that Bryan Cave was withdrawing via email on April 3, 2019. Dallas Decl. ¶ 9 & Ex. 5. Both before and after Archibald's announcement, Dallas and Kidan objected to Bryan Cave withdrawing. *Id.* ¶ 10; Kidan Decl. ¶ 29; Affeld Decl. ¶¶ 3-8 & Exs. 1, 2. Kidan, through counsel, also notified Bryan Cave of the conflict in its representing Chartwell adversely to MFS and Kidan. Affeld Decl. ¶¶ 3-8 & Exs. 1, 2.

### G.      Bryan Cave Fails to Give Proper Notice of Its Motion.

Bryan Cave filed its motion to withdraw on April 9, 2019, setting a hearing date for June 27, 2019. *See* Mot. to Withdraw, Dkt. No. 86; Dallas Decl. ¶ 11.   At the same time, it moved to shorten time on its motion to withdraw. Mot. to Shorten Time, Dkt. No. 87.  In its motion to shorten time, Bryan Cave requested an opposition deadline of April 19, 2019. *Id.*   The Court never granted the motion, changed the briefing schedule, or modified the hearing date.

Bryan Cave failed to notify MFS of the requirement that MFS respond to the motion to withdraw within 14 days. *See* Mot. to Withdraw, Dkt. No. 86; Dallas Decl. ¶ 12.  As far as MFS was aware, the motion to withdraw would not be granted until after a hearing.  Bryan Cave also failed to notify MFS when it filed a Notice of Non-Opposition on April 25, asking that "its motion for leave to withdraw be granted at the earliest opportunity" without opposition from MFS. Dkt. No. 88.  It failed to serve MFS with this notice.  Dallas Decl. ¶ 13.

Meanwhile, Bryan Cave continued to act as though it were representing MFS.  Among other things, Archibald exchanged emails Dallas on May 1 and 2, 2019, relating to settlement

1   approval and claims administration.  Dallas Decl. ¶ 14 & Ex. 6.

2       MFS first learned of the Court's order granting Bryan Cave's motion to withdraw on May

3   2, 2019, when Archibald emailed Dallas a copy of the May 1 Order.  Dallas Decl. ¶ 15.  In that

4   order, the Court denied Bryan Cave's motion to shorten time as moot, and granted its motion to

5   withdraw as unopposed.  May 1 Order, Dkt. No. 89.

6

7   **III.   <u>STANDARD FOR RECONSIDERATION</u>**

8       An order "that adjudicates fewer than all the claims or rights and liabilities" is

9   interlocutory and "may be revised at any time before the entry of a [final] judgment."  Fed. R.

10  Civ. P. 54(b).   The Court has inherent discretion to modify interlocutory orders in changed

11  circumstances.  *Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016) (citing *United States v.*

12  *Swift & Co.*, 286 U.S. 106, 114-15 (1932)).

13      The Court may grant leave to seek reconsideration if the moving party shows (a) "a

14  material difference in fact or law" from that presented to the Court on the original motion, and

15  despite "reasonable diligence," the party seeking reconsideration did not know of the fact or law

16  at the time of the hearing; (b) the "emergence of new material facts or a change of law"

17  occurring after the time of the order; or (c) a "manifest failure by the Court to consider material

18  facts or dispositive legal argument" presented on the motion.  Local Civ. R. 7-9.  The Ninth

19  Circuit has held that "[r]econsideration is appropriate if the district court (1) is presented with

20  newly discovered evidence, (2) committed clear error or the initial decision was manifestly

21  unjust, or (3) if there is an intervening change in controlling law" and "[t]here may also be other,

22  highly unusual, circumstances warranting reconsideration." *Sch. Dist. No. 1J, Mulnomah Cty.,*

23  *Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993), *cert. denied* 51 U.S. 1236 (1994); *see*

24  *also* Fed. R. Civ. P. 59 (e); *Circuit City Stores, Inc. v. Mantor*, 417 F.3d 1060, 1064 n.1 (9th Cir.

25  2005).  A motion for reconsideration may also be granted on a showing of:  (1) "mistake,

26  inadvertence, surprise, or excusable neglect"; (2) "newly discovered evidence"; (3) "fraud . . .

27  misrepresentation, or misconduct by an opposing party," or (4) "any other reason that justifies

28  relief," *i.e.*, "extraordinary circumstances."  Fed. R. Civ. P. 60(b); *Sch. Dist. No. 1J*, 5 F.3d

- 9 -

at1263 (9th Cir. 1993); *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985).

"Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citation omitted).

## IV.    ARGUMENT

### A.    MFS Should Be Given Leave to Seek Reconsideration Because It Did Not Have Adequate Notice to Oppose Bryan Cave's Motion.

Courts in this district have consistently held that reconsideration is appropriate where a party lacked a fair opportunity to fully brief an issue before the Court's ruling. *See Fredenburg v. City of Santa Clara*, No. C 07-04412 JW, 2009 WL 1814316 (N.D. Cal. June 25, 2009) (permitting plaintiff leave to seek reconsideration where court *sua sponte* dismissed claim on motion for summary judgment, and parties lacked an opportunity to brief the issue); *Davis v. CACH, LLC*, No. 14-cv-03892-BLF, 2015 WL 2251044 at *3 n.3 (N.D. Cal. May 13, 2015) (granting reconsideration where defendant raised issue in reply brief on which the court relied).

MFS was effectively deprived of an opportunity to respond to Bryan Cave's motion. Bryan Cave never informed MFS of the deadline to oppose its motion. It failed to notify MFS that the motion could be granted as unopposed if MFS did not respond in writing within 14 days. It failed to serve MFS, its client, with its Notice of Non-Opposition asking for an immediate ruling, which would have tipped MFS off that it needed to respond immediately. MFS had no notice whatsoever that the motion could be granted without opposition or of the Court's unique Local Rule requiring opposition within 14 days of a motion, regardless of the hearing date. The Northern District is the only District Court in California with such a rule. [3]

As far as MFS knew, the motion was set for hearing on June 27, and it had a chance to

---

[3] All of the others base the opposition deadline off of the hearing date. *See*, *e.g.*, Eastern District of California, Local Rule 230(c) (opposition due "not less than fourteen (14) days preceding the noticed (or continued) hearing date"); Southern District of California, Local Civil Rule 7.1(e)(2) ("each party opposing a motion . . . must file that opposition . . . not later than fourteen (14) *calendar* days prior to the noticed hearing") (emphasis in original); Central District of California Local Civil Rule 7-9 ("[e]ach opposing party shall . . . not later than twenty-one (21) days before the date designated for the hearing of the motion . . . file" opposition evidence and points and authorities).

1   respond at or prior to the hearing.  Motions to withdraw are not usually granted without a

2   hearing, giving the effectively unrepresented client a chance to explain its position.  Bryan Cave

3   added confusion by proposing a briefing schedule in its motion to shorten time, without

4   notifying MFS of the current briefing schedule.  Bryan Cave's motion to shorten time was never

5   granted.  MFS believed that it had ample time to respond before the June 27 hearing.

6          The same facts support relief on the grounds of "mistake, inadvertence, surprise, or

7   excusable neglect."  Fed. R. Civ. P. 60(b).  MFS was effectively unrepresented.  It was

8   reasonable for MFS to believe that it still had time to file a written opposition or to appear at the

9   hearing because its counsel never informed it otherwise.

10         **B.     Reconsideration Is Appropriate Based on New Evidence.**

11         Now that MFS has been given a chance to present its evidence, the new evidence

12  demonstrates that Bryan Cave's motion should never have been granted.

13                 **1.     New Evidence Undermines Bryan Cave's Basis for Withdrawal.**

14         Bryan Cave based its motion on false and misleading statements of the grounds for

15  withdrawal.  It asserted that it was seeking withdrawal because "the attorney-client relationship

16  between [it] and MFS ha[d] irretrievably broken down" and "communications with MFS have

17  also broken down."  Mot. to Withdraw, Dkt No. 86, at pp. 2-3; Archibald Decl., Dkt. No. 86-1 at

18  ¶ 4.   Archibald went even further, claiming that "MFS is no longer cooperating or meaningfully

19  communicating with [Bryan Cave]."  Archibald Decl., Dkt. No. 87-1, at ¶ 3.

20         These assertions are flatly and demonstrably false, as shown by Bryan Cave's own emails

21  with MFS.  There was no "breakdown" of the attorney-client relationship, much less a lack of

22  "cooperation" or "communication" by MFS.  *See* Dallas Decl. ¶ 5.  Archibald simply ceased

23  contact with MFS.  When Archibald emailed MFS on March 20—having already decided with

24  Chartwell that Bryan Cave would abandon MFS—MFS responded within 30 minutes, inviting

25  Archibald to call back.  *Id.* ¶ 6 & Ex. 3.  He never did so.  *Id.* ¶ 7.  Instead, he let Chartwell

26  inform MFS that Bryan Cave had unilaterally decided to withdraw.  *Id.* ¶¶ 8-9 & Ex. 4.  There

27  was no dispute or disagreement between MFS and Bryan Cave.  Bryan Cave simply abandoned

28  its client, MFS, in favor of Chartwell.  *See In re Brockway*, 4 Cal. State Bar Ct. Rptr. 944, 951-

52, 2006 WL 1360438, at *5 (Review Dept. of State Bar Ct. of Cal. 2006) (noting that abandonment lack of communication by the lawyer constitutes improper withdrawal).

MFS had no idea what was coming and had no issues with Bryan Cave's representation whatsoever.  Both before and after Archibald's announcement, MFS and Bryan Cave had worked together well, and MFS had no issues.  Dallas Decl. ¶ 5.  MFS continued to communicate with Archibald regarding settlement administration even after Bryan Cave announced its departure.  *Id.* ¶ 14 & Ex. 6.

The only "breakdown" identified by Bryan Cave is that when Bryan Cave announced that it was unilaterally abandoning MFS, MFS disagreed.  *See* Archibald Decl. at ¶ 6.  A manufactured "breakdown" of the attorney-client relationship, caused by counsel cutting off contact with his client and declaring that he would no longer represent a client, is not a basis for withdrawal.  *See Estate of Falco*, 188 Cal. App. 3d 1004, 1019 (1987) (affirming finding that "lack of cooperation" did not justify withdrawal where attorney contributed to antagonism with client).  Withdrawal is only proper where the ***client's actions***—not counsel's—make it "unreasonably difficult" to continue representation.  *See* Cal. R. Prof. Conduct, rule 1.16(b)(4).  Bryan Cave submits no evidence of such a breakdown because it simply never happened.

Bryan Cave's resort to "recently learned" information about Kidan's conduct does not justify withdrawal either.  For one thing, Bryan Cave was aware of these facts and allegations from the outset.  It knew of Kidan's 15-year-old criminal matter because this fact was disclosed to it twice, once in connection with the guarantee negotiations, and once when Archibald initially took on representing MFS.  It also knew of Kidan's ownership of MFS for the same reasons.  Finally, Bryan Cave well knew of Tracy Kidan's allegations of misappropriation in the divorce case because it represented Lilley in buyout negotiations as part of the same divorce.

Indeed, Bryan Cave's argument makes no sense.   It repeatedly asserts that it never represented Kidan individually.  According to Bryan Cave, when it sought to withdraw, it did not even know whether Kidan owned MFS.  *See* Mot. at p. 1 ("Adam Kidan, the *alleged* sole member of Defendant MFS") (emphasis added).  It remains wholly unclear how Kidan's conduct, totally unrelated to this litigation, could have made it unreasonably difficult for Bryan

MOTION FOR LEAVE TO SEEK RECONSIDERATION

1    Cave to continue representing MFS, when Bryan Cave professes to have been unaware of the

2    relationship between Kidan and MFS.

3         Bryan Cave did not suddenly have to withdraw after learning unfavorable information

4    about Kidan.  It knew this supposedly unfavorable information all along.  It had no problem with

5    that information until switching loyalties suddenly became economically tempting.

6         **2.      The New Evidence Demonstrates that Bryan Cave Did Represent**

7    **Kidan Individually.**

8         The Court should also reconsider that portion of its ruling that accepts Bryan Cave's

9    representation that it never represented Kidan.  The Court's finding may impact other

10   proceedings, including a pending motion to disqualify Bryan Cave in the *Chartwell* Litigation.

11        Bryan Cave's assertion that it never represented Kidan individually is simply wrong.

12   Bryan Cave partner, Parekh, represented Kidan in his individual capacity as Chartwell's personal

13   guarantor.  Kidan Decl. ¶¶ 14-18.  In this capacity, Bryan Cave advised Kidan for at least four

14   hours and obtained extensive confidential information about Kidan's personal assets and

15   finances, and his business dealings with Chartwell.  *Id.* ¶ 16.  Much of this information is what

16   Bryan Cave mischaracterizes as Kidan's "wrongful acts" to support withdrawal.  *Id.*

17        An attorney-client relationship is formed where a person "consults a lawyer for the

18   purpose of . . . securing legal service or advice [] in [a] professional capacity."  See Cal. Evid.

19   Code § 951; *People v. Gionis*, 9 Cal. 4th 1196, 1208 (Cal. 1995); *Wells Fargo Bank v. Superior*

20   *Court*, 22 Cal. 4th 201, 213 (Cal. 2000); *see also* Cal. State Bar. Form. Opn. 1984-84, 1984 WL

21   50108 (1984) at *3 (defining "client" as a person who consults a lawyer for purposes of retention

22   or advice).  Any attorney who knowingly obtains confidential information from a person for

23   purposes of giving advice represents that person for conflicts purposes.  See *People ex rel Dep't*

24   *of Corps. v. SpeeDee Oil Change Sys.*, 20 Cal. 4th 1134, 1148 (Cal. 1999); *Beery v. State Bar*,

25   43 Cal. 3d 802, 812 (Cal. 1987); *Miller v. Metzinger*, 91 Cal. App. 3d 31, 39-40 (Cal. Ct. App.

26   1979).  Courts consider all of the circumstances to determine whether an implied attorney-client

27   relationship exists.  *Kane, Kane & Kritzer, Inc. v. Altagen*, 107 Cal. App. 3d 36, 40-42 (1980);

28   CA Eth. Op. 2003-162, 2003 WL 23146200 at *4.

Bryan Cave was Kidan's counsel in his capacity as guarantor. All of the circumstances surrounding that representation support this conclusion. Kidan led negotiations with Madison in his capacity as a guarantor. Bryan Cave advised him about how to approach negotiations *as a guarantor*, how to minimize his risk as a guarantor, and options if Madison sought to enforce the guaranty (including personal bankruptcy). It consulted Kidan extensively and obtained significant confidential information from Kidan. This created an attorney-client relationship.

Moreover, the Court's finding that Bryan Cave never represented Kidan is not necessary to its determination. Whether Bryan Cave represented Kidan is not relevant to the grounds it offers for withdrawal – *i.e.*, a "breakdown" of the attorney-client relationship. This unnecessary finding can only interfere with Kidan's motion to disqualify in the *Chartwell* Litigation.

## C. Binding Authority Holds that Bryan Cave Must Withdraw from All Representation in this Action.

Counsel may not selectively withdraw from representing one joint client because it wants to take on adverse representation on behalf of another joint client. Where two clients are adverse, counsel is barred from representing either of them. "A lawyer shall not, without informed written consent from each client . . . represent a client if the representation is directly adverse to another client in the same or a separate matter." Cal. R. Prof. Conduct, rule 1.7(a) (former rules 3-310 and 3-320); *see also SpeeDee Oil*, 20 Cal. 4th. at 1146 (holding that counsel has "a duty to maintain undivided loyalty"). Disqualification is "automatic" under this rule. *Flatt v. Superior Court*, 9 Cal. 4th 275, 284 (Cal. 1994); *State Farm Mut. Auto Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1432-33 (1999); *Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 105, 1059 (1992).

Bryan Cave's motion makes abundantly clear that there is a concurrent conflict between Chartwell and MFS. The essence of its argument is that Chartwell's dispute with Kidan makes it impossible to represent MFS's interests. This is the definition of a concurrent conflict of interest. *See GSI Commerce Solutions, Inc. v. BayCenter, L.L.C.*, 618 F.3d 204, 210 (2d Cir. 2010) (collecting cases for the proposition that a conflict exists if adverse representation against an affiliate "reasonably diminishes the level of confidence in trust in counsel held by the client")

- 14 -

(quotation marks and modification omitted); *Truck Ins. Exchange*, 6 Cal. App. 4th at 1056-57 (affirming order disqualifying counsel from representing entity adverse to an affiliate of its current client); *Woods v. Superior Court*, 149 Cal. App. 3d 931, 935-36 (1983) (holding that counsel could not represent family business and also one of its owners against another).

Bryan Cave's abandonment of MFS does not cure this conflict, but compounds it, requiring Bryan Cave to withdraw from all representation.  Courts have long recognized the "hot potato" rule, which prohibits counsel from selectively withdrawing where a conflict arises between two current clients.  *See Flatt*, 9 Cal. 4th at 288; see also *Truck Ins. Exchange*, 6 Cal. App. 4th at 1056 ("a law firm that knowingly undertakes adverse concurrent representation may not avoid disqualification by withdrawing from the representation of the less favored client before hearing").  "So inviolate is the duty of loyalty to an existing client that not even by withdrawing from the relationship can an attorney evade it."  *Flatt*, 9 Cal. 4th at 288.  An attorney cannot resolve a concurrent conflict by dropping one of its clients "like a hot potato" in order to sue that client on behalf of the other.  *See Woods*, 149 Cal. App. 3d at 937 ("[counsel] acted properly when he told wife he could not represent her.  He should have said the same thing to husband to avoid any appearance of impropriety").

By "jettison[ing]" MFS in favor of Chartwell, Bryan Cave violated its duty of loyalty to MFS.  *See American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1044 (2002); *Pour Le Bebe, Inc. v. Guess? Inc*., 112 Cal. App. 4th 810, 822-23 (2003).  Such disloyalty is not subject to an advance conflict waiver.  , Bryan Cave was required to disclose all material facts *before undertaking adverse representation of Chartwell*.  *See Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59, 84 (2018).  It failed to do so, violating its ethical obligations.

### D.   Bryan Cave Violated Its Duties of Loyalty and Confidence by Needlessly Maligning Kidan in its Motion to Withdraw.

An attorney has a duty "[t]o maintain inviolate the confidence, and at every peril to himself or herself, preserve the secrets" of the client.  Cal. Bus. & Prof. Code § 6068(e)(1).  The duty to maintain client confidences "involves public policies of paramount importance."  *See In*

1  re *Jordan*, 12 Cal. 3d 575, 580 (1974); *see also* Cal. R. Prof. Conduct, rule 1.6 (formerly rule 3-

2  100), Discussion Paragraph [1] ("hallmark of the client-lawyer relationship").  Under the duty to

3  maintain client confidences:

4      [A]n attorney is forbidden to do either of two things after severing his relationship
    with a former client. He may not do anything which will injuriously affect his

5      former client in any matter in which he formerly represented him nor may he at any
    time use against his former client knowledge or information acquired by virtue of

6      the previous relationship.

7  *Wutchumna Water Co. v. Bailey*, 216 Cal. 564, 572 (Cal. 1932).

8        Client confidences include "not only confidential information communicated between the

9  client and the lawyer, but also publicly available information that the lawyer obtained during the

10  professional relationship . . . which is likely to be embarrassing or detrimental to the client."  *See*

11  Cal. State Bar. Form. Opn. No. 2016-195, 2016 WL 4268977 (2016) at *3.  This is true

12  "whatever [the] source" of the information.  *See id.* (Cal. R. Prof. Conduct, rule 3-100,

13  Discussion paragraph [2]); *see also* Cal. Eth. Op. 2004-165, 2004 WL 3079030 (2004) at *4

14  ("The duty [of confidentiality] has been applied even when the facts are already part of the

15  public record or where there are other sources of information").

16        An attorney may not disclose such information where it "might cause a client or former

17  client public embarrassment."  *In the Matter of Johnson*, 4 Cal. State Bar Ct. Rptr. 179, 189, No.

18  96-O-05705, 2000 WL 1682427, at *10 (Cal. Bar Ct. Oct. 26, 2000).  Thus, counsel may be

19  disciplined under the Rules of Professional Conduct for disclosing a client's ***public*** criminal

20  record where counsel learned this information during representation.  *Id.*

21        Bryan Cave obtained information about Kidan's criminal conviction in confidence.  It

22  learned about this information by representing Kidan as guarantor.  At the very least, Bryan

23  Cave effectively admits that it learned of the information as part of its joint representation of

24  MFS and Chartwell.  *See* Mot. to Withdraw at p. 1 ("BCLP *recently* learned that the United

25  States Government has a $21 million restitution judgment") (emphasis added).  The information

26  is confidential and privileged, no matter how Bryan Cave obtained it.  "Whatever its source,"

27  this information amounts to client confidences.

28        There was no basis for Bryan Cave to disclose this information in the public record—

MOTION FOR LEAVE TO SEEK RECONSIDERATION

particularly on the eve of preliminary settlement approval.  Counsel is not permitted to disclose confidential information to support withdrawal.  *See* Cal. R. Ct., rule 3.1362(c); *Aceves v. Superior Court*, 51 Cal. App. 4th 584, 592-93 (1996) (recognizing that inquiry on motion to withdraw is limited to "prevent the required disclosure of communications that are confidential"); *see also* Cal. R. Prof. Conduct, rule 1.16(d) (requiring counsel to take "reasonable steps to avoid reasonably foreseeable prejudice" to client).  California does not permit or require a "noisy withdrawal."  Nor was there any reason to publicize negative facts and allegations about Kidan when they were wholly unnecessary to Bryan Cave's stated basis for withdrawal – *i.e.*, that the attorney-client relationship had broken down.  Instead, Bryan Cave threw these bad facts into its motion simply to distract from the lack of merit in that motion by making Kidan and MFS look bad.  It violated its professional obligations in the process.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant MFS leave to seek reconsideration of the May 1 Order.

Dated:  May 29, 2019                    Respectfully submitted,

                                        By: /s/ Damion Robinson
                                            David W. Affeld
                                            Damion D. D. Robinson
                                            Affeld Grivakes LLP

                                            Attorneys for Defendant Managed
                                            Facilities Solutions, LLC

1

**<u>CERTIFICATE OF SERVICE</u>**

2     I, Damion Robinson, certify that I filed the foregoing document using the Court's

3 electronic filing (CM/ECF) system on May 29, 2019.  I am informed and believe that electronic

4 filing will result in service by email to all interested parties.

5
                                        _____
6                                          Damion D. D. Robinson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28