David W. Affeld, Cal. Bar. No. 123922
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Tel. (310) 979-8700
Fax (310) 979-8701
dr@agzlaw.com

Attorneys for Defendant Managed Facilities Solutions, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| GARY MIDDLE RIDER, an individual, *et al.*, *etc.* | Case No.:  17-CV-04015 LHK |
| Plaintiffs, | *Assigned for All Purposes to:* The Hon. Lucy H. Koh |
| vs. | **DECLARATION OF ADAM KIDAN IN SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION** |
| MOVING SOLUTIONS, a California corporation, *et al.* | [Filed concurrently: (1) Notice of Motion and Motion; (2) Declaration of Haynes Dallas; (3) Declaration of David Affeld; (4) Proposed Order] |
| Defendants. | Date:         September 26, 2019 Time:        1:30 p.m. Courtroom: 8 |

I, Adam Kidan, declare

1.    I am the sole owner of Managed Facilities Solutions, LLC ("MFS"), a defendant in this action, and have personal knowledge of the facts below. I could testify competently to those facts if called upon to do so.

2.    I founded Chartwell Staffing Services, Inc. ("Chartwell") in 2012. The company is a family business owned by my wife, Tracy Kidan ("Tracy"[1]) and me. Tracy holds all of the stock in her name, but it is a marital asset subject to a matrimonial proceeding pending in Pennsylvania (the "Divorce Proceeding").

3.    Tracy and I are both personal guarantors of Chartwell's credit facility with Madison Resources ("Madison"). Madison acted as Chartwell's primary banker, factor, and lender starting in 2013. It also provides "back office" services to Chartwell, including IT systems and support.

4.    A true copy of excerpts of one of the multiple loan agreements with Madison reflecting Tracy's and my personal guarantee is attached as **Exhibit 1**. I have redacted certain portions of the agreement to maintain confidentiality.

5.    The credit facility has exceeded $42,000,000 at various times since it was put in place. Tracy and I guarantee this entire debt. If Madison declared a default and enforced the guarantee, it is likely that we would both have to file personal bankruptcy. A default of the Madison facility would bankrupt Chartwell.

6.    Chartwell acquired MFS (previously Moving Solutions) in 2016. At that time, MFS was a Chartwell client. Our loan covenants prohibited Madison's funding from being used to finances affiliates, so Chartwell had to divest MFS. At that time, Tracy and I agreed that we would do so by transferring all of MFS' equity to me. I remain the sole owner and managing member of MFS.

7.    I hired W. Holmes Lilley ("Lilley") in July 2016 to act as Chartwell's general counsel. Lilley had a personal relationship with attorney Christopher Archibald ("Archibald"), who then worked at Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree").

---

[1] Because Tracy Kidan and I share a surname, I have referred to her as "Tracy" throughout this declaration for ease of reference. No disrespect is intended.

KIDAN DECL.MOTION FOR LEAVE TO SEEK RECONSIDERATION

1    8.    Lilley encouraged us to bring on Archibald to represent Chartwell in this case.

2  Because MFS was a co-defendant with Chartwell, MFS also retained Archibald and Ogletree

3  under a joint retention arrangement.  Under this arrangement, Chartwell pays the fees incurred

4  on behalf of itself and MFS.

5    9.    During this representation, Archibald moved from Ogletree to Bryan Cave

6  Leighton & Paisner, LLP ("Bryan Cave").  On November 1, 2018, MFS and Chartwell re-

7  engaged Archibald to represent them.

8    10.    At Lilley's instance, Bryan Cave became more and more involved in Chartwell's

9  corporate affairs.  By the time I left the company entirely in early March 2019, Bryan Cave was

10  as one of the primary corporate counsel to Chartwell.

11    11.    In 2017, Madison began threatening to declare a default under the credit facility.

12  Representatives of Madison told me that they could no longer provide funding to Chartwell

13  because their lender, Citizens' Bank, would no longer fund Madison if they did so.  At that

14  time, I understood that Chartwell represented approximately 60% of Madison's business.

15  According to Madison, Citizens' Bank had threatened to withdraw funding because Madison

16  was "backing a criminal."  I took this to be a reference to my criminal conviction in 2005 in a

17  completely unrelated matter.  During these 2017 discussions, Madison insisted that Chartwell

18  find a new lender or that it would declare a default.  Madison wanted Chartwell to continue

19  using its "back office" services but not its funding.  I estimated that this would increase

20  Chartwell's expenses by approximately $2,000,000.

21    12.    At that time, I brought on Sheppard Mullin as litigation counsel to address the

22  Madison situation.  Lilley insisted that Chartwell get a "second opinion" from Bryan Cave.  We

23  agreed that Sheppard Mullin would continue to act as litigation counsel, while Bryan Cave

24  would act as the lead counsel in negotiations with Madison for a non-litigation resolution.

25    13.    In this capacity, Bryan Cave provided advice to Chartwell and to me as a

26  personal guarantor of Chartwell's credit facility with Madison.  I led the negotiations with

27  Madison myself because of the significant personal guaranty, my ownership interest in

28  Chartwell, and my longstanding relationship with Madison.

KIDAN DECL.MOTION FOR LEAVE TO SEEK RECONSIDERATION

1    14.    I consulted directly with Bryan Cave partner Amit S. Parekh ("Parekh") about the

2  negotiations.  Parekh directly advised me about my risks as a personal guarantor, how to

3  minimize the risks of personal liability, and the consequences if Madison declared an event of

4  default triggering my guarantee.

5    15.    Parekh coached me about how to approach negotiations with Madison as a

6  guarantor.  I communicated with Bryan Cave approximately a dozen times over the course of

7  several weeks in connection with this representation.  Parekh and I had about four phone calls,

8  lasting an hour each, where he gave me advice about how to approach the negotiations as a

9  guarantor.

10    16.    As part of this representation, in the course of these discussions, I discussed the

11  issues that Madison had raised, and potential events of default, with Parekh at length.  We had a

12  broad ranging discussion in which Parekh asked me questions about my personal finances and

13  business dealings in my capacity as a guarantor.  Among other things, I disclosed the following

14  information to Parekh:

15    •    My 2005 criminal conviction.  Parekh gave me advice about how to best address

16  this issue with Madison.

17    •    The shareholder loans that Tracy and I both had at Chartwell, which related to

18  certain personal spending of the type that Chartwell has characterized as embezzlement in this

19  case and in *Chartwell Staffing Services, Inc. v. Atlantic Solutions Group, Inc.*, Central District

20  of California Case No. 8:19-cv-0624-JLS (the "*Chartwell* Litigation").  We determined that the

21  shareholder loans were likely not an event of default under the Madison loan although this was

22  an issue of concern for me.

23    •    Tracy's and my personal assets, which were at risk of attachment if Madison

24  declared a default and triggered the guarantee.  I discussed with Parekh the risks to Tracy and

25  me personally if Madison declared a default, and how to minimize those risks in negotiation

26  with Madison.  We also discussed the possibility of declaring personal bankruptcy if Madison

27  declared default.

28    •    The relationship between Chartwell and MFS, and the reasons for MFS's

- 4 -

KIDAN DECL.MOTION FOR LEAVE TO SEEK RECONSIDERATION

1  divestiture to me.  Madison had repeatedly made an issue of MFS as a potential default.  I
2  explained in detail to Parekh how the relationship between MFS and Chartwell had come about
3  and how I came to own MFS personally.

4      •    The Divorce Proceeding.  Madison had a loan covenant, requiring Chartwell to
5  put in place a management plan in the event of my death or divorce.  I discussed with Parekh
6  whether the pending divorce could trigger a default.  I disclosed my limited ongoing role at
7  Chartwell, the limitations on the officer position I maintained, and the reasons I maintained this
8  position, which related directly to the Madison credit facility.

9      •    Potential alternative financing sources, such as merchant advances.  Parekh
10  offered to introduce Chartwell to certain lenders in the factoring industry.  Merchant advances
11  are the same types of financing facilities that Tracy claims I misused in the Divorce
12  Proceedings, and that Chartwell has accused me of fraudulently using in the *Chartwell*
13  Litigation.

14      17.    Bryan Cave advised me, as a guarantor, about the ways to best approach
15  restructuring Chartwell's relationship with Madison, how to minimize the risk that Madison
16  would declare a default, and how to minimize my personal risk if Madison ultimately did
17  declare a default.

18      18.    I understood during this representation that Bryan Cave was representing me in
19  my individual capacity as a guarantor along with Chartwell.  I disclosed information about my
20  personal finances and business dealings to Bryan Cave with the understanding that the
21  information would be treated as confidential and privileged.

22      19.    A true copy of certain emails between Parekh and me relating to this
23  representation as well as a reminder for one of our telephone meetings are attached as **Exhibit**
24  **2.**

25      20.    As part of the Divorce Proceedings, I believed that Chartwell would ultimately be
26  sold, either to Tracy, to me, to a third-party or to company management.  In late 2018, we
27  promoted Lilley to CEO of Chartwell.  He made a buyout proposal, offering $12,000,000 to
28  acquire the company.

KIDAN DECL.MOTION FOR LEAVE TO SEEK RECONSIDERATION

1    21.    Bryan Cave sought to represent Lilley in the buyout discussions. It requested

2  that I agree to a waiver of conflicts so that it could represent Lilley. I ultimately agreed to a

3  waiver for the sole purpose of allowing Bryan Cave to represent Lilley in buyout discussions.

4    22.    A true copy of a series of emails between Bryan Cave and me relating to the

5  waiver, as well as a true copy of the waiver, are attached hereto as **Exhibit 3.**

6    23.    The buyout negotiations broke down in March 2019.

7    24.    On March 8, 2019, I stepped away from any role with Chartwell to start my own

8  staffing company, Atlantic Solutions Group, Inc., doing business as Empire Workforce

9  Solutions ("Empire").

10    25.    A true copy of a letter dated March 15, 2019 from Aileen M. Hunter of Bryan

11  Cave to me is attached hereto as **Exhibit 4**.

12    26.    Chartwell sued Empire and me in the *Chartwell* Litigation on April 4, 2019. Ms.

13  Hunter of Bryan Cave is lead counsel to Chartwell in that litigation.

14    27.    From the outset of this case we disclosed to counsel, which included Archibald,

15  that I was the sole owner of MFS. We also disclosed my prior criminal matter to counsel at the

16  outset of representation, and I again discussed this issue with Bryan Cave in connection with

17  the guarantee negotiations.

18    28.    On or about March 21, 2019, I received a series of emails involving Archibald,

19  Lilley, and Haynes Dallas ("Dallas"), the current Chief Executive Officer of MFS, in which it

20  appeared that Bryan Cave was seeking to withdraw from representing MFS. A true copy of this

21  exchange is attached as Exhibit 3 to Dallas' declaration in support of this motion.

22    29.    To the best of my knowledge, MFS had never had any problem with Bryan

23  Cave's representation of MFS. I insisted that Bryan Cave not withdraw from representing MFS

24  so close to what appeared to be a workable settlement.

25    30.    On April 3, 2019, Archibald formally notified us that Bryan Cave was

26  withdrawing from representing MFS. Exhibit 4 to Dallas' declaration is a true copy of

27  Archibald's email to this effect. I understand that Archibald later sent a motion to withdraw to

28  Dallas as the registered agent of MFS.

KIDAN DECL.MOTION FOR LEAVE TO SEEK RECONSIDERATION

1      31.    My counsel, David W. Affeld, wrote to Archibald and Ms. Hunter on April 2,

2 and 3, 2019, advising of the conflict of interest, and requesting that Bryan Cave not withdraw.

3 Bryan Cave insisted on withdrawing anyway.

4      32.    Because Bryan Cave has abandoned MFS, MFS has been required to retain new

5 counsel at its own expense in the *Rider* Litigation, who must duplicate efforts to prepare for the

6 class settlement approval hearing on May 23.  This has been a significant detriment to MFS,

7 and to me as MFS's sole member and owner.

8      I declare under penalty of perjury under the laws of the United States that the foregoing is

9 true and correct.  Executed this 28th day of May, 2019 at Commerce , California.

10

11                                   Adam Kidan

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIDAN DECL.MOTION FOR LEAVE TO SEEK RECONSIDERATION

**Exhibit 1**

**Note**

$5,000,000.00                                                November 10, 2016

FOR VALUE RECEIVED, CHARTWELL STAFFING SERVICES, INC., a New York corporation with a principal place of business at 245 Centerville Road, Suite 2, Lancaster, PA 17603 (the "Borrower") promises to pay to MADISON RESOURCE FUNDING CORP., a Massachusetts corporation with a principal place of business at 72 Mirona Road, Suite 4, Portsmouth, NH, 03801, its successors and assigns (the "Lender"), the principal sum of up to FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) (the "Principal Amount") or so much thereof as may have been advanced by the Lender from time to time, in accordance with the terms therein, together with unpaid interest thereon at the rate set forth below and due and payable on the dates and in the manner set forth below (the "Indebtedness"). Anything herein to the contrary notwithstanding, the entire outstanding Indebtedness evidenced by this Note, including but not limited to all outstanding principal and unpaid interest as herein provided, shall be due and payable in full on or before October 15, 2017 (hereinafter referred to as the "Maturity Date").



General Provisions

1. The liabilities of the Borrower and of each endorser or Guarantor of this Note are joint and several. However, the release by the Lender of the Borrower or of any endorser or guarantor shall not release any other person obligated on account of this Note. Each reference in this Note to the Borrower, any endorser and any Guarantor, is to such person individually and also to all such persons jointly. No person obligated on account of this Note may seek such contribution from any other person also obligated unless and until all liabilities, obligations, and indebtedness to the Lender of the person from whom contribution is sought have been satisfied in full.



3. This Note shall be binding upon the Borrower and each endorser and Guarantor, and upon their respective heirs, successors, assigns and representatives, and shall inure to the benefit of the Lender and its successors, endorsees, transferees, participants and assigns. Without limiting the generality of the foregoing or of any other provision in this Note or any of the Loan Documents, if Borrower is a so-called "nominee trust" the term Borrower shall include, without limitation, any beneficiary of the trust.



Page **3** of 7

Executed as an instrument under seal as of the date written on the first page above.

BORROWER:

CHARTWELL STAFFING SERVICES, INC.

A New York Corporation

Name: Tracy Schneider-Kidan
Title:  President

Witness: _____

Date: _____

---

GUARANTOR:
As Her Unconditional and Unlimited Personal
Guarantee:

Tracy    Schneider-Kidan,    as    her    personal
obligation

Witness: _____

Date: _____

GUARANTOR:
As His Unconditional and Unlimited Personal
Guarantee:

Adam Kidan, as his personal obligation

Witness: _____

Date: _____

GUARANTOR:
PLAZA PERSONNEL, LTD.
A Missouri corporation

By: _____
Title:
Witness: _____

Date: _____

# Exhibit 2

**Subject:**   Re: reminder - Chartwell [MCLANE-DB.FID1585656]
**Date:**      Tuesday, January 29, 2019 at 8:44:01 AM Eastern Standard Time
**From:**      Adam Kidan
**To:**        Parekh, Amit, Holmes Lilley
**CC:**        Archibald, Christopher
**Attachments:** image001.jpg, image002.jpg, image003.jpg, image004.jpg, image005.jpg, image006.jpg, image007.jpg, image008.jpg, image009.jpg, image010.jpg, image011.jpg, image012.jpg, image013.jpg, image014.jpg, image015.jpg, image016.jpg

Good morning. Things are not going well with Madison at this point. We will keep you posted. Thanks, Adam

# Adam R. Kidan

Lancaster, PA
O: (717) 370-7003 ext. 10111



Clear Expectations-Consistent Execution-Creative Solutions

---

**From:** "Parekh, Amit" <amit.parekh@bclplaw.com>
**Date:** Monday, January 28, 2019 at 3:26 PM
**To:** Adam Kidan <adam.kidan@chartwellstaff.com>, Holmes Lilley <holmes.lilley@chartwellstaff.com>
**Cc:** "Archibald, Christopher" <christopher.archibald@bclplaw.com>
**Subject:** RE: reminder - Chartwell [MCLANE-DB.FID1585656]


Hi Holmes and Adam.

Just wanted to check-in to see how your conversation went with Madison and if there is path-forward on the amendment.

Looking forward to hearing the update.

Regards,
Amit

 AMIT S. PAREKH
Partner
BRYAN CAVE LEIGHTON PAISNER LLP - Irvine, CA USA
amit.parekh@bclplaw.com
T: +1 949 223 7105

**From:** Parekh, Amit
**Sent:** Sunday, December 30, 2018 2:05 PM
**To:** 'Adam Kidan'; Holmes Lilley
**Cc:** Archibald, Christopher
**Subject:** RE: reminder - Chartwell [MCLANE-DB.FID1585656]

Hi Holmes and Adam.

I reviewed my notes, and I think the critical items for your discussion with Madison are the following:

1. Amount of the fees (currently on Schedule A). With regard to the Loan Fee on Schedule A – we did not discuss this. Is it correct?
2. Term of the agreement
3. Conceptual agreement that only market provisions for payroll services will be included

Given there are only a few items, it is probably not worth formalizing a term sheet. I believe that once you have agreement on these points, we can revise the current draft and circulate.

Hope you have a great New Year's!

Amit



AMIT S. PAREKH
Partner
BRYAN CAVE LEIGHTON PAISNER LLP - Irvine, CA USA
amit.parekh@bclplaw.com
T: +1 949 223 7105

**From:** Adam Kidan [mailto:adam.kidan@chartwellstaff.com]
**Sent:** Tuesday, December 18, 2018 2:49 PM
**To:** Parekh, Amit; Holmes Lilley
**Cc:** Archibald, Christopher
**Subject:** Re: reminder - Chartwell [MCLANE-DB.FID1585656]

First week in Jan. Thanks,

# Adam R. Kidan

Lancaster, PA
O: (717) 370-7003 ext. 10111



Clear Expectations-Consistent Execution-Creative Solutions

**From:** "Parekh, Amit" <amit.parekh@bclplaw.com>
**Date:** Tuesday, December 18, 2018 at 5:48 PM
**To:** Adam Kidan <adam.kidan@chartwellstaff.com>, Holmes Lilley <holmes.lilley@chartwellstaff.com>

**Subject:** Accepted: Agreement Discussion
**Date:** Monday, December 10, 2018 at 1:15:38 PM Eastern Standard Time
**From:** Adam Kidan
**To:** Parekh, Amit

**Exhibit 3**

**Subject:** Re: Conflict waiver
**Date:** Wednesday, February 20, 2019 at 1:59:50 PM Eastern Standard Time
**From:** Adam Kidan
**To:** Archibald, Christopher
**CC:** Holmes Lilley, Rebecca Cheuvront, Parekh, Amit
**Attachments:** image001.jpg, image002.jpg, image003.jpg, image004.jpg, image005.jpg

I am fine with this. I consent.

Sent from my iPhone

On Feb 20, 2019, at 12:51 PM, Archibald, Christopher <christopher.archibald@bclplaw.com> wrote:

Counsel,

Attached, please find the conflict waiver letter for which we need Mr. Kidan's agreement so we can represent Mr. Lilley in the purchase of Chartwell. Please let me know if you would like to discuss. Otherwise, please respond to this email by indicating his agreement with the attached. Thanks.

Chris

CHRISTOPHER J. ARCHIBALD
Attorney
BRYAN CAVE LEIGHTON PAISNER LLP - Irvine, CA USA
christopher.archibald@bclplaw.com
T: +1 949 223 7341

**From:** Holmes Lilley [mailto:holmes.lilley@chartwellstaff.com]
**Sent:** Wednesday, February 20, 2019 11:38 AM
**To:** Archibald, Christopher; Adam Kidan; Rebecca Cheuvront; Parekh, Amit
**Subject:** Conflict waiver

Adam:

Chris will be sending over a conflicts letter/waiver request, when you get the letter please respond if you are in agreement with waiving the conflict.

# W. Holmes Lilley, III, CSP, J.D.

**Chief Executive Officer**
**Newport Beach, CA**
**C: (252) 414-7619**
<image001.jpg>
<image002.jpg><image003.jpg><image004.jpg><image005.jpg>

Clear Expectations-Consistent Execution-Creative Solutions

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at www.bclplaw.com.

<Waiver Ltr to Adam Kidan - 2.20.19.pdf>



BRYAN CAVE LEIGHTON PAISNER LLP
3161 Michelson Drive  Suite 1500
Irvine  CA 92612 4414
T: +1 949 223 7000
F: +1 949 223 7100

www.bclplaw.com

February 20, 2019

**VIA EMAIL**

Mr. Adam Kidan
Chartwell Staffing Services, Inc.
245 Centerville Road, Suite 10
Lancaster, PA 17603

Re:     Engagement of Bryan Cave Leighton Paisner LLP

Dear Mr. Kidan:

A proposed firm client, W. Holmes Lilley III, current CEO of Chartwell Staffing Services, Inc. ("Chartwell"), has asked us to provide representation with respect to his proposed acquisition Chartwell (the "Proposed Matter") from you, Adam Kidan, as the husband of Tracy Kidan, the current sole shareholder of Chartwell.  As you know, Bryan Cave Leighton Paisner ("BCLP" or the "Firm") represents Chartwell with respect to labor and employment matters (the "Unrelated Matters").  It appears the factual and legal issues likely to arise in the work that Mr. Lilley has asked us to do are completely unrelated to the work we are presently doing for Chartwell.  BCLP has not been asked to represent Chartwell in connection with the Proposed Matter. We understand Chartwell has obtained independent counsel.

Under the U.S. rules of professional conduct, we may not represent a client in a matter adverse to another BCLP client without the informed consent of each client.  This means that we cannot proceed to represent Mr. Lilley on the Proposed Matter unless both Chartwell and Mr. Lilley consent.

In deciding whether to consent, you should consider how the Firm's representation of Mr. Lilley in the Proposed Matter could or might affect the Firm's representation of Chartwell.  We do not believe that our proposed representation of Chartwell will be affected, but you should make your own assessment of this issue.

The Proposed Matter in which we would represent Mr. Lilley and the Unrelated Matters in which we represent Chartwell are wholly unrelated. We do not believe that there is a substantial risk that our commitment and dedication to Chartwell's interests will be adversely affected by our representation of Mr. Lilley, and we believe that we will be able to continue to provide competent and diligent representation to Chartwell.

In the unlikely event a contentious dispute, threat of litigation or actual litigation (or other adversary proceedings) were to arise between Chartwell and Mr. Lilley in connection with the Proposed Matter, BCLP will not represent or counsel either Mr.

12507323.1

Mr. Adam Kidan
February 20, 2019
Page 2

Lilley or Chartwell in connection with any aspect of any such contentious dispute or
adversary proceedings.

Whether to consent to our representation of Mr. Lilley and waive the conflict of interest
under these circumstances is an important decision.  We suggest that you consider
consulting independent counsel to assist you in deciding whether to consent.  There is
no requirement that you do so, and whether you consult such counsel is your decision.
Your affirmative response to this email confirms that you, on behalf of Chartwell,
consent to the above described representation, waiving the actual or potential conflict
of interest arising therefrom and agree that you will not use BCLP's representation of
Chartwell in Unrelated Matters as a basis for disqualifying the Firm as counsel for Mr.
Lilley in the Proposed Matter.

Very truly yours,

Christopher J. Archibald

**Exhibit 4**



BRYAN CAVE LEIGHTON PAISNER LLP
3161 Michelson Drive  Suite 1500
Irvine  CA 92612 4414
T: +1 949 223 7000
F: +1 949 223 7100
www.bclplaw.com

March 15, 2019

Aileen M. Hunter
Direct: 949/223-7138
Fax: 949/437-8738
aileen.hunter@bclplaw.com

Adam Kidan
1073 Stillwood Circle
Lititz, PA 17543

4233 Via Marina I505
Marina Del Rey, CA 90292

**VIA FEDEX**

Re:    Chartwell Staffing Services - Demand to Cease and Desist

Dear Mr. Kidan:

We represent Chartwell Staffing Services, Inc. ("Chartwell") in connection with the circumstances surrounding your recent departure from Chartwell.  Please direct all future correspondence concerning this matter to our attention.

We have recently learned you solicited employees of Chartwell to work for you at your new company, while still employed at Chartwell, including but not limited to Tony Alanis, Jamie Diaz, Rosa Benavides, Patricia Hanks, Marlene Cornejo, and Denise Gonzalez (collectively, the "Former Employees").  Further, we have reason to believe you directed the Former Employees to solicit employees and customers of Chartwell, and to misappropriate trade secret information belonging to Chartwell, including client lists, client and employee contact information, pay rate and mark up rate information, and related databases ("Trade Secret Information").

Your conduct constitutes misappropriation of Trade Secret Information, unlawful interference with contractual relations, breach of your fiduciary duty of loyalty and confidentiality, and unfair business practices pursuant to Code of Civil Procedure section 17200, *et seq.*

We demand you immediately take all of the following actions:

- Cease and desist all use of Trade Secret Information for any and all purposes.

- Return all copies of any Trade Secret Information in your possession.

- Cease and desist soliciting Chartwell's clients through your unlawful use of Trade Secret Information.

- Cease and desist soliciting Chartwell's current employees through your unlawful use of Trade Secret Information.

- Cease and desist conspiring with the Former Employees to solicit any current employees of Chartwell.

12557952.1

Adam Kidan
March 15, 2019
Page 2

- Direct the Former Employees to cease and desist from communicating with any clients or current employees of Chartwell to unlawfully solicit their business or employment with your new company.

Please confirm in writing **no later than 5:00 pm PT on March 19, 2019**, that you have taken all of the above actions.

Chartwell will not hesitate to employ any and all available legal remedies to protect its rights and interests. Nothing contained herein is intended to waive or compromise any rights, all of which are specifically reserved.

You also have a duty to preserve relevant evidence in anticipation of litigation. Consistent with that duty, you must preserve any documents, including electronic data, and maintain such documents in a readily accessible format.

We look forward to your prompt response.

Sincerely,

Aileen M. Hunter

AMH:am

12557952.1

1

## **CERTIFICATE OF SERVICE**

2      I, Damion Robinson, certify that I filed the foregoing document using the Court's

3  electronic filing (CM/ECF) system on May 29, 2019.  I am informed and believe that electronic

4  filing will result in service by email to all interested parties.

5

6                                                    Damion D. D. Robinson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28