David W. Affeld, Cal. Bar. No. 123922
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Tel. (310) 979-8700
Fax (310) 979-8701
dr@agzlaw.com

Attorneys for Defendant Managed Facilities Solutions, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

GARY MIDDLE RIDER, an individual, *et al.*, *etc.*

                    Plaintiffs,

vs.

MOVING SOLUTIONS, a California corporation, *et al.*

                    Defendants.

Case No.:  17-CV-04015 LHK

*Assigned for All Purposes to:*
The Hon. Lucy H. Koh

**DECLARATION OF HAYNES DALLAS IN SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**

[Filed concurrently:
(1) Notice of Motion and Motion;
(2) Declaration of Adam Kidan;
(3) Declaration of David Affeld;
(4) Proposed Order]

Date:        September 26, 2019
Time:        1:30 p.m.
Courtroom: 8

1    I, D. Haynes Dallas, Jr., declare

2    1.    I am the Chief Executive Officer of Managed Facilities Solutions, LLC ("MFS").

3  I am also a licensed attorney.  In my capacity as CEO, I also have access to the business records

4  of MFS.  I have personal knowledge of the facts below or knowledge based on my review of the

5  MFS' business records where noted.  I could testify to those facts if called upon to do so.

6    2.    Based on a review of MFS' business records, MFS originally retained

7  Christopher Archibald ("Archibald"), then of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

8  as counsel in this matter.  A true copy of an executed retainer agreement contained in MFS' is

9  attached hereto as **Exhibit 1**.

10    3.    Archibald then moved to Bryan Cave Leighton Paisner LLP ("Bryan Cave"), and

11  MFS retained him and Bryan Cave on or about November 1, 2018.  A true copy of the

12  engagement agreement with Bryan Cave is attached hereto as **Exhibit 2.**

13    4.    The parties in this action, including MFS and Chartwell Staffing Services, Inc.

14  ("Chartwell"), reached a preliminary settlement, subject to court approval in early March of this

15  year.  Archibald filed notice of the settlement on or about March 8, 2019.

16    5.    MFS never had any problem with the representation Bryan Cave provided.  We

17  never had any issues communicating with Bryan Cave.  Nothing about the relationship "broke

18  down" in any way until Bryan Cave abandoned us in March and April 2019.  Until I learned

19  that Bryan Cave wanted to withdraw from representing MFS, I had no issues with the

20  representation, and understood that Bryan Cave would continue representing MFS through the

21  conclusion of this case, including class settlement approval.

22    6.    On March 20, 2019, Archibald emailed me asking to have a call "ASAP."  I

23  called him back about half an hour later and was unable to reach him.  I emailed him, indicating

24  that he could call me back.  A true copy of my email exchange with Archibald is attached as

25  **Exhibit 3**.

26    7.    Archibald never called me back.

27    8.    Later that day, W. Holmes Lilley ("Lilley"), the CEO of Chartwell, called me and

28  told me that Bryan Cave was withdrawing from representing MFS in this case.  The next day,

- 2 -

DALLAS DECL.MOTION FOR LEAVE TO SEEK RECONSIDERATION

1  Lilley forwarded me an email exchange he had with Archibald in which Archibald asked Lilley

2  for recommendations of another firm to represent MFS. A true copy of this email exchange,

3  which I forwarded to Adam Kidan ("Kidan"), the sole owner and managing member of MFS, is

4  attached as **Exhibit 4**.

5      9.      Neither Kidan nor I wanted Bryan Cave to withdraw from representation. On

6  April 3, 2019, Archibald sent me an email, attaching a draft substitution of attorney, indicating

7  that Bryan Cave would file a motion to withdraw if we did not provide a substitution. A true

8  copy of this email and the draft substitution of attorney is attached as **Exhibit 5**.

9      10.     I did not agree to allow Bryan Cave to withdraw or to substitute counsel. The

10  case appears to be so close to settlement that it did not make sense for us to retain new counsel

11  who need to ramp up on the case to participate in settlement approval hearings. Having to do so

12  is a detriment to MFS, which will have to spend money unnecessarily on new counsel.

13      11.     On April 10, 2019, I received a FedEx containing a Motion to Withdraw as

14  Counsel from Bryan Cave as well as a Motion for Order Advancing Hearing Date on that

15  motion. The notice provided a hearing date for the Motion to Withdraw of June 27, 2019.

16      12.     Bryan Cave did not advise MFS that it was required to oppose the motion while

17  the Motion for Order Advancing Hearing Date was pending. As far as I knew, the hearing date

18  remained on June 27, 2019 as scheduled, unless I received notice of a signed Order indicating

19  otherwise.

20      13.     I understand that on April 25, 2019, Bryan Cave electronically filed a Notice of

21  Non-Opposition to its Motion to Withdraw. Bryan Cave did not serve this document to me, and

22  as a represented party, I do not receive electronic service of court filings.

23      14.     On May 1, 2019, Archibald emailed me a request to provide him with a detailed

24  spreadsheet with MFS employee information through May 23, 2019, for Archibald to provide

25  the claims administrator within ten (10) days of the preliminary approval hearing. The next

26  day, I emailed Archibald a reply confirming that I would obtain and provide this information to

27  him for the specific relevant time range. Based on this email exchange, I was under the

28  impression that Bryan Cave was continuing to represent MFS at the May 23, 2019 hearing and

DALLAS DECL.MOTION FOR LEAVE TO SEEK RECONSIDERATION

1  until this case was completely resolved.  A true copy of my email exchange with Archibald is

2  attached as **Exhibit 6**.

3      15.    On May 2, 2019, Archibald emailed me a copy of the Court's order granting

4  Bryan Cave's Motion to Withdraw as unopposed.  Until I received this order, I had no idea that

5  Bryan Cave's motion would be (or even could be) granted without a hearing and without any

6  advanced notice that the hearing date was being moved or vacated and the motion would be

7  granted without a response from MFS.

8      I declare under penalty of perjury under the laws of the United States that the foregoing is

9  true and correct.  Executed this 29th day of May, 2019 at San Jose, California.

10

11                              Haynes Dallas

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

DALLAS DECL.MOTION FOR LEAVE TO SEEK RECONSIDERATION

**Exhibit 1**

# Ogletree Deakins

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*Attorneys at Law*

Park Tower, Fifteenth Floor
695 Town Center Drive
Costa Mesa, CA 92626
Telephone:  714.800.7900
Facsimile:   714.754.1298
www.ogletree.com

Christopher J. Archibald
714.800.7930
christopher.archibald@ogletree.com

March 30, 2018

**VIA EMAIL AND FIRST CLASS MAIL**

W. Holmes Lilley, III
Executive Vice President & General
Counsel
Managed Facilities Solutions, LLC
12315 Imperial Hwy.
Norwalk, CA 90650
Email: holmes.lilley@ChartwellStaff.com

      **RE:**    *Managed Facilities Solutions, LLC*

Dear Holmes:

      We are pleased to have the opportunity to be of service to Managed Facilities Solutions, LLC. We look forward to working with you and will do our best to provide the highest quality legal services in a responsive, efficient manner.

      The purpose of this letter is to confirm the terms of our representation.  If you are in agreement, please sign the letter in the space indicated below and return it to me at your earliest convenience.  Of course, if you have any questions about these terms or any other aspect of our engagement, please do not hesitate to contact me.

      **Client**.  We are being engaged to represent Managed Facilities Solutions, LLC ("Client") only.  Unless we agree otherwise in writing, our representation does not extend to any parent, subsidiary, or corporate affiliate of Client, or any other entity or individual.

      **Scope of Services.** You asked us to represent you in connection with the class action lawsuit filed by Gary Middle Rider.

      **Limitation on Obligation**.  You acknowledge that we are not your general counsel and have not undertaken to represent Client's interests in any matter other than that described above. Our representation does not entail a continuing obligation to advise you concerning subsequent legal developments that might have a bearing on your affairs generally or, after the completion of the matter described above, developments that might have a bearing on that matter.

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville
Houston ▪ Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis
Morristown ▪ Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland ▪ Raleigh ▪ Richmond
St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

W. Holmes Lilley, III
March 30, 2018
Page 2

**Staffing**.  We intend to provide quality legal services in an efficient, economical manner. I will be the attorney primarily responsible for the representation, with assistance from Alis Moon.  From time to time, we may assign tasks to other attorneys, paralegals, or support personnel as is appropriate in our professional judgment.

**Responsibilities.**  In reliance upon information and guidance provided by you, we will provide legal counsel and assistance to you in accordance with this letter, keep you reasonably informed of progress and developments, and respond to your inquiries.

You agree to cooperate with us throughout our representation; disclose all facts that may be relevant to the matter or that we request; assist in the identification, preservation, and collection of relevant information; and keep us apprised of related developments. You also will make necessary representatives reasonably available to attend meetings, discovery proceedings, hearings, and other proceedings. Your responsibilities will also include approving negotiation, discovery, and litigation strategy and determining acceptable terms of any settlement.

**Advice About Possible Outcomes**.  Though we may express opinions about the matter, possible courses of action, and results that might be anticipated, any such statement is intended as an expression of opinion only and should not be construed as a promise or guarantee.  You acknowledge that we have not made and will not make any promise or guarantee about the outcome of this matter and will not construe any statement by us as such.

**Preservation of Data.**  To the extent that this matter involves litigation or reasonably anticipated litigation, please be advised that courts can impose harsh penalties for the failure to safeguard data that may be relevant.  You should immediately identify any such data – whether kept in paper, electronic, or other format – and safeguard it for the duration of this matter.  This may require you to suspend any regular document or data destruction that you would otherwise follow.  You should make certain that all relevant directors, managers, and employees, including your information technology staff, are aware of and abide by this requirement.

**Insurance Coverage.**  You should review any potentially applicable general or specialized insurance policies to determine whether any coverage is available.  If we do not hear further from you in this regard, we will assume that you have reviewed your policies and satisfied yourself that there is no coverage for any of the claims or costs of defense.  Please note that the scope of our engagement does not extend to providing coverage opinions or advising you with regard to any rights or responsibilities that you might have under any insurance policy.

**Fees and Expenses.**  Our fees will be based on the amount of time spent by attorneys, paralegals, and legal assistants on your matter. Each individual has an hourly billing rate based generally on his or her experience, the market in which he or she practices, and any special expertise. The rate multiplied by the time spent on your behalf, measured in tenths of an hour, will be the basis for determining the fee.

Time billed by attorneys will be billed at the blended rate of **$396** an hour. Time billed by paralegals will be billed at the blended rate of **$195** an hour.  The hourly rate applies to all time spent on Client's behalf, including but not limited to travel, waiting time, time devoted to

W. Holmes Lilley, III
March 30, 2018
Page 3

responding to auditor's letters, conferences. These hourly rates will be in effect through January 31, 2019. The hourly rates and fees applicable starting after January 31, 2019 shall be negotiated and agreed upon by the parties on or before December 31, 2018.

In addition, in order to continue to represent the Company, Ogletree requires that Chatwell Staffing Services, Inc. pay any and all outstanding invoice(s) in full (unless otherwise agreed in writing) by May 1, 2018.

In addition to our fees, we will be entitled to payment or reimbursement for charges incurred in performing services, such as court costs, filing fees, photocopying, messenger and delivery, computerized research, videotape recording, travel (including mileage, parking, airfare, lodging, meals, and ground transportation). Fees and expenses of others (such as expert witnesses and court reporters) and other large disbursements will not be paid by our firm and will be the responsibility of Client.

Clients sometimes ask us to estimate fees and other charges that they are likely to incur. Any estimate that we may provide will be based on our professional judgment and circumstances as they appear at the time. Any such estimate is subject to the understanding that, unless we agree otherwise in writing, it does not and will not represent a guarantee, maximum, or fixed-fee quotation.

We will normally provide monthly statements describing our services, fees, and costs. On occasion, expenses may take more than a month to appear on our invoices. Our invoices are due upon receipt.

**<u>Use of Work Product</u>**. Consistent with our dedication to providing efficient client service, we will draw upon our previous work product where appropriate to promote efficiency in providing representation during this engagement. Similarly, unless otherwise agreed in writing as to specific items, we reserve the right to use work product developed during this representation for our own purposes and to promote efficient client service to other clients.

**<u>In House Counsel Privilege</u>**. You understand that, as lawyers, we are required to follow certain rules of professional conduct. From time to time, issues may arise that raise questions concerning our duties under these rules. Our firm has designated in-house counsel who advise and represent the Firm on these issues and other legal matters. When such matters arise, our lawyers are instructed by Firm policy to seek the advice of these in-house counsel and, sometimes, outside counsel. Accordingly, if, in our discretion, we determine that it is appropriate to consult with our Firm's in-house counsel (or outside counsel), you consent to our doing so. You agree that this type of consultation will not create a conflict of interest between Client and the Firm and that the Firm's continued representation of Client will not waive any attorney-client privilege that the Firm has with its in-house or outside counsel. This means that the Firm will not be required to disclose to Client any communications with in-house or outside counsel on such issues.

W. Holmes Lilley, III
March 30, 2018
Page 4

**Award or Agreement on Fees and Expenses**. The fees and expenses billed to you are your responsibility. The parties to a dispute may agree, or a court may order, that another party is to pay some or all of our fees or expenses or costs. This will not affect your obligation to pay our fees and expenses, and we will not be obligated to enforce any such agreement or order. While we may state a claim for recovery of attorney's fees and/or costs from the adverse party, recovery on these claims is unpredictable and you should not rely on any such recovery in making strategy, settlement, or other decisions pertaining to the case. Any amounts actually received by us from another party or source will, of course, be credited against the fees and expenses for which you are otherwise obligated to us.

**Waiver of Potential Future Conflicts**. Ogletree Deakins is an international law firm that represents individuals, companies, and other entities through offices in locations throughout the U.S. and in other countries. The potential exists that we may in the future be asked to represent a party in a matter adverse to Client. Depending on the circumstances, such a situation could lead a court or tribunal to conclude that a conflict of interest exists. You agree to waive any such future conflict in any matter not substantially related to this current engagement and agree that Client will not seek to use the fact of this representation as a basis for seeking our disqualification in such future matters.

**Term of Engagement.** Either party may terminate the engagement at any time for any reason, by written notice, subject on our part to the rules of professional conduct and any applicable requirement to seek permission of the court. Our withdrawal will not constitute a waiver of any amounts outstanding.

**Conclusion of Representation; Retention and Disposition of Documents**. At such time as we complete the services Client requested in this matter, our representation will be terminated and Client will be considered a former client of our firm. We reserve the right to dispose of file materials in accordance with our document retention procedures, which are available upon request, unless we are otherwise required to retain the materials by applicable law. At our discretion, we also reserve the right to keep a copy of any or all file materials after the termination of a representation.

**Dispute Resolution**. In the unlikely event that a dispute arises relating to this engagement or our firm's services or fees, the parties agree to attempt to resolve the dispute through informal discussions. If those discussions do not resolve the matter, the parties agree to submit the dispute to final, binding arbitration before a single arbitrator. Except in jurisdictions where applicable rules require arbitration to be administered through a local bar association or program, the arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. The arbitrator shall decide any issue of the breach, termination, enforcement, interpretation, or validity of this agreement, including the scope or applicability of the agreement to arbitrate. This provision shall not preclude the parties from seeking provisional remedies in aid of arbitration from a court of competent jurisdiction. The parties understand that they are waiving certain important rights and protections that otherwise may have been available, such as the right to a jury trial and certain rights of appeal.

W. Holmes Lilley, III
March 30, 2018
Page 5

The parties agree that the dispute resolution proceedings under this provision shall remain confidential, except as necessary to seek provisional remedies in court in aid of arbitration or to enforce any arbitration award.

The arbitrator's fees shall be shared equally by the parties.  Except where applicable law forbids it, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, if any, from the other party.

**Acknowledgment of Terms of Engagement.**  If this letter correctly reflects your understanding of the terms and conditions of our representation, please confirm your acceptance by signing the enclosed copy in the space provided below and return it to me. Upon your acceptance, these terms and conditions will apply retroactively to the date we first performed services on your behalf.  If this letter is not signed and returned, you will be obligated to pay us the reasonable value of any services we may have performed on your behalf.

We are pleased to have this opportunity to be of service and to work with you.  Should you have any questions about our services, staffing, billings, or other aspects of our representation, please do not hesitate to contact me.

Sincerely,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

Christopher J. Archibald

I/we read and understand the terms and conditions set forth in this letter (including the attached General Provisions) and agree to them.

Signed: _D. Haynes Dallas, Jr._    Date:  3-30-2018

By:    Haynes Dallas
       Name

       Chief Operating Officer
       Title

For:   Managed Facilities Solutions, LLC
       Entity

W. Holmes Lilley, III
March 30, 2018
Page 6

### General Provisions

Except as modified by the accompanying engagement letter or other written agreement between the parties, the following provisions will apply to the relationship between Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and our clients:

1.      The time for which a client will be charged will include, but will not be limited to, telephone and office conferences with a client and counsel, witnesses, consultants, court personnel, and others; conferences among our personnel; factual investigation; legal research; responding to clients' requests to provide information to auditors in connection with reviews or audits of financial statements; drafting of letters, pleadings, briefs, and other documents; travel time; waiting time in court or elsewhere; and time in depositions and other discovery proceedings.

2.      In addition to our fees, we will be entitled to payment or reimbursement for disbursements and other charges incurred in performing services such as photocopying, messenger and delivery, air freight, negotiated discounted amount for computerized research, videotape recording, travel (including mileage, parking, airfare, lodging, meals, and ground transportation), telecopying, word processing, court costs, and filing fees.  To the extent we directly provide any of these services, we reserve the right to adjust the amount we charge, at any time or from time to time, as we deem appropriate, in light of our direct costs, our estimated overhead allocable to the services, and outside competitive rates. Unless special arrangements are made, fees and expenses of others (such as experts, investigators, witnesses, consultants, and court reporters) and other large disbursements will not be paid by our firm and will be the responsibility of, the client.  These expenses may be billed directly to the client or we may forward such invoices (whether made to the client or the firm) to the client for direct payment.

3.      Although for a client's convenience, we may occasionally furnish budgets or other estimates of fees or charges that we anticipate will be incurred on a client's behalf, these estimates are subject to unforeseen circumstances and are by their nature inexact.  We are not bound by any estimates except as otherwise expressly set forth in the engagement letter or otherwise agreed to by us in writing.

4.      Fees, disbursements, and other charges will be billed monthly and are payable upon presentation. We expect prompt payment.

5.      A client shall have the right at any time to terminate our services and representation upon written notice to the firm.  Such termination shall not, however, relieve the client of the obligation to pay for all services rendered and disbursements and other charges made or incurred on behalf of the client prior to the date of termination.  Unless otherwise previously terminated, our engagement to represent you as to any specific matter ends at the conclusion of the matter or issuance of our final statement, whichever occurs first.

6.      We reserve the right to withdraw from our representation with the client's consent or for good cause.  Good cause may include the client's failure to honor the terms of the engagement letter, the client's failure to pay amounts billed in a timely manner, the client's

W. Holmes Lilley, III
March 30, 2018
Page 7

failure to cooperate or follow our advice on a material matter, or any fact or circumstance that would, in our view, impair an effective attorney-client relationship or would render our continuing representation unlawful or unethical. If we elect to do so, the client will take all steps necessary to free us of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete our withdrawal, and we will be entitled to be paid for all services rendered and disbursements and other charges made or incurred on behalf of the client prior to the date of withdrawal.

7.     Ogletree Deakins uses record retention policies or practices, which may be revised from time to time, that contemplate retention of client-representation work product and other records for an appropriate period of time, after which records may be destroyed. These policies may apply to both hard copy and electronic records, such that no records in any form may be available after disposal. Unless there is applicable law or a written agreement to the contrary as to a specific client and matter, we reserve the right in our discretion to destroy any records we deem appropriate at the time we deem appropriate after the conclusion of representation on a matter.

33500518.1

# Exhibit 2



BRYAN CAVE LEIGHTON PAISNER LLP
3161 Michelson Drive  Suite 1500
Irvine  CA 92612 4414
T: +1 949 223 7000
F: +1 949 223 7100
www.bclplaw.com

November 1, 2018

**<u>CONFIDENTIAL</u>**

VIA EMAIL (holmes.lilley@chartwellstaff.com)     VIA EMAIL (hdallas@managedfacilitiessolutions.com)

Chartwell Staffing Services, Inc.                    Managed Facilities Solutions, LLC
Attn:  W. Holmes Lilley, III, General Counsel        Attn:  Haynes Dallas, Chief Operating Officer
245 Centerville Road, Suite 10                       128 Component Drive
Lancaster, PA 17603                                  San Jose, CA 95131

Re:     <u>Engagement of Bryan Cave Leighton Paisner LLP</u>

We are pleased that you have chosen to engage Bryan Cave Leighton Paisner LLP ("BCLP") to provide legal services to Chartwell Staffing Services, Inc. and Managed Facilities Solutions, LLC (collectively, the "Clients") in connection with the Rider et al. v. Moving Solutions, Inc. et al. lawsuit and Employment Advice and such future matters that we mutually agree to undertake (the "Joint Representation"). Consistent with our normal practice, this letter and the attached Statement of Engagement Terms and Billing Practices (the "Statement") set forth the terms of our engagement. The Statement is important and is provided to our clients so that they understand in advance how various issues will be handled.

To avoid any misunderstanding in connection with our current (and any future) engagement for you, and in the evaluation of conflicts, we confirm that we have not been asked to act as counsel for any subsidiary, parent, affiliated entity or individual as a result of our acting as counsel to you. Any such relationship, if undertaken by us with any such other entity or individual, must be separately entered into.

Our fees for legal services are based on the time we spend on the engagement. In the event the nature of the services requested justifies a departure from that approach, we welcome the opportunity to discuss alternative arrangements. We separately charge for expenses and other charges incurred in connection with rendering our services, all as described in the Statement.

A rate is determined for each of our lawyers, contract attorneys, and legal assistants on the basis of that person's seniority, experience or area of practice, and the geographic location of the office in which that person works. The hourly billing rates may be adjusted periodically most typically effective with the start of each calendar year. The rate for our professionals likely to be involved in rendering services in connection with this matter are as follows:  a blended rate of $420 per hour until December 31, 2019.

Our billing statements are normally rendered on a monthly basis and are due and payable upon receipt. We endeavor to include expenses and other charges in the statement for the month in which they are incurred. On occasion, however, accounting for certain expenses and charges (i.e., late-posted items or international charges), may be delayed, in which case late-posted items will be billed on the next regular statement. The Firm reserves the right to charge a late payment penalty in the form of interest on any statements not paid within 30 days of the statement date at the legal rate of interest.

Chartwell Staffing Services, Inc. and Managed Facilities Solutions, LLC have agreed to pay all of BCLP's attorneys' fees and costs. Therefore, BCLP will send invoices to both Chartwell Staffing Services, Inc. and Managed Facilities Solutions, LLC and both Clients are joint and severally liable for the costs and expenses associated with this Joint Representation. Should one of you terminate our services, the other remains liable for all fees and costs.

BRYAN
CAVE
LEIGHTON
PAISNER

Chartwell Staffing Services, Inc.
Managed Facilities Solutions, LLC
November 1, 2018
Page 2

In addition to the standard waiver of conflicts contained in the accompanying statement, the Firm requires specific waivers as a result of its joint representation of multiple parties. Although each client has the right to retain separate counsel, you both believe that a joint representation upon the terms set forth in this letter is the most appropriate option. In order to obtain joint representation by the Firm, Chartwell Staffing Services, Inc. and Managed Facilities Solutions, LLC therefore acknowledge that each client understands and accepts the following considerations and risks associated with a joint representation:

a) Whenever a lawyer represents more than one party, there is a potential that the interests of those parties may diverge over time for various reasons. We believe that your interests are currently aligned and we do not believe that there currently exists any actual conflict of interest between Chartwell Staffing Services, Inc. and Managed Facilities Solutions, LLC, but it is possible a conflict may arise in the future, requiring our withdrawal as further discussed below. Chartwell Staffing Services, Inc. and Managed Facilities Solutions, LLC agree to notify us as soon as possible if for any reason either of you believes that such a conflict of interest has arisen.

b) Communications between a client and its counsel are privileged and confidential. In a joint representation, however, the Firm will be under an obligation to keep all of its clients fully informed of the facts material to the Joint Representation. Accordingly, both clients understand and agree that we will be free to share with Chartwell Staffing Services, Inc. and Managed Facilities Solutions, LLC any information that either client provides to us, even information that the client may consider to be confidential. Moreover, both clients understand and agree that the clients shall not waive any protection afforded to either client by the attorney-client privilege, the work product doctrine, or any similar privilege or protection regarding any information that is provided by or to either client or us during the course of the joint representation.

c) Chartwell Staffing Services, Inc. and Managed Facilities Solutions, LLC agree that if a conflict arises between them, the Firm would be free to withdraw from representing Managed Facilities Solutions, LLC and continue to represent Chartwell Staffing Services, Inc., and we would be free to make use of any information provided to us by Managed Facilities Solutions, LLC during the Joint Representation, even if such use is adverse to the interests of Managed Facilities Solutions, LLC  from whose representation we have withdrawn. Under such circumstances, Managed Facilities Solutions, LLC will need to identify, select, retain and pay new counsel, and such counsel may need time and effort to become current with the relevant issues. Additionally, Managed Facilities Solutions, LLC agrees to waive any current or future conflict that will be created by our continuing representation of Chartwell Staffing Services, Inc.

d) Additionally, Managed Facilities Solutions, LLC understands that the Firm represents Chartwell Staffing Services, Inc. in additional matters unrelated to the Joint Representation. Should the Firm withdraw from representing Managed Facilities Solutions, LLC in the Joint Representation Managed Facilities Solutions, LLC agrees that the Firm may continue to represent Chartwell Staffing Services, Inc. in unrelated matters. Under such circumstances, both clients agree to waive any future conflict of interest that would be created by the Firm's continued representation of Chartwell Staffing Services, Inc.

BRYAN
CAVE
LEIGHTON
PAISNER

Chartwell Staffing Services, Inc.
Managed Facilities Solutions, LLC
November 1, 2018
Page 3

Given these potential risks and adverse consequences, we need to confirm our previous understandings with Chartwell Staffing Services, Inc. and Managed Facilities Solutions, LLC that they agree to this Joint Representation in accordance with the terms discussed above. Please feel free to consult with other counsel before signing this letter and agreeing to this joint representation, although there is no obligation that you do so.

It is possible that some of our present or future clients will have disputes with Clients during the time that we are representing you. Therefore, as a condition to our undertaking this engagement, you have agreed that our Firm may continue to represent or may undertake in the future to represent existing or new clients in any matter on a position that is adverse to you or in which your interests may be adversely affected unless we represent you with respect to the same matter. We agree, however, that your prospective consent to conflicting representation contained in the preceding sentence shall not apply in any instance where as the result of our representation of you we have obtained sensitive, proprietary or other confidential information of a non-public nature that, if known to any such other client of ours, could be used in any such other matter by such client to the disadvantage of Clients.

Our representation is conditioned upon receipt of the signed copy of this letter from you confirming your understanding and approval of these terms of our engagement.

Our attorney-client relationship is one of mutual trust and confidence. We do our best to see to it that our clients are satisfied not only with our services but also with the fees charged for those services. I will be the Responsible Lawyer for this matter. Whenever you have any questions or comments regarding our services or fees, you should contact me or any other attorney in the Firm with whom you are working. We also encourage you to inquire about any matters relating to our fee arrangements or monthly statements that are in any way unclear.

We appreciate the confidence you have placed in us and look forward to working with you. If this letter and the Statement correctly set forth our mutual understanding, please sign and date the enclosed copy of this letter and return it to us with the attached Statement.

Very truly yours,

Christopher J. Archibald

BRYAN
CAVE
LEIGHTON
PAISNER

Chartwell Staffing Services, Inc.
Managed Facilities Solutions, LLC
November 1, 2018
Page 4

**THIS CONTRACT CONTAINS A
BINDING ARBITRATION PROVISION
WHICH MAY BE ENFORCED BY
THE PARTIES.**

**THESE TERMS INCLUDING THE ATTACHED
STATEMENT OF ENGAGEMENT TERMS AND
BILLING PRACTICES ARE APPROVED.**

| | |
|---|---|
| DATED: November 2, 2018 | DATED: November __, 2018 |
| Chartwell Staffing Services, Inc. | Managed Facilities Solutions, LLC |
| *W. Holmes Lilley, III* | *D. Haynes Dallas, Jr.* |
| By: W. Holmes Lilley, III, General Counsel | By: Haynes Dallas, Chief Operating Officer |

12274009.1

California Statement of Engagement
Terms and Billing Practices

BRYAN
CAVE
LEIGHTON BLP
PAISNER

### 1   Our Team

1.1   You may contact your client relationship lawyer at any time to discuss any aspect of our services.

1.2   Details of the team for each matter, including the Responsible Lawyer with overall responsibility, will be set out in our engagement letter. We may involve others as well or instead (if necessary without asking you first) including paralegals, contract attorneys, trainees, law clerks, non-practicing barristers and lawyers qualified or licensed in various jurisdictions.

### 2   BCLP Group

2.1   Bryan Cave Leighton Paisner (the "BCLP Group") is a global law firm comprised of a network of affiliated firms and entities ("BCLP Firms"). The locations of our offices and further jurisdiction-specific information, including a description of each of the BCLP Firms can be found at www.bclplaw.com.

### 3   Fees

3.1   Our general policy is to calculate fees for legal services on the basis of a rate for each lawyer, contract attorney, and legal assistant engaged in providing such services, multiplied by the number of hours (or fractions thereof) devoted to the rendering of such services by each such lawyer, contract attorney, or legal assistant.

3.2   In serving the client we attempt to utilize those lawyers, contract attorneys, and legal assistants having the lowest hourly billing rates commensurate with the legal knowledge and level of experience required in order to achieve the client's objective. Depending on the complexity of your matter, the Firm may use contract attorneys during our representation of you. Unless you are notified otherwise, contract attorneys will be supervised and billed by the Firm the same as other attorneys with similar experience. The selection of those lawyers, contract attorneys, and legal assistants who will render services will be made by the lawyer having overall supervisory responsibility for each engagement, taking into consideration the nature of the engagement, the office in which most of those services are likely to be rendered, the degree of legal experience and knowledge required in order to achieve the client's objective, the availability of lawyers, contract attorneys, and legal assistants to work on the engagement, and their hourly billing rates. We may involve others as well or instead (if necessary without asking you first) including trainees, paralegals, non-practicing barristers and lawyers qualified in various jurisdictions.

3.3   When we provide services which are of special value or which require unusual sophistication we will discuss with you charging for those services an amount that exceeds the standard rate of the professionals involved multiplied times the number of hours devoted to the rendering of services.

### 4   Conflicts of Interests

4.1   We have procedures in place to prevent our acting for clients when there is a legal conflict of interest. The conflicts of interest rules governing any instruction of the BCLP Group by you will be the applicable conflicts rules in the jurisdiction(s) where the work is being undertaken and which the lawyers of the BCLP Group working on such matter are subject to. If you are aware, or become aware, of a possible conflict, please immediately notify the responsible lawyer for your matter or your client relationship partner.

4.2   Occasionally a conflict of interest involving another BCLP client may appear after we have started acting for you on a matter. If this happens; subject to our duty of confidentiality, we will discuss the matter with you to try to resolve the conflict, but we may have to stop acting for you on that matter; and you agree that we will be free, taking account of applicable rules and law, best practices and your and any other concerned client's interests and wishes, to decide whether to act for both clients, for one, or for neither.

4.3   In certain cases, more than one of our clients may have an interest in the same subject matter of a transaction, or be competing for the same asset. Examples might be buying an entity through auction sale or tendering for a contract. If this happens, you agree that we are free to act for you and one or more other clients with the same interest.

4.4   You agree that you will not seek to prevent us from acting for other clients, including clients whom you may regard as competitors, on matters in which you may have an interest but have not hired us to represent you. This includes but is not limited to our acting in relation to regulatory, transactional or corporate matters where you and/or your affiliates are involved.

4.5   We reserve the right not to assist you in taking action which is adverse to another client of a BCLP Firm or Associated Firm and we will not be obliged to do so.

### 5   Deposits

5.1   Any deposits that we receive from you will be placed in our client trust account on your behalf and are refundable to the extent not subject to disbursement. In light of the amount of the deposit we have requested in this case, we expect that it will be placed by us in our unsegregated trust account. Interest earned on that account, pursuant to California Business and Profession Code, is paid to the State Bar of California to be used for providing civil legal assistance to indigent persons.

5.2   Deposits are received with the understanding that we are expressly authorized to withdraw from the trust account the sums necessary to pay for services as they are performed and expenses as they are incurred. You will be notified in writing of the amounts applied or withdrawn, and you will also be provided with a

California Statement of Engagement
Terms and Billing Practices

BRYAN
CAVE
LEIGHTON
PAISNER BCLP

statement explaining the services rendered and costs incurred. If the charges for services and costs exceed the balance on deposit, the statement will show the excess due and payable. We may also request additional deposits to cover further services and costs, if circumstances warrant. When our services are complete or terminated, you will receive a final invoice. Any remaining balance after payment of our final invoice will be returned to the person or entity that paid the deposit. Thus, if a third-party pays the deposit on your behalf any monies remaining will be returned to the third-party unless you or the third-party instruct us otherwise prior to the distribution of such monies.

## 6  Litigation and Dispute Resolution Matters

6.1  The outcome, cost and the course of most litigation matters cannot be predicted. Should you ever have questions or concerns, we encourage you to contact us. Your timely and full cooperation and assistance will play a critical role in our efforts. You always retain the right to determine whether a compromise should be pursued and accepted, or, alternatively, whether the matter should be pursued to an adjudication on the merits at trial and thereafter to an appeal. While we cannot assure you that there will not be an adverse outcome, our efforts always are directed toward obtaining the most satisfactory resolution of this matter for you that is possible.

## 7  Criminal Finances

7.1  We have a legal obligation not to engage in any activity, practice or conduct that could facilitate the illegal evasion of paying UK, US or foreign tax.

## 8  Anti-Bribery and Corruption

8.1  We are committed to complying with all applicable anti-bribery and corruption laws and regulations to which we are subject, including the Bribery Act 2010 and the Foreign Corrupt Practices Act. To counter non-compliance, our firm and its staff operate under a zero-tolerance approach to bribery and corruption in line with the firm's policy.

## 9  Data Protection and Marketing

9.1  We are committed to complying with our privacy obligations. Our Privacy Notice at www.bclplaw.com explains how we collect and use your personal information (including personal information that you provide to us about other persons) (together, "Personal Information").

9.2  The BCLP Firm you engage is responsible (i.e. it is the 'Data Controller') for the Personal Information it collects from you in connection with our engagement and the manner in which it will be processed to enable us to provide you with our services and comply with our obligations. For further details, please see our engagement letter or contact the lawyer responsible for your matter.

9.3  The amount of clients' Personal Information we collect will typically be relatively limited (e.g. work details and client due diligence information). In certain circumstances, we will need to know more information about you and related persons (for example, where we are acting for an individual client in respect of personal matters). If you do not provide us with this information, or if it is not satisfactory, we may not be able to act, or to continue to act, for you. Your Personal Information will be used primarily to provide you with legal services, but also to comply with our legal and regulatory obligations and those relevant purposes set out in our Privacy Notice (including: (a) for business continuity purposes; (b) for marketing and business development purposes where appropriate; and (c) to manage complaints and claims ).

9.4  Please note in particular that: (a) we are under legal and professional obligations to undertake appropriate client due diligence (which will, in certain circumstances, include collecting information about criminal and regulatory convictions and proceedings and verifying such information through electronic data sources); (b) we will monitor and record email, telephone and similar communications in certain circumstances to ensure compliance with applicable rules and law and our internal policies, and for training, quality and business continuity purposes; (c) your Personal Information will be shared on a need-to-know basis within the BCLP Group and, under certain circumstances, to select third parties who provide services to us and to regulators (for further details, see our Privacy Notice). Some of these recipients of your information will be located in other countries (whose privacy laws may not be as comprehensive to those where you are based); and (e) unless agreed otherwise in writing, we may disclose that you are a client of ours. Once details of a matter are in the public domain (otherwise than through an unauthorized disclosure by any party), we may disclose that we acted for you and the general nature of our work. We will disclose this information mainly in pitches and marketing materials.

9.5  Subject to limited exceptions, individuals may have the right under applicable privacy laws to access and correct their Personal Information. If we have to provide information in response to a request from someone whose information we hold in connection with your current or past matters (typically referred to as a 'Subject Access Request'), providing that information will form part of our services to you for which we will be entitled to charge a reasonable fee. We will not charge the requestor.

9.6  You also agree that you will treat personal information and confidential information that you receive from us as confidential and in accordance with applicable data privacy laws and will use it only for the purpose for which you receive it, or as otherwise required by law.

2

California Statement of Engagement
Terms and Billing Practices

BRYAN
CAVE
LEIGHTON BLP
PAISNER

9.7 We understand the obligations on us to take steps to help provide a secure environment and we will seek to treat Personal Information securely and in accordance with our privacy and information security policies.

9.8 For details of your privacy rights (including the right to object, where there are legitimate grounds to do so, to our processing of your Personal Data), please see our Privacy Notice. If you have any questions regarding our processing of your Personal Information or if you wish to exercise your privacy rights, please contact your matter/relationship partner, or send a written and dated request to privacy@bclplaw.com.

## 10 Anti-Money Laundering

10.1 In certain jurisdictions where the BCLP Firm operates, we are obliged to obtain and hold satisfactory evidence of the identity of our clients and sometimes of related people to comply with anti-money laundering ("AML") and anti-terrorist financing legislation.

10.2 We take a risk-based and proportionate approach to identifying clients for AML purposes. Sometimes we may need to: see original documents; check the information you provide; use corporate, personal and/or confidential information to check identity through electronic data sources; and ask you for up-to-date evidence of identity.

10.3 If we ask for documents or information, you must provide them promptly. If you do not, or if they are not satisfactory, we may not be able to act, or to continue to act, for you.

10.4 We have a central team, who handle client identification and AML legislation compliance. They will have access to your corporate, personal and/or confidential information. Other BCLP Firms and Associated Firms may also have access to the information on a need to know basis.

10.5 We do not accept payments in cash whether for our charges or otherwise.

10.6 If we are unable to satisfy ourselves as to source of funds, monies paid to us will usually be frozen and not applied to the transaction, unless and until the appropriate authorities consent.

10.7 We will not make payments to anyone other than you unless this is a necessary part of the transaction, and then only if you instruct us to do so.

## 11 Termination of Engagement

11.1 You may terminate our engagement with or without cause at any time on written notice to us. Termination of our services will not affect your responsibility to pay for legal services rendered and all expenses and other charges incurred up to the date when we receive notice of termination, and for any further work required of us in order to facilitate an orderly turnover of matters in process at the time of termination.

11.2 We may terminate our engagement for any of the reasons permitted under and in accordance with the requirements of the California Rules of Professional Conduct, including, without limitation, your failure to promptly pay our bills, misrepresentation of (or failure to disclose) any material facts, action taken contrary to our advice, or any other conduct or situation that in our judgment impairs an effective attorney-client relationship between us or presents conflicts with our professional responsibilities. Other grounds for terminating our representation are set forth in Rule 3-700 of the California Rules of Professional Conduct, a copy of which we will provide you on request. We may request a stipulation executed by you allowing us to withdraw as your attorney in any judicial, arbitration or similar proceedings, subject to our compliance with the California Rules of Professional Conduct, in which event you agree in advance to our withdrawal.

11.3 Our attorney-client relationship will also terminate when a matter for which our Firm was hired has been completed, whether or not our bill to you for services has been rendered or paid. Upon termination of our relationship, the Firm has no duty to accept new engagements or to continue representation in any matters unless mutually agreed in writing.

11.4 Once a matter ends, we will not remind you about future time deadlines or obligations relevant to that matter unless we expressly agree to do so in writing.

## 12 Future Representation

12.1 In the event our engagement necessitates that we prepare an agreement which provides for ongoing rights and obligations on your part, a dispute concerning the interpretation or enforceability of that agreement may subsequently arise after our engagement has been terminated. In the absence of our express written agreement, you may not assume that the Firm will continue to be free to represent you in a future dispute concerning such agreement.

## 13 Retention of Files

13.1 Generally, we keep each client's legal files for ten years after we close the file. After ten years, we destroy those files unless the client tells us otherwise. If you want us to keep your files for a longer period of time, please tell us.

## 14 Arbitration of Dispute

14.1 By signing and returning the engagement letter, you agree that should any dispute arise out of or relate to this agreement, our relationship, any billing statements forwarded to you, or our services, including but not limited to any alleged claims for legal malpractice, breach of fiduciary duty, breach of contract or other claim against the Firm for any alleged inadequacy of such services, all such disputes will be settled by arbitration.

California Statement of Engagement
Terms and Billing Practices

BRYAN
CAVE
LEIGHTON
PAISNER

14.2 The arbitration shall be heard in the County of Orange by a panel of three arbitrators, all of whom must be practicing attorneys in that county, with one arbitrator to be selected by each party and the third to be chosen by the two arbitrators selected by the parties. The arbitrators may establish such rules for the conduct of the arbitration as they may choose and any proceedings conducted shall be private and confidential and shall not be disclosed to the public by either the arbitrators or the parties to the arbitration. The award of the arbitrators must be by a majority vote and shall be final and binding, not subject to challenge by either party in any court of law. Each party shall bear its own costs of the arbitration and shall pay one-half of the costs of the proceeding.

14.3 You are urged to discuss the advisability of arbitration with the Firm or your independent counsel or any of your other advisors and to ask any questions which you have. Your execution and delivery of the engagement letter will confirm that you have either obtained independent legal advice with respect to the binding arbitration clause, or you have decided to enter into this engagement without seeking such advice.

## 15 Charges

15.1 Our statements to our clients are normally rendered on a monthly basis, and ordinarily include certain charges other than fees for legal services. These charges may include third-party expenses (such as filing fees, court reporters and travel) and internal expenses. Under some circumstances, clients may be asked to contract with and pay directly larger third-party invoices. Other third-party expenses will be added to our bills with no markup. The Firm has elected to charge for certain support activities on the basis of each client's individual use instead of covering them in its hourly rates for fee earners. The internal charges will be billed in the following way:

15.2 **Mail**:  There is no charge for regular mail. Clients are charged the actual cost of express mail and bulk mailings, as well as air express couriers.

15.3 **Messengers**:  Clients are charged the actual costs of outside messenger service. In some instances, Firm personnel may be used in lieu of an outside messenger service to reduce delivery time. In those cases, delivery charges are competitive with those of the outside messenger.

15.4 **Reprographics Costs**:  The Firm charges $.20 per page for black and white images (including copies, prints and scans), $.70 per page for color images. When required by size or time constraints of the specific project, reprographics services may be provided by outside vendors and will be charged to clients at actual cost.

15.5 **Binding**:  The Firm charges $5.00 for each binding (velo, spiral, fastback, etc.) job.

15.6 **Data Transfers**:  The Firm charges a fixed rate for burning CDs and DVDs at $8 and $12, respectively.

15.7 **Computer Research**:  The Firm uses several databases to conduct computer-assisted research. The Firm contracts for the majority of those database services in bulk and for several years in advance. The Firm bills clients at a discount from the vendors' regular rates to third parties where applicable. Charges for usage of databases that are not included under these advance contracts, and all other research databases, are billed to clients at actual cost.

15.8 **Long-Distance Telephone Calls**:  The Firm does not charge clients for long-distance telephone calls.

## 16 Applicable Law

16.1 Even though our Firm has offices and transacts business in numerous locations, our attorney-client relationship will be governed by California law, including the California Rules of Professional Conduct.

# Exhibit 3

**From:** Haynes Dallas
**Sent:** Wednesday, March 20, 2019 9:42 AM
**To:** Archibald, Christopher <christopher.archibald@bclplaw.com>
**Subject:** RE: MFS

Just broke free from a meeting for a few and tried calling.  Feel free to call me back.

**Haynes Dallas** | **Managed Facilities Solutions**
**Chief Executive Officer**
128 Component Drive, San Jose, CA 95131
Direct: 919-636-0997

**From:** Haynes Dallas <haynes@mfs.team>
**Sent:** Wednesday, March 20, 2019 9:13 AM
**To:** Archibald, Christopher <christopher.archibald@bclplaw.com>
**Subject:** Re: MFS

Not until 1pm or 2pm.

On Mar 20, 2019, at 9:09 AM, Archibald, Christopher <christopher.archibald@bclplaw.com> wrote:

Are you available for a call ASAP?



CHRISTOPHER J. ARCHIBALD
Attorney
christopher.archibald@bclplaw.com
T: +1 949 223 7341

BRYAN CAVE LEIGHTON PAISNER LLP
3161 Michelson Drive, Suite 1500, Irvine, CA 92612-4414

**bclplaw.com**

1

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at www.bclplaw.com.

**Exhibit 4**

[Attorney-Client]

**From:** Holmes Lilley <holmes.lilley@chartwellstaff.com>
**Sent:** Thursday, March 21, 2019 9:36 AM
**To:** Adam Kidan <adamkidan@yahoo.com>
**Cc:** Haynes Dallas <haynes@mfs.team>; Archibald, Christopher <christopher.archibald@bclplaw.com>
**Subject:** Re: MFS (Bryan Cave) s

The question is which firm does MFS want to use after Bryan Cave withdraws, I would think Anjuli at Duane Morris, but that is up to you and Haynes.

W. Holmes Lilley, CSP, J.D.
Chief Executive Officer
Chartwell Staffing Services, Inc.
(P) 252-414-7619

On Mar 21, 2019, at 9:11 AM, Adam Kidan <adamkidan@yahoo.com> wrote:

> What is the question being posed?
>
> Adam Kidan
> adamkidan@yahoo.com
>
> ---
>
> **From:** Haynes Dallas <haynes@mfs.team>
> **Date:** Thursday, March 21, 2019 at 12:08 PM
> **To:** Holmes Lilley <holmes.lilley@chartwellstaff.com>, Adam Kidan <adamkidan@yahoo.com>
> **Cc:** "Archibald, Christopher" <christopher.archibald@bclplaw.com>
> **Subject:** Re: MFS (Bryan Cave) s
>
> Adding Adam to this, since he is managing member of MFS.
>
>
> On Mar 21, 2019, at 7:59 AM, Holmes Lilley <holmes.lilley@chartwellstaff.com> wrote:

Haynes:

As we discussed yesterday via phone Bryan Cave is withdrawing from representation from MFS, I think they were only involved in the Rider matter which is largely settled. This is not a conflict waiver but rather a withdraw of representation, I am thinking Anjuli can handle this for MFS, but that's up to you please let Chris know if you want to have someone other than her sub in.

Thanks,

# W. Holmes Lilley, III, CSP, J.D.

**Chief Executive Officer**

**Newport Beach, CA**

**C: (252) 414-7619**

**<image002.jpg>**

<image003.jpg><image004.jpg><image005.jpg><image006.jpg>

**Clear Expectations-Consistent Execution-Creative Solutions**

---

**From:** Holmes Lilley
**Sent:** Wednesday, March 20, 2019 5:05 PM
**To:** 'Archibald, Christopher' <christopher.archibald@bclplaw.com>
**Subject:** RE: MFS

I think Duane Morris is who they use. This is the email address for their current counsel. Anjuli AMCargain@duanemorris.com

# W. Holmes Lilley, III, CSP, J.D.

**Chief Executive Officer**

**Newport Beach, CA**

**C: (252) 414-7619**

**<image002.jpg>**

<image003.jpg><image004.jpg><image005.jpg><image006.jpg>

**Clear Expectations-Consistent Execution-Creative Solutions**

---

**From:** Archibald, Christopher <christopher.archibald@bclplaw.com>
**Sent:** Wednesday, March 20, 2019 12:34 PM

**To:** Holmes Lilley <holmes.lilley@chartwellstaff.com>
**Subject:** MFS

Do you have someone in mind to refer to Haynes to substitute in?  If so, send me name and firm.  Thanks.

CHRISTOPHER J. ARCHIBALD
Attorney
christopher.archibald@bclplaw.com
T: +1 949 223 7341

BRYAN CAVE LEIGHTON PAISNER LLP
3161 Michelson Drive, Suite 1500, Irvine, CA 92612-4414

**bclplaw.com**

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at www.bclplaw.com.

**Exhibit 5**

[Attorney-Client]

**From:** Archibald, Christopher <christopher.archibald@bclplaw.com>
**Sent:** Wednesday, April 3, 2019 12:15 PM
**To:** Haynes Dallas <haynes@mfs.team>
**Cc:** Hunter, Aileen <aileen.hunter@bclplaw.com>; Choi, Traci <traci.choi@bclplaw.com>
**Subject:** Rider


Haynes,

A dispute has arisen between Chartwell Staffing Services, Inc. ("Chartwell") and Adam Kidan.  Bryan Cave Leighton Paisner LLP ("BCLP") has never represented Mr. Kidan, and the dispute between Chartwell and Mr. Kidan does not relate to BCLP's representation of Managed Facilities Solutions, LLC ("MFS") in the Rider class action.  Nonetheless, we recently learned Mr. Kidan is now alleging he is the managing member of MFS.  Because we are adverse to Mr. Kidan in connection with the dispute that has arisen between him and Chartwell, we are exercising our right under our engagement agreement with MFS to withdraw from representation of MFS.

Enclosed, please find a draft substitution of attorney for the Rider case.  Please sign and have MFS' new counsel sign and return to me by April 10.  Please advise as to whom MFS intends to substitute as new counsel so we can begin transferring the file to that attorney.  The next hearing in the Rider case is the hearing on Plaintiffs' motion for preliminary approval of class action settlement, which is currently scheduled for May 23, 2019 at 1:30 p.m.

If we do not receive the signed substitution of counsel by April 10, we will file a motion to be relieved as counsel.  If BCLP's motion is granted, BCLP will no longer be representing MFS in the Rider case, MFS will not be permitted to represent itself because it is a limited liability company, and MFS will need to retain new counsel.

Please let me know if you have any questions or would like to discuss.  Thanks.

Chris

CHRISTOPHER J. ARCHIBALD
Attorney
christopher.archibald@bclplaw.com
T: +1 949 223 7341

BRYAN CAVE LEIGHTON PAISNER LLP
3161 Michelson Drive, Suite 1500, Irvine, CA 92612-4414

**bclplaw.com**

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at www.bclplaw.com.

1   Allison C. Eckstrom, California Bar No. 217255
    allison.eckstrom@bcpllaw.com
2   Christopher J. Archibald, California Bar No. 253075
    christopher.archibald@bclplaw.com
3   Michael E. Olsen, California Bar No. 307358
    michael.olsen@bclplaw.com
4   **BRYAN CAVE LEIGHTON PAISNER LLP**
    3161 Michelson Drive, Suite 1500
5   Irvine, California  92612-4414
    Telephone:  (949) 223-7000
6   Facsimile:  (949) 223-7100
7

8   Attorneys for Defendants
    CHARTWELL STAFFING SERVICES, INC. and
9   MANAGED FACILITIES SOLUTIONS, LLC

10

11              **UNITED STATES DISTRICT COURT**

                **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**
12

13  GARY MIDDLE RIDER, an               Case No. 17-CV-04015 LHK
    individual, ROBERT GARZA, an
14  individual                          **NOTICE OF WITHDRAWAL AND**
    ALBERT ARELLANO, an individual,     **SUBSTITUTION OF COUNSEL**
15  JOSE DON CORONADO, an               **FOR DEFENDANT MANAGED**
    individual,                         **FACILITIES SOLUTIONS, LLC;**
16                                      **[PROPOSED] ORDER**
17  PLAINTIFFS AND PUTATIVE
    PLAINTIFFS                          Hon. Lucy H. Koh
18

19                   Plaintiffs,

20          v.

21  MOVING SOLUTIONS, a California
    Corporation MANAGED FACILITIES
22  SOLUTIONS, LLC a California
    Limited Liability Company and
23  CHARTWELL STAFFING
    SOLUTIONS, INC a new York
24  Corporation licensed to do business in
    California
25

26                   Defendants.

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

1    PLEASE TAKE NOTICE that Defendant MANAGED FACILITIES

2  SOLUTIONS, LLC has retained _____

3  to substitute as counsel for Bryan Cave Leighton Paisner LLP in the above-

4  captioned matter.

5    Withdrawing counsel for Defendant MANAGED FACILITIES

6  SOLUTIONS, LLC are:

7              Allison C. Eckstrom
               BRYAN CAVE LEIGHTON PAISNER LLP
8              3161 Michelson Drive, Suite 1500
               Irvine, CA 92612
9              Phone:    949.223.7000
               Fax:      949.223.7100
10             Email:    allison.eckstrom@bclplaw.com

11             Christopher J. Archibald
               BRYAN CAVE LEIGHTON PAISNER LLP
12             3161 Michelson Drive, Suite 1500
               Irvine, CA 92612
13             Phone:    949.223.7000
               Fax:      949.223.7100
14             Email:    christopher.archibald@bclplaw.com

15             Michael E. Olsen
               BRYAN CAVE LEIGHTON PAISNER LLP
16             3161 Michelson Drive, Suite 1500
               Irvine, CA 92612
17             Phone:    949.223.7000
               Fax:      949.223.7100
18             Email:    michael.olsen@bclplaw.com

19    All pleadings, orders and notices should henceforth be served upon the

20  following   substituted   counsel   for   Defendant   MANAGED   FACILITIES

21  SOLUTIONS, LLC:

22

23

24

25

26    The undersigned parties consent to the above withdrawal and substitution of

27  counsel.

28

1    Dated:  April __, 2019            MANAGED FACILITIES SOLUTIONS, LLC

2

3                                      By:  _____

4                                      Its:  _____

5

6    Dated:  April __, 2019            BRYAN CAVE LEIGHTON PAISNER LLP

7

8                                      By:  _____

9                                            Christopher J. Archibald

10   Dated:  April __, 2019

11

12                                     By:  _____

13

14

15   I hereby attest that I obtained concurrence in the filing of this document from each

16   of the other signatories on this e-filed document.

17

18   Dated:  April __, 2019            BRYAN CAVE LEIGHTON PAISNER LLP

19

20                                     By:  _____
                                             Christopher J. Archibald

21

22

23       The above withdrawal and substitution of counsel is approved and so

24   ORDERED.

25   Dated:  _____

26                                     HON. LUCY H. KOH
                                       JUDGE OF THE U.S. DISTRICT COURT

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

**Exhibit 6**

**Damion Robinson**

| | |
|---|---|
| **From:** | Haynes Dallas <haynes@mfs.team> |
| **Sent:** | Thursday, May 2, 2019 3:14 PM |
| **To:** | Archibald, Christopher |
| **Cc:** | Adam Kidan |
| **Subject:** | RE: Rider Data |

Chris,

Thank you for reaching out.  I have copied in Adam as well, since he is the sole owner and managing member of MFS.  I will obtain and provide the information for the relevant period, which based on the below conditions, is from 3/18/2019 to 5/23/2019.  All MFS associates were employed by Chartwell from May 2016 – 3/17/2019.  Prior to May 2016, any Moving Solutions associates were either employed by Chartwell or Moving Solutions, since MFS did not exist until then.  I will see what we can prepare by next week, and update with any necessary new hires between then and 5/23/2019.  Again, I appreciate all of your help with this matter.

Best regards,
Haynes

**Haynes Dallas** | **Managed Facilities Solutions**
**Chief Executive Officer**
128 Component Drive, San Jose, CA 95131
Direct: 919-636-0997

**From:** Archibald, Christopher <christopher.archibald@bclplaw.com>
**Sent:** Wednesday, May 1, 2019 6:19 PM
**To:** Haynes Dallas <haynes@mfs.team>
**Subject:** Rider Data


Haynes,

Pursuant to the settlement agreement, for all non-exempt employees other than administrative staff that MFS has employed between July 17, 2013 and May 23, 2019, the parties must provide the claims administrator with the following information in an excel spreadsheet within 10 business days of the preliminary approval hearing, which is on May 23: (1) full name; (2) last known address; (3) last known telephone number; (4) Social Security number; and (5) number of weeks worked between July 17, 2013 and May 23, 2019.

As such, please prepare the excel spreadsheet and provide the foregoing information to me by **June 3**.  I **do not** need the information for employees who were employed by Chartwell for the time period during which they were employed by Chartwell as Chartwell will provide that information, but if MFS has non-exempt employees that are not administrative staff that were not employed by Chartwell, or that were employed by Chartwell but are no longer employed by Chartwell, they need to be included in the spreadsheet for MFS.

If there are no such employees, please let me know that as well.

Please let me know if you have any questions.

Chris

CHRISTOPHER J. ARCHIBALD
Attorney
christopher.archibald@bclplaw.com
T: +1 949 223 7341

BRYAN CAVE LEIGHTON PAISNER LLP
3161 Michelson Drive, Suite 1500, Irvine, CA 92612-4414

bclplaw.com

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at www.bclplaw.com.

1

## **CERTIFICATE OF SERVICE**

2      I, Damion Robinson, certify that I filed the foregoing document using the Court's

3  electronic filing (CM/ECF) system on May 29, 2019.  I am informed and believe that electronic

4  filing will result in service by email to all interested parties.

5

6                                                              Damion D. D. Robinson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28