James Dal Bon 157942
LAW OFFICES OF JAMES DAL BON
606 NORTH 1st STREET
SAN JOSE, CA 95112
(408)472-5645

Attorney for the Plaintiffs and Class
*(Additional Counsel on Other Page)*

## UNITED STATES DISTRICT COURT

## FOR DISTRICT OF NORTHERN CALIFORNIA

| | |
|---|---|
| Gary Middle Rider et al<br><br>Plaintiffs,<br><br>vs.<br><br>Moving Solutions, Inc et al<br><br>Defendants | Case No. l7-CV-04015 LHK<br><br>JOINT MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION, MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF<br><br>**Hon. Judge Lucy H. Koh**<br>**Place:    Court Room 8 4th Floor**<br>**Date:     1/9/2020**<br>**Time:     1:30pm** |

NOTICE is hereby given to all parties that on at 1:30 pm in courtroom 8 on the 4th floor of the Robert F. Peckham Federal Building United States Courthouse 280 South 1st Street, Room 2112 San Jose, CA 95113 the parties jointly  intend on moving for preliminary approval of a class action.  This motion will be based upon the attached memorandum of Points and Authorities, Declarations and Exhibits. The date of the motion will be 1/9/2020

October 31 , 2019

_____

James Dal Bon
Attorney for the Plaintiffs

Victoria L. H. Booke, California Bar No. 142518
**LAW OFFICES OF BOOKE & AJLOUNY, LLP**
606 North First Street
San Jose, CA  95112.
Telephone:     (408) 286-7000

ATTORNEYS FOR PLAINTIFFS

Alexander Lawrence Conti
CONTI LAW
23 Corporate Plaza Drive, Suite 150
Newport Beach, CA 92660
Telephone:    (949) 791-8555

ATTORNEYS FOR DEFENDANT
DEFENDANT CHARTWELL STAFFING SERVICES, INC.

Richard D. Schramm
EMPLOYMENT RIGHTS ATTORNEYS
1500 E Hamilton Ave.,
Campbell, CA 95008
Telephone     (408) 796-7551

ATTORNEYS FOR DEFENDANT
MOVING SOLUTIONS

Susan Bishop
BERLINER COHEN
10 ALMADEN BLVD., 11TH FLOOR
SAN JOSE, CA 95113
Telephone:     (408) 286-5800

ATTORNEYS FOR DEFENDANT
MANAGED FACILITIES LLC

Third Motion for Preliminary Approval

# Table of Contents

*Cases*.................................................................................................................v

*Statutes*............................................................................................................v

*STATEMENT OF THE CASE* ...........................................................................1

*STATEMENT OF FACTS*..................................................................................3

*NOTICE PROCEDURE*.....................................................................................8

*ARGUMENT* .....................................................................................................9

*THE COURT IS REQUIRED TO EVALUATE THE SETTLEMENT FOR FAIRNESS UNDER RULE 23 AND THE FLSA* ...........................................9

*THE COURT SHOULD PRECERTIFY THE SETTLEMENT AS FAIR  UNDER RULE 23 AND THE FLSA* ....................................................11

*THE COURT SHOULD GRANT CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS* .....................................................................................16

*THE COURT SHOULD CONDITIONALLY CERTIFY THE COLLECTIVE ACTION UNDER THE FLSA* ....................................................................18

*THE ATTORNEY'S FEES REQUESTED ARE REASONABLE* ............................19

*THE NOTICE GIVEN THE CLASS IS ADEQUATE* ........................................20

*THE CLASS ACTION MEETS THE COURT'S GUIDELINES FOR APPROVING A SETTLEMENT*.................................................................20

*CONCLUSION*.................................................................................................22

**Third Motion for Preliminary Approval**

## CASES

Vasquez v. Coast Valley Roofing, Inc., 670 F.Supp.2d 1114 (E.D.Cal.2009).......................16

Acosta v. Frito-Lay, Inc., 2018 WL 2088278, at *4 (N.D. Cal. May 4, 2018) .......................13

Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015.......................................................13

Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). ......................................................21

Churchill Village v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.2004) ...................................16,22

Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291 (9th Cir. 1992)..................................14

Consolidated Rail Corp. v. Town of Hyde Park (1995) 47 F3d 473 ......................................19

Custom LED, LLC v. eBay, Inc, WL 6114379  (2013) .......................................................15

Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.), 213 F.3d 454 (2000).....................17

Fronda v. Staffmark Holdings, Inc., WL 5665671 (2017) ..................................................13

Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, (2013).................................................12

Glass v. UBS Financial Services, Inc., 2007 **WL 221862** (2007)........................................21

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) .......................................13,18

Harris v. Vector Mktg. Corp., WL 1627973  (2011) .......................................................14

Hill v. RL Carriers, Inc., 690 F.Supp.2d 1001, 1009 (N.D.Cal.2010) ...............................20

Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165 (1989)................................................20

In re Omnivision Technologies, Inc., 559 F.Supp.2d 1036 (2007)......................................17

In re Tableware Antitrust Litig., 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). ...................14

*Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, (2015) ...........................................11

*Otey v. CrowdFlower, Inc.*,  2015 WL 4076620 (2015) ....................................................13

Reed v. 1-800 Contacts, Inc., 2014 U.S. Dist. LEXIS 255 (2014) ......................................17

Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, ( 2016) .............................13

Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). ...................................13, 14,16,18,21

Thompson v. Costco Wholesale Corp., ]2017 WL 1957552, (2017) ...................................12

Wal-Mart Stores, Inc. v. Dukes (2011) 564 US 338, 131 S.Ct. 2541,  ................................19

White v. Nat'l Football League, 41 F.3d 402 (1994) .......................................................22

Wolin v. Jaguar Land RovZer North America, LLC ( 2010) 617 F3d 1168...........................19

## STATUTES

Business and Professions Code Section 17200 ...............................................................5

Cal. Lab. Code Section 226.7....................................................................................5

Fair Labor Standards Act 29 USC Sections 207.2 ...........................................................5

Fed. R. Civ. P. 23 .......................................................................................18, 22

29 U.S.C. § 216 ................................................................................................20

Cal. Lab. Code Sections 510 ......................................................................................4

Cal. Labor Code Section 203 ....................................................................................4

## STATEMENT OF THE CASE

This is the Third Motion for Preliminary Approval.  Some of the cites refer to documents already filed in this case.  Plaintiffs filed this  class action and collective action complaint on behalf of nonexempt movers against Defendants Moving Solutions, Managed Facilities Solutions LLC (hereinafter Managed Facilities) and Chartwell Staffing Solutions, Inc. (hereinafter Chartwell). Moving Solutions is a California Corporation. Chartwell is a national staffing agency that provides on premise staffing services to manufacturers and businesses.  Managed Facilities is a small corporate mover engaged in business with Chartwell .  Defendants Moving Solutions, Chartwell and Managed Facilities shall collectively be known as "Defendants".)

During the class period, July 17, 2013 through November 30, 2018, the Defendants employed Gary Middle Rider, Albert Arellano, Robert Garza, Daniel Coronado, and Jose Don Coronado aka Dan Coronado (hereinafter collectively known as "Plaintiffs") as non-exempt corporate movers.

On July 17, 2017  Plaintiffs filed a Rule 23 class action complaint alleging that Defendant Moving failed to pay them for all regular and overtime wages.   Specifically, The Plaintiffs alleged the following California State causes of action for the Rule 23 Class Action:  Failure to Pay Overtime and Regular Wages under Cal. Lab. Code Sections 510 and 1194, Failure to Pay Wages at the End of Employment pursuant to Cal. Labor Code Section 203, Failure to Provide Rest and Meal Period Breaks under Cal Labor Code

Section 226 and Failure to Provide Accurate Pay Stubs pursuant to Cal. Lab. Code Section 226.7.  The Plaintiffs also filed a claim for Restitution of overtime wages under Cal. Business and Professions Code Section 17200 that is subsumed unto the Rule 23 Class.  Finally the Plaintiffs filed a collective action for unpaid overtime under The Fair Labor Standards Act 29 U.S.C.§ Sections 207.2, 216(b) and 255(a) See <u>Middle Rider vs Moving Solutions</u> 5:17-cv-04015 Complaint EFC No. 1.

Plaintiffs later amended the complaint three times.  EFC Doc. Nos. 19, 49 and 75. The first amendments added the respective parties, Defendant Chartwell and Defendant Managed Facilities.  Id. The last amendment added a cause of action under the Private Attorneys General Act. Id.  Finally during the pendency of the action  Gary Middle Rider passed away.  His widow Barbara Middle Rider substituted in his place.  <u>Moving Solutions at</u> EFC Doc. 65.

Following the filing of the complaint, Plaintiffs' Class Counsel conducted a thorough investigation into the facts of the lawsuit, including extensive investigation, interviews, discovery and exchange of information and documents. The investigation included review of thousands of pages relevant documents, including written policies and procedures, handbooks, time records, corporate tax,  income statements and payroll records.  Class Counsel further investigated the facts alleged in the Complaint by conducting multiple interviews of named plaintiffs and potential class members.  <u>See</u> Decl James Dal Bon

The Parties participated in a full-day mediation on November 30, 2018 before respected mediator, Hon. Jamie Jacobs-May (Ret).  After a full day of arms-length

negotiations assisted by Judge Jacobs-May, the Parties agreed to the settlement in general terms. All parties signed a Memorandum of Understanding, containing general terms that the Parties have specified. See Ex A  (already submitted at Moving Solutions EFC Doc 77 Ex C).

At the mediation, the parties agreed that the facts uncovered by the discovery in this case warranted creating one Rule 23 claims made or "opt in" class between the period of  July 17, 2013 and the Preliminary Approval Date. The parties also agreed to compensate another group under the California Private Attorneys General Act Cal. Labor Section 2698  et seq (PAGA).  The parties circulated a second settlement emphasizing the settlement  would not release the FLSA  claims of the employees who did not "opt in".  See Exhibit B Stipulated Settlement p. 4 (Y) (Z) p8 (SS) and p 11(D) Notice of Claim Form p2.  .

This is the Third Motion for Preliminary Approval.  The parties hope this Motion addresses the issues raised by the court in rejecting the two previous preliminary approval motions.   The Parties have heavily edited the Claim Form and the Notice of Claim See Ex B Stipulated Settlement and attached Ex 1 the Claim Form and attached Ex 2 Notice of Claim.


STATEMENT OF FACTS

The Defendants employed the four named plaintiffs and class representatives, Gary Middle Rider, Robert Garza, Albert Arellano, and Jose Don Coronado. Plaintiffs are all represented by James Dal Bon of the Law Offices of James Dal Bon and Victoria Booke of Booke and Ajlouny.  The Plaintiffs made the following allegations:

Defendants employed the Plaintiffs in the office moving industry as non-exempt laborers. Plaintiffs' job duties included moving office equipment, wiring computers and phones, installing office partitions, desks, chairs and other office furniture. The Plaintiffs claim they regularly worked more than eight hours in one day and forty hours in one week. See Decls of Garza, Coronado and Arellano EFC No 77 -2 through 3 See also Moving Solutions (complaints) at EFC Nos. 1, 19, 49 and 75.

Plaintiffs claim Defendants had them work unpaid off the clock hours. For example Plaintiffs assert Defendants ordered them to arrive at the offices of their clients at approximately 4:30 pm, and then wait for the office workers to leave at between 5:00 and 6:00 pm to begin moving and installing office furniture and equipment. The Plaintiffs allege Defendants did not record or pay them for the time they spent waiting to start work. Id. Plaintiffs claim they worked through their 30-minute lunch breaks and the Defendants automatically deducted thirty minutes from their pay regardless of whether they worked through the lunch period or not. Id.

Finally if the Defendants failed to record for all the time the Plaintiffs worked, they provided the Plaintiffs with paystubs that did reflect accurately the hours they worked. The paystubs did not include the hours the Defendants allegedly shaved from the time cards of the Plaintiffs. Plaintiffs assert they could not look at their time cards and determine whether the Defendants paid them for all their work hours Id

Defendants deny all the allegations made by the Plaintiffs. Defendants assert they paid all their employees overtime wages. The Defendants claim they allowed their

4

employees to take their rest breaks and lunch breaks.  Defendants make no admission of culpability in settling the case.

Defendants report the approximate class size as follows:

1)    1021 potential class members representing 17,225 work weeks;

2)    262 people worked 1 week or less

3)    398 people worked 2 weeks or less

4)    542 people (more than half) worked 4 or less weeks

5)    479 people worked more than 4 weeks

See Decl of James Dal Bon EFC 77-1


The Plaintiffs also investigated the financial conditions of the Defendants in settling this case.  The Defendant Chartwell provided the following financial information:

1)  IRS Account Transcripts

2)   2014-2017 Tax Returns

3)  2014-2017 Balance Sheets

4)  2014-2017 Income Statements

5)  Preliminary Balance Sheet for 2018

6)  Debt Table as of July 2018

7)  Bankruptcy records

Defendants Managed Facilities provided a 2017 Balance Sheet and Income Statement.

Id.

## THE STIPULATED SETTLEMENT

After a full day of mediation the Parties agreed to settle this case for $470,000 to be paid by Defendants.  See Ex A Memorandum of Understanding B Stipulated Settlement at p 5 The Settlement Sum includes attorney's fees, costs and expenses directly related to the case.  The Settlement Administration costs are estimated to be $16,000. See Ex B Stipulated Settlement at p 26 and Moving Solutions EFC Doc 77-10 EFC 107-1 Flat fee proposed by class administrator.   Subject to Court approval, Class Representatives Barbara Middle Rider, Robert Garza, Albert Arellano, and Jose Don Coronado shall receive Service Awards of $5000 each.  See  Ex B  Stipulated Settlement p 23.  Subject to Court approval, Class Counsel will be paid up to 25% of the gross settlement for attorneys' fees, and an additional amount for reasonable litigation costs not to exceed $8500.00. See  Stipulated Settlement p 23. Class Counsel shall file the motion for an award of attorneys' fees at least sixty days prior to the Final Fairness and Approval Hearing so that Class Members shall have adequate time to decide whether to object to and / or oppose the request for attorneys' fees.

The members of the class shall recover damages based upon the number of work weeks they worked during the class period.  The net settlement is an estimated $290,183. If every potential claimant returns a claim form, then a total of approximately 17,225 work weeks will be paid.  In that case each claimant shall be paid approximately $16.85 for every week they worked for Defendants.  See Doc 77-11 Excel Spreadsheet.

The settlement shall be funded in two installments.  The first for $235,000 shall be paid within thirty days after the final approval.  The second payment of $235,000 shall be paid  210 days later.  See  Ex B Stipulated Settlement pp 5.  The settlement payment shall be distributed  upon receipt of the second payment.  See EFC Doc 77 Ex D-1 Stipulated Settlement p 21 Any uncashed checks 180 days after the  payment shall escheat to the State of California and submitted to the State of California unclaimed property fund in the name of the Claimant. See  Ex B Stipulated Settlement p 23.

All Class Members will be given forty five days from the day the Notice of Claim is sent to them  to either file a claim or object to the settlement as a whole (and to the proposed attorney's fees).  The Defendants shall be relieved of liability for all wage and hour causes of action related to those pled in the class including the FLSA  claims for every class member who makes a claim. Class members who do not make a claim shall be deemed to have settled all claims with the exception of their respective FLSA claims. Only Class Members who make a claim opting into the class shall settle the FLSA portion of the claim.  See  Ex B Stipulated Settlement pp 7, 11, 19.

The Individual Settlement Amounts for each Participating Class Member will be calculated by the Settlement Administrator as follows:  Participating Class Member shall be entitled to receive a pro rata portion of the Net Settlement Fund based upon his or her respective number of work weeks during the Class Period of July 17, 2013 to The Preliminary Approval Date.  This amount shall be determined by dividing the Net Settlement Fund by the total number work weeks worked by each of the participating Class Members from July 17, 2013 to The Preliminary Approval Date.  The resulting

amount will be the dollar amount per work week received by each of the class members . Each class member who makes a claim shall receive his/her full amount. See Ex B Stipulated Settlement pp 21-22.

NOTICE PROCEDURE

The timing of the class procedure is as follows: 1). Within ten days following the pre-liminary approval t Defendants will send the Class Administrator a copy of the class list; 2) the class administrator will send the Class Notice out by mail to the Class members within seven days of receiving the class list 3) the class members will have forty five days to respond 4). The class administrator will skip trace the notices returned in the mail for valid addresses and mail a second notice to the new address and allow an additional ten days to respond to the second notice.

CPT Group will send the Class Notice out in Spanish and English. The Class Notice will include the number of work weeks and an estimate of the amount to be awarded to each class member.. Class members will be notified of the appeal process available for approval of a late claim form and how to contest the number of workweeks on the claim form. Class members will also be notified of their right to object to the settlement and how to make their objections known at the final settlement hearing. The Class Administrator will also put up a website with downloadable forms during this time period.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ARGUMENT

THE COURT IS REQUIRED TO EVALUATE THE SETTLEMENT FOR FAIRNESS UNDER RULE 23 AND THE FLSA

The Plaintiffs in this case filed a hybrid federal and state wage and hour case against the Defendants for failure to pay overtime and regular wages to their non-exempt corporate movers.  Federal law requires the parties to obtain the approval of the court to finalize the settlement of a collective action under the FLSA  and a class action under Rule 23.  Kempen v. Matheson Tri-Gas, Inc., No. 15-cv660-HSG, 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016); see also Dunn v. Teachers Ins. & Annuity Assoc. of Am., No. 13-cv-5456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) Fed Rule of Civ. Proc. 23(e). The procedure for approving a FLSA  collective action and a Rule 23 class action are identical. The court approves settlements under Rule 23 and the FLSA  in two stages. See generally Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 602-07 (E.D. Cal. 2015); Thompson v. Costco Wholesale Corp., No. 14-CV-2778-CAB-WVG, 2017 WL 1957552, at *3–4 (S.D. Cal. May 11, 2017).  The courts preapprove the substantive terms of the settlement in the first stage, and the procedure for obtaining  final approval in the second stage.  Id.

The effect of preapproval of a collective action under the FLSA  is different than the effect of precertification of a putative class under Rule 23. A putative class acquires an independent legal status once it is certified under Rule 23. All parties fitting the class definition are effectively joined to the putative class unless they file a written notice "opting out" according to Rule 23.  Under the FLSA, by contrast, "conditional

certification" neither  produces a class with an independent legal status nor joins

additional parties to the action. The sole consequence of FLSA conditional certification

is the sending of court-approved written notice to employees who in turn become parties

to a collective action only by filing written consent "opting into" the case Title 26 §

216(b). <u>Genesis Healthcare Corp. v. Symczyk</u>, 569 U.S. 66, 75, 133 S. Ct. 1523, 1530, 185 L.

Ed. 2d 636 (2013). Precertification of a Rule 23 putative class creates a well-defined

independent legal entity  from which one must opt-out in order to avoid being bound by

the settlement while the FLSA's Section 216 (b) simply gives one an opportunity to

benefit from the settlement by opting into its terms. Id.

The court is first required to evaluate the fairness of the settlement.  If the court

determines the settlement is fair, then the Rule 23 class will gain an independent legal

status and participants will be required to opt out of the settlement to not be bound by

its terms.  For the FLSA  claims, class members will be given the opportunity to settle the

collective action and will only be bound by its terms if they opt in.  If the court decides

the settlement is fair under Rule 23, the settlement  will be considered fair under the less

stringent standards of the FLSA .

In determining fairness under the FLSA , "many courts begin with the well-

established criteria for assessing whether a class action settlement is "fair, reasonable,

adequate" under Fed.R.Civ.P. 23(e), and reason by analogy to the FLSA context. <u>See Otey</u>

<u>v. CrowdFlower, Inc.</u>, No. 12–cv–05524–JST, 2015 WL 4076620 (N.D. Cal. July 2, 2015) <u>Selk</u>

<u>v. Pioneers Mem'l Healthcare Dist.</u>, 159 F. Supp. 3d 1164, 1172–73 (S.D. Cal. 2016)

THE COURT SHOULD PRECERTIFY THE SETTLEMENT AS FAIR IN UNDER RULE 23 AND THE FLSA

The Ninth Circuit maintains a strong judicial policy that favors settlement of class actions.  Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015)   Fronda v. Staffmark Holdings, Inc., No. 15-CV-02315-MEJ, 2017 WL 5665671, at *5 (N.D. Cal. Nov. 27, 2017) When the parties to a class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). In the first stage of the approval process, the Court preliminarily approves the settlement (pending a fairness hearing), temporarily certifies a settlement class, and authorizes notice to the class. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Acosta v. Frito-Lay, Inc., No. 15-CV-02128-JSC, 2018 WL 2088278, at *4 (N.D. Cal. May 4, 2018) Settlements that are reached as a result of arm's-length bargaining between experienced and well-informed counsel, after thorough investigation, are entitled to a presumption of fairness. See Staton v. Boeing, 327 F.3d 938, 960 (9th Cir. 2003); Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291 (9th Cir. 1992).

All of the factors giving rise to a presumption of fairness exist in this case. The proposed settlement was produced at an all-day mediation before the Hon Jamie Jacobs-May at JAMS.  See Decl James Dal Bon.  The class is represented by experienced counsel who have seen five wage and hour class actions through certification in state and federal court. Id. Class counsel conducted sufficient discovery.  Class counsel reviewed

thousands of pages of pay roll records and financial documents, conducted extensive interviews with the named plaintiffs and other witnesses.  The settlement should be presumed to be fair.

"The Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." Harris v. Vector Mktg. Corp., No. 08–cv–05198 EMC, 2011 WL 1627973, at *7 (N.D.Cal. Apr. 29, 2011); In re Tableware Antitrust Litig., 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

In this case the settlement was the product of serious informed non-collusive negotiations.  Plaintiff's counsel evaluated thousand pages of documents, conducted extensive interviews of the plaintiffs before going to mediation. Class counsel contacted more than the usual number of employee witnesses after the named plaintiff passed away in order to be able find another named Plaintiff.   The parties conducted a full day of mediation in front of an experienced mediator.  The issues discussed at the mediation, not only included the usual issues regarding wages, but also more complicated ones regarding the solvency of Defendant Chartwell, a multi-million dollar corporation.

The settlement has no obvious deficiencies.  In this case the settlement releases the Defendants from liability regarding their compensation practices encompassed in the state wage and hour laws.  The settlement only releases liability under  the FLSA  for those Plaintiffs who make a claim opting into the FLSA settlement.   See Hesse v. Sprint

Corp., 598 F.3d 581, 590 (9th Cir.2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks and citations omitted); Custom LED, LLC v. eBay, Inc, No. 12–cv–00350 JST, 2013 WL 6114379, at *4, *7 (N.D. Cal. Nov. 20, 2013).  The settlement only releases claims pertaining to wage and hour laws, which are based upon the same "factual predicate" as the underlying claims in the settled class action.

The settlement gives no member or group preferential treatment.  Each member will receive their pro rata share of the settlement based upon the number weeks they worked for the Defendants.  It was not designed to favor any one group over another. The service awards of $5000 for each of the four participating plaintiffs are fair.  Plaintiffs missed a day from work to participate in the mediation.  Class counsel visited at least one of the Plaintiffs at his  place of work, taking him away from his duties to sign paper work. Class counsel also visited another Plaintiff at his home.   All Plaintiffs missed one or more days from work visiting class counsel's office to answer questions and sign paperwork. The "Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir.2003).

The settlement falls within the range of possible approval.   "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the

settlement offer." Vasquez v. Coast Valley Roofing, Inc., 670 F.Supp.2d 1114, 1125

(E.D.Cal.2009)). The court evaluates : "[1] the strength of plaintiff's case; [2] the risk,

expense, complexity, and likely duration of further litigation; [3] the risk of maintaining

class action status throughout the trial; [4] the amount offered in settlement; [5] the

extent of discovery completed, and the stage of the proceedings; [6] the experience and

views of counsel; [7] the presence of a governmental participant; and [8] the reaction of

the class members to the proposed

settlement." Churchill Village v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.2004). The court

compares "the value of the settlement against the expected recovery at trial" by

estimating "the maximum amount of damages recoverable in a successful litigation and

compare that with the settlement amount." Id. at *11 (internal quotation marks omitted).

    If the Plaintiffs won all issues in this case for the maximum amounts ascribed to all

those issues, the case value could be between $9 million and $14 million dollars.

    Assuming an average wage of $17.50 per hour with an average overtime rate of

$26.50 per hour, the lost overtime wage calculation would be over three million dollars if

one assumes 7.5 hours of unpaid waiting time a week.   7.5 Overtime Hours per Week x

17225 work weeks x $26.50 =  $3,423,468.75.

    The Labor Code Sec. 203 penalty alone could be worth over a million dollars.

According to the statistics provided by the Defendants, at least half the 1021 employees

worked for them for less than  one month.  Using an average rate of pay of $17.50 x 8

hours per day x 500 former employees times 30 days, the total comes to  $2,100,000.

Nevertheless Class counsel believes this settlement to be a reasonable compromise of the class claims, and well within the percentile ranges of the total available damages that have been approved in other class settlements. See In re Omnivision Technologies, Inc., 559 F.Supp.2d 1036, 1042 (*** *** 2007) (noting that a settlement of 6% of the maximum potential recovery after reduction for attorney's fees was higher than median percentage for recoveries in shareholder class action settlements, averaging 2.2%-3% from 2000 through 2002); Reed v. 1-800 Contacts, Inc., 2014 U.S. Dist. LEXIS 255 (S.D. Cal. 2014) (approving a settlement of $11.7 million where the maximum range of damages was $5,000 for each of the alleged 300,000 instances of unlawful recording violations ($1.5 billion), equaling approximately 0.78% of the total demand and approximately $800 per class member); Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.), 213 F.3d 454, 459 (9th Cir. 2000).

Additionally the Defendants presented ample evidence at mediation indicating they would have difficulty paying any substantial judgment. Attached as Ex G is a public record showing that Defendant Chartwell had to restructure its payment plan related to a bankruptcy proceeding that included escalating monthly payments. This case would likely involve at least two years of litigation proving that Defendants had a policy of forcing movers to work off the clock hours, which if successful would be relitigated for another two years in bankruptcy court. In light of all of the above, the settlement is reasonable and fair.

Finally the Parties agreed to a claims made procedure, which the courts normally disapprove of for state related wage claims. The Parties believe a claims made procedure

1    is the fairest way to ensure the money is paid to the Defendants' employees rather than to

2    a cy pres charity.  Defendants' work force is transient and many were employed for a

3    short period of time.  Half of the Defendants' employees only worked for the Defendants

4    for four or fewer weeks.  It is likely that a good many  of the transient employees will not

5    be found and that money will go to the employees who make claims .

6

7    THE COURT SHOULD GRANT CONDITIONAL CERTIFICATION OF THE RULE 23

8    CLASS

9

        Class certification requires that: (1) the class be so numerous that joinder of all

10   members individually is 'impracticable;' (2) there are questions of law or fact common to

11   the class; (3) the claims or defenses of the class representative must be typical of the

12   claims or defenses of the class; and (4) the person representing the class must be able

13   fairly and adequately to protect the interests of all members of the class. Fed. R. Civ. P.

14   23(a); Staton v. Boeing, 327 F.3d 938, 953 (9th Cir.2003).

15

        In addition to meeting the conditions imposed by Rule 23(a), the parties seeking

16   class certification must also show that the action is maintainable under Federal Rule of

17   Civil Procedure 23(b). Here, the parties assert that the action is maintainable under Rule

18   23(b)(3) because questions of law or fact common to class members predominate over

19   any question affecting only individual members, and a class action is superior to other

20   available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P.

21   23(b); Hanlon, 150 F.3d at 1022.

22

        Numerosity exists because the class consists of  over 1,000 members . "Generally

23   speaking, courts will find that the 'numerosity' requirement has been satisfied when the

24

25

class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." <u>Ansari v. New York Univ.</u> (SD NY 1998) 179 FRD 112, 114 (emphasis added); <u>also see</u> <u>Consolidated Rail Corp. v. Town of Hyde Park</u> (2nd Cir. 1995) 47 F3d 473, 483—numerosity presumed at level of 40 members.

Commonality exists in this case. This requirement is met through the existence of a "common contention" that is of such a nature that it is capable of class wide resolution in "one stroke." [<u>Wal-Mart Stores, Inc. v. Dukes</u> (2011) 564 US 338, 350, 131 S.Ct. 2541, 2551] The Plaintiffs have alleged violations of wage and hour law that are capable of class-wide resolution.  The Defendants' policy towards overtime, paystub violations and Labor Code Sec. 203 penalties are all capable of class wide resolution.

Typicality exists in this case.  The claims of the purported class representative need not be identical to the claims of other class members, but the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." <u>Wolin v. Jaguar Land Rover North America, LLC</u> (9th Cir. 2010) 617 F3d 1168, 1176]. All four members representing the class  worked for the Defendants during the Class period.  Their claims are identical to those alleged in the complaint on behalf of the class members.

The class members have been adequately represented in this case.  None of the named class members has a conflict.  The class representatives  have vigorously prosecuted the case, all four participating in the investigation, and mediation of this case.  Class counsel have successfully litigated the following Class Actions in Santa Clara County Superior Court   Rosales vs Heavenly Greens 1-cv-119684; Lopez vs Logistics

Delivery Solutions 113-cv-249431, Diaz vs Heavenly Greens 16-cv295143, Cooke vs A is for Apple 15-cv-279579 and Ledo vs Prado l7-CV-02393 LHK.  Plaintiffs' counsel have prosecuted 178 wage and hour cases in federal court and probably another fifty in state court over the past twelve years.

THE COURT SHOULD CONDITIONALLY CERTIFY THE COLLECTIVE ACTION UNDER THE FLSA

Section 216(b) of the FLSA allows employees to represent similarly situated employees in an action against their employer for failure to pay wages owed. 29 U.S.C. § 216(b). But unlike class actions brought under Federal Rule of Procedure 23, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party …." See id.; Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) "The requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure. All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." Hill v. RL Carriers, Inc., 690 F.Supp.2d 1001, 1009 (N.D.Cal.2010) In other words, since the class meets the commonalty standard of a Rule 23 Class, the claims certainly qualify as similar under the FLSA .

THE ATTORNEY'S FEES REQUESTED ARE REASONABLE

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund ... is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). See also Central R.R. & Banking Co. v. Pettus, 113 U.S. 116 (1885) (recognizing common fund doctrines); Staton, 327 F.3d at 967 (same). The Ninth Circuit's benchmark for fees in this context is 25 percent of the gross settlement amount, and courts that depart from the benchmark should indicate their reasons for doing so. Glass v. UBS Financial Services, Inc., 2007 **WL 221862** (N.D. Cal. Jan. 26, 2007) at 14.

In this case Class ' Counsel request  an attorney's fee of 25%, the bench mark.  As is usual in these cases, Class Counsel analyzed thousand pages of documents and interviewed clients several times, spoken to other witnesses in the case, and participated in a full day mediation.  This case did present a special difficulty in that the named Plaintiff passed away.  Class Counsel spent more hours attempting to find other Class Representatives and performed  motions work to ensure the former named Plaintiffs' widow could recover his share.  Additionally examining the economic condition of the Defendants was a little more complicated in this case.  However Class Counsel does not believe  any reason exists to deviate from the bench mark in this case.

Finally the Parties ask the court to approve a small portion of the settlement to be devoted to the PAGA claims.  The Defendants did not want the case to be relitigated under PAGA. Ten thousand dollars has been reserved for PAGA.  As with most wage and

hour settlements only a small portion of the settlement has been reserved for PAGA

because 75% of the PAGA recovery  is paid to the State of California and 25% to the

workers.  Reserving a small portion of the settlement for PAGA ensures more money is

paid to the employees.


THE NOTICE GIVEN THE CLASS IS ADEQUATE

The proposed Class Notice and proposed method of distribution are appropriate.

See Fed. R. Civ. P. 23(c)(2)(B); Churchill Village, L.L.C. v. General Electric, 361 F.3d 566,

575 (9th Cir. 2004); White v. Nat'l Football League, 41 F.3d 402, 408 (8th Cir. 1994).

THE CLASS ACTION MEETS THE COURT'S GUIDELINES FOR APPROVING A
SETTLEMENT

Starting in November 2018, The Northern District Court approved new settlement

guidelines for preliminary approval of a class settlement.  Plaintiffs' counsel now directly

addresses the issues in the guidelines not already addressed.

Plaintiffs ask the court to approve the following class:

""all current and former hourly, non-exempt employees who are employed or have been
employed by Defendants in the State of California during the Class Period, except for
administrative office staff. Settlement Class Members do not include Chartwell's
employees who were not placed to work for Defendant Moving Solutions, Inc. or
Defendant Managed Facilities Solutions, LLC"

The class has been changed to ensure it only includes employees of Defendants

Moving Solutions and Managed Facilities Solutions LLC.  Chartwell assigns many more

employees to jobs  separate from and different from the jobs assigned by these other

companies.  Plaintiffs' counsel wanted to make sure the definition did not apply to

administrative employees, but only to the non-exempt laborers employed by Moving Solutions and Managed Facilities LLC involved in moving office furniture.

The Supplemental Briefing found at Doc 107 more fully details the maximum recovery available to the Plaintiffs. The Defendants maintained they owed the Plaintiffs nothing. Plaintiffs' counsel would also like to add that the financial condition of the Defendants was also a major factor in calculating the final settlement number. The confidential financial information provided by Defendant Chartwell convinced the Plaintiffs' counsel that Chartwell was the deep pocket Defendant in this case, and Chartwell might file for bankruptcy protection if the company sustained a large judgment.

The Lodestar and attorney's fees issues were addressed in Docs 100 and 101.

Finally Plaintiffs' counsel has attached the final statistics on the Lopez vs Logistics Delivery Solutions 113-cv-249431. See EFC 121-3 Statistics on Delivery Solutions. In that Delivery Solutions case, a little over 50% of that class responded. In the instant case that number will probably be closer to 30% or 20%. Class Counsel consider a 20% or 30% response rate to be a success if the responses maximize the recovery for long term employees who have claims. Over 50% of the employees worked for the Defendants for four weeks or less. Class Counsel hopes a large portion of the long term employees who worked more than four weeks and suffered the most under the Defendants' labor practices are most likely to respond.

CONCLUSION

Plaintiff's counsel and Defendants' counsel respectfully request the court preliminarily approve the class action.

October 31, 2019



_James Dal Bon_
_____

James Dal Bon
Attorney for the Plaintiffs